HUSSIN LAW FIRM
Tammy Hussin (Bar No. 155290)
1596 N. Coast Highway 101
Encinitas, CA 92024
Tel:   (877) 677-5397
Fax:   (877) 667-1547
tammy@hussinlaw.com

THE GOLAN LAW FIRM, LLP
Yvette Golan*
1712 N Street, N.W., Suite 302
Washington, DC 20036
Tel: (866) 298-4150, ext. 101
Fax: (928) 441-8250
ygolan@tgfirm.com

* Pro hac vice pending

FRANCIS & MAILMAN, P.C.
James A. Francis*
David Searles*
1600 Market St. Suite 2510
Philadelphia, PA 19103
Tel:   (215) 735-8600
Fax:   (215) 940-8000
jfrancis@consumerlawfirm.com
dsearles@consumerlawfirm.com

*Attorneys for Plaintiffs Haley Martinez,
Matthew Sheridan, and the Class*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

HALEY MARTINEZ and MATTHEW
SHERIDAN, on behalf of themselves
and all others similarly situated,

Plaintiffs,

v.

UNIVERSITY OF SAN DIEGO,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NUMBER: **'20 CV1946 GPC WVG**

**CLASS ACTION COMPLAINT**

Demand for Jury Trial

Plaintiffs Haley Martinez and Matthew Sheridan ("Plaintiffs") bring this action
on behalf of themselves and all others similarly situated against Defendant University

of San Diego ("USD"), and complain and allege upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys, and say:

## I.   NATURE OF THE CASE

1.     USD is a prestigious private university in San Diego, California, providing higher education in the arts, sciences, law, business, nursing and health science, engineering, leadership and education, and peace studies. Plaintiffs are students at USD's Paralegal Certificate Program.

2.     On March 12, 2020, USD announced that it was canceling in-person classes due to the pandemic of the Coronavirus Disease 2019 ("COVID-19").

3.     Plaintiffs do not dispute that USD's decision to cease in-person instruction was warranted. Plaintiffs ask merely to be refunded the money they spent for educational services that were not provided.

4.     Prior to its March 12, 2020 announcement that it would cease in-person instruction, USD forbade students from transferring credits earned through an online format.[1] For the few classes for which USD provided online instruction, USD charged far less in tuition. For example, USD charged $1,580 per unit of on-campus classes for its Master of Science in Health Care Informatics, but charged *41% less* – $925 per unit – for the online version of the same class, for the same degree.[2]

---

[1]     USD Petition to Transfer Credits, *available at* http://web.archive.org/web/20200611012018/https://www.sandiego.edu/cas/student-resources/transferring-credits.php (last viewed 9/22/2020). *See also* USD School of Business Requirements ("Currently, the School of Business does not accept any online courses or hybrid courses for continuing students at the undergraduate level.") *available at* https://catalogs.sandiego.edu/undergraduate/colleges-schools/business-administration/#requirementstext (last viewed 9/22/20).

[2]     Financial Aid for Graduate Students at USD, *available at* https://onlinedegrees.sandiego.edu/become-a-student/tuition-financial-aid/ (last viewed 9/24/2020).

5.      Though USD could no longer provide the promised hours of instruction, USD demanded that students pay the full tuition price.

6.      Adding insult to injury, USD in fact *increased* its tuition.

7.      Similarly, students paid fees for services and access to facilities and equipment over the full semester. Though USD provided these services and facility/equipment access for only part of the semester, and could not provide them for the full semester, USD demanded that students pay fees for the entire semester.

8.      While the effects of the COVID-19 crisis are shared by all individuals and institutions across the country, USD has failed to apportion the burden in an equitable manner or consistent with its obligations as an educational institution.

9.      USD is not entitled, by either contract or equitable principles, to pass the entire cost of its COVID-19 related closure to its students and their families. Plaintiffs and the putative class are entitled to a partial refund of the tuition, fees, and other related payments for in-person educational services, access to facilities, and/or related opportunities for which they paid that USD did not provide.

10.     USD's deeply discounted online course tuition reflects the inability of online classes to replicate the full academic opportunities and experiences of in-person

CLASS ACTION COMPLAINT

instruction. Remote learning options cannot replace the comprehensive educational experience promised by USD. Access to facilities, materials, laboratories, faculty, student collaboration, and the opportunity for on campus living, school events, dialogue, feedback and critique are essential to the in-person educational experience.

11. Plaintiffs and the putative class contracted and paid for an education, not course credits. They paid for the robust education and full experience of academic life on USD's campus; remote online learning cannot provide the same value as in-person education.

12. As a result, USD has financially damaged Plaintiffs and the putative class members. Plaintiffs bring this suit because Plaintiffs and the class members did not receive the full value of the services for which they paid. They lost the benefit of their bargain and/or suffered out-of-pocket loss. They are entitled to recover compensatory damages, trebling where permitted, and attorneys' fees and costs.

13. Plaintiffs seek, for themselves and the putative class members, a return of a prorated portion of the tuition, fees and other related costs, proportionate to the diminished value of online classes and the amount of time in the Spring 2020 and following semesters when USD ceased in-person classes, campus services and access to campus facilities, continuing through to such time as USD reinstates in-person classes.

## II.   JURISDICTION AND VENUE

14. The Court has original jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because at least one member of the Class, as defined below, is a citizen of a different state than USD, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because USD is headquartered in this district.

16.   The Court has personal jurisdiction over USD because USD is headquartered in this district, because many of the acts and transactions giving rise to this action occurred in this district, and because USD conducts substantial business in this district.

### III.   PARTIES

17.   Plaintiff Haley Martinez is a citizen and resident of the State of California. Plaintiff Martinez is attending USD's Paralegal Certificate Program during the Fall 2020 semester. Plaintiff Martinez paid, either directly or through a third party paying on her behalf, $6,840 in tuition for the 2020 Fall semester (accelerated program).

18.   Plaintiff Matthew Sheridan is a citizen and resident of the State of California. Plaintiff Sheridan is attending USD's Paralegal Certificate Program during the Spring 2020, Summer 2020, and Fall 2020 semesters. Plaintiff Sheridan paid, either directly or through a third party paying on his behalf, $6,525 in tuition for the 2020 Spring, Summer, and Fall semesters.

19.   USD is a private research university comprised of seven constituent schools. USD had a total enrollment of 5,919 undergraduate students, 2,450 graduate students, and 812 law students for the 2019-2020 academic year. USD reported it had an endowment of $546 million for the 2019 fiscal year.

### IV.   FACTUAL ALLEGATIONS

**A.   Contract Terms**

20.   Plaintiffs and Class members entered into a contract with USD whereby, in exchange for the payment of tuition, fees and other related costs, USD would provide an agreed-upon number of classes through in-person instruction (as described in the course catalog) and access to physical resources and school facilities such as libraries, laboratories, and classrooms.

21.   USD committed to providing the courses as described in its marketing materials, website, and the course catalog. As USD promises, "The catalog is the official record of courses offered by USD and has an annual deadline of March 1 for

1  curricular changes. Thus, curricular changes must be approved prior to the March 1
2  catalog deadline in order for those changes to go into effect in the following Fall
3  semester."[3]

4      22.    USD also committed to not revising existing courses unless the revisions
5  are submitted and approved by the responsible USD committee.[4]

6      23.    Plaintiffs accepted USD's offer.

7      24.    Plaintiffs substantially performed their contractual obligations. USD did
8  not.

9  **B.    Closure of Campus and Suspension of In-Person Education**

10     25.    On March 12, 2020, USD announced it was canceling all in-person

11  _____

12  [3]    USD Timeline for Course Approvals through the CCC, *available at*
13  https://www.sandiego.edu/curriculum/core/core-submission/ (last viewed
    9/24/2020). *See also* USD Curriculum and Academic Planning, *available at*
14  https://www.sandiego.edu/cas/faculty/faculty-
    resources/chair/curriculum.php#accordion-panel11 (last viewed 9/24/2020).
15

16  [4]    *See* USD Undergraduate Curriculum Committee (UCC) Procedures and
17  Policies, *available at* https://www.sandiego.edu/curriculum/documents/UCC-
    Procedures-2020-2021.pdf (last viewed 9/24/2020); USD Graduate Studies
18  Committee (GSC) Curriculum Procedures, *available at*
    https://www.sandiego.edu/curriculum/documents/gsc-procedures.pdf (last viewed
19  9/24/2020).
20

21     Course changes can cause a school to lose its accreditation. For example, USD
22  promised Plaintiffs a paralegal program that is accredited by the American Bar
    Association. However, USD's changes to its paralegal classes require USD to
23  document and submit its changes to the American Bar Association, which continues
    to require certain number of hours of "structured instructional activities" above and
24  beyond "[w]ork that would normally be done outside of class . . ." American Bar
25  Association, Template to Report COVID-19 Related Changes, *available at*
    https://www.americanbar.org/content/dam/aba/administrative/paralegals/covid19rep
26  ortingtemplate.docx (last viewed 9/29/20).
27
    USD's changes to its Paralegal Certificate Program have not yet been
28  approved by the American Bar Association.

classes and effectively closed its campus.

26.     While USD's decision to close campus and end in-person classes was warranted by circumstances, it effectively breached or terminated the contract USD had with each and every student and tuition provider, who paid for the opportunity to participate fully in the academic life on the USD campus.

27.     Though all in-person instruction ended after USD's March 12, 2020 announcement, some classes were taught in an online format beginning March 23, 2020. Even students with concentrations in areas where in-person instruction is especially crucial (such as music, theatre, and the sciences), USD provided either no instruction or only remote, online instruction.

28.     For example, while USD provided online instruction for some of Plaintiff Sheridan's Spring 2020 classes after its March 12, 2020 closure announcement, it provided fewer hours of instruction and fewer days of instruction than promised.

29.     As a result of the closure of USD's campuses and facilities, USD has failed to deliver the educational services, facilities, access and/or opportunities for which Plaintiffs and the putative class contracted and paid, either directly or through a third-party on their behalf.

30.     On July 29, 2020, less than a month before the Fall semester began for most students, USD canceled all in-person classes for the Fall 2020 semester and announced that all Fall 2020 semester courses would be taught only online.

31.     Though Plaintiffs and members of the Class paid USD tuition in exchange for a full semester of in-person education, USD ceased to provide the in-person education it promised, and thus has failed to uphold its side of the agreement. Nonetheless, USD insists that students uphold their side of the agreement, and refuses to refund tuition and related expenses.

32.     In so doing, USD is attempting to replace the irreplaceable – on-campus life at an elite university – with "virtual learning" via online classes, and is attempting to pass off this substitute educational experience as the same as or just as good as full

1 participation in the university's academic life.

2      33.    Plaintiffs and members of the Class paid USD tuition in reliance on its
3 promise of teaching a certain number of courses in an in-person course format and
4 with in-person facility access. Plaintiffs did not choose to attend and/or pay tuition for
5 an online institution of higher learning, but instead chose to attend USD's institution
6 and enroll on an in-person basis.

7 **C.    Inferiority of Online Educational Experience**

8      34.    At least one academic study found that "[o]nline courses do less to
9 promote academic success than do in person courses." The study found that:

10           a)    Taking a course online reduced student achievement in that course
11                 by .44 points on the traditional four-point grading scale, a full one-
12                 third of a standard deviation;

13           b)    Specifically, students taking the in-person course earned roughly a
14                 B- (2.8 GPA) versus a C (2.4 GPA) for students taking an online
15                 version of the same course;

16           c)    Taking a course online also reduces future grades by 0.42 points
17                 for courses taken in the same subject area in the following semester;
18                 and

19           d)    Taking an online course reduced the probability of the student
20                 remaining enrolled in the university a year later by over ten
21                 percentage points.

22 Eric P. Bettinger *et al., Virtual Classrooms: How Online College Courses Affect*
23 *Student Success*, AMERICAN ECONOMIC REVIEW, Vol. 107, No. 9, p. 2857.

24      35.    The move to online-only classes deprived students of the opportunity to
25 benefit from a wide variety of academic and student events, on-campus entertainment,
26 facilities, and athletic programs, which provided considerable value to Plaintiffs and
27 the Class members.

28      36.    The online learning options USD offered for the Spring 2020, Summer

2020, and Fall 2020 semesters, though consistent with safety measures, cannot provide the academic and collegiate experience USD extols.

37.    For example, USD lauds its Paralegal Certificate Program as giving students "[i]nternships to gain real world experience and hit the ground running."[5] Plaintiff Sheridan attended the internship program at USD in the Summer 2020 semester. But instead of providing the "real world" internship as promised, USD provided only a "simulated" internship.

38.    USD itself recognized that the "simulated" internship it provided was not reasonably equivalent to its promised internship; USD instructed students such as Plaintiff Sheridan that while the normal internship program qualified as "experience" and could be listed as such in their resume, the internship program USD actually provided qualified only as "education," and could not be listed as "experience" in their resume.

39.    USD's own policies recognize the inferiority of online classes. For example, as of June 2020, USD forbade students from transferring course credits earned through an online format.[6]

---

[5]    USD Paralegal Program, Prospective Students, "Why Choose USD's Paralegal Program?" *available at* https://www.sandiego.edu/law/academics/paralegal/prospective-students.php#content-accordion3 (last viewed 9/29/20). *See also* USD Paralegal Studies, Curriculum ("each student in the day program completes an internship in a corporation, law office, legal clinic or government agency."), *available at* https://catalogs.sandiego.edu/graduate/colleges-schools/paralegal-studies/#text (last viewed 9/29/20).

[6]    USD Petition to Transfer Credits, *available at* http://web.archive.org/web/20200611012018/https://www.sandiego.edu/cas/student-resources/transferring-credits.php (last viewed 9/22/2020). *See also* USD School of Business Requirements ("Currently, the School of Business does not accept any online courses or hybrid courses for continuing students at the undergraduate level.") *available at* https://catalogs.sandiego.edu/undergraduate/colleges-schools/business-administration/#requirementstext (last viewed 9/22/20).

> ## Transfer Requirements
>
> ☐ No online courses accepted

40.     As another example, its Law School Academic Rules specifically define class attendance as meaning "physical presence."[7]

> **XIV.   ATTENDANCE AND PREPARATION**
>
>   A.  Class Attendance. Attendance is expected in all classes. Attendance means physical presence in the classroom. Regular and punctual class attendance is necessary to satisfy the class hour's requirement.

41.     As yet another example, so as to provide "meaningful student-faculty interactions," USD requires its College of Arts and Sciences faculty to be physically present for office hours:[8]

- "It is a primary duty of each faculty member to be available to students for help and guidance. Consequently, the faculty member will be on campus and available beyond the hours of actual classroom instruction."

- "The number of scheduled, face-to-face office hours is at least five per week regardless of teaching load."

- "Faculty may hold additional 'virtual' office hours, but these shall not replace or be in lieu of on campus office hours."

---

[7]     USD Law School Academic Rules, August 2020, at 31, *available at* https://www.sandiego.edu/law/documents/academics/academic-rules-august-2020.pdf (last viewed 9/24/2020) (highlights added).

[8]     USD Guidelines for Faculty Scheduling, *available at* https://www.sandiego.edu/cas/faculty/faculty-resources/chair/faculty.php#accordion-panel10 (last viewed 9/24/2020).

**D.      Lower Tuition for Online Education**

42.      In-person education is worth more than online education.

43.      Accordingly, the tuition and fees for in-person instruction at USD are higher than tuition and fees for its own online classes and for other online institutions. Such costs cover not just the academic instruction, but encompass an entirely different experience which includes but is not limited to:

      a)      Face to face interaction with professors, mentors, and peers;

      b)      Access to facilities such as libraries, laboratories, computer labs, and study rooms;

      c)      Student governance and student unions;

      d)      Extra-curricular activities, groups, intramural sports, etc.;

      e)      Student art, cultures, and other activities;

      f)      Social development and independence;

      g)      Hands on learning and experimentation; and

      h)      Networking and mentorship opportunities.

44.      The fact that USD students paid a higher price for an in-person education than they would have paid for an online education is illustrated by the vast price difference in USD's in-person, on-campus programs versus USD's own online learning program.

45.      For example, USD charged $1,580 per unit of on-campus classes for its Master of Science in Health Care Informatics, but charged 41% less – $925 per unit – for the online version of the same class, for the same degree.[9]

---

[9]      Financial Aid for Graduate Students at USD, *available at* https://onlinedegrees.sandiego.edu/become-a-student/tuition-financial-aid/ (last viewed 9/24/2020). *Compare* USD Undergraduate Educational Cost, *available a*t https://www.sandiego.edu/one-stop/tuition-and-fees/undergraduate.php (last viewed 9/24/2020); USD Graduate and Doctoral Educational Cost, *available at* https://www.sandiego.edu/one-stop/tuition-and-fees/graduate.php (last viewed 9/24/2020); USD School of Law Cost of Attendance, *available at*

**E.      Damages**

46.      Through this lawsuit, Plaintiffs seek for themselves and Class members USD's disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring 2020 semester when classes moved online and campus services ceased being provided, accounting for the diminished value of educational opportunities, the reduced hours of instruction, as well as for each subsequent semester and continuing until USD resumes in-person classes. Plaintiffs seek return of these amounts on behalf of themselves and the Class as defined below.

47.      Plaintiffs also seek damages relating to USD's passing off an online, "virtual" college experience as similar in kind to full immersion in the academic life of a college campus.

## V.      CLASS ACTION ALLEGATIONS

48.      Plaintiffs seeks to represent a class defined as:

> Any person who paid or caused to be paid tuition and/or fees to attend the University of San Diego when classes and/or coursework were limited in whole or in part to online attendance as a result of or in connection with COVID-19.

Specifically excluded from the Class are USD, USD's officers, directors, trustees and agents, the judge assigned to this action, and any member of the judge's immediate family.

49.      Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

50.      **Numerosity.** The members of the Class are geographically dispersed and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiffs reasonably estimate that there are thousands of members in the Class.

---

https://www.sandiego.edu/law/financial-aid/cost-of-attendance/ (last viewed 9/24/2020).

Although the precise number of Class members is unknown to Plaintiffs at this time, the true number of Class members is known by USD and may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of USD and third-party retailers and vendors.

51. **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

       a)    whether USD accepted money from Class members in exchange for the promise to provide services;

       b)    whether USD provided the services for which Class members contracted;

       c)    whether Class members are entitled to a refund for that portion of the tuition and fees that was contracted for services that USD did not provide; and

       d)    whether USD is liable to Plaintiffs and the Class for unjust enrichment.

52. **Typicality.** Plaintiff's claims are typical of the claims of the other members of the Class in that, among other things, all Class members were similarly situated and were comparably injured through USD's wrongful conduct as set forth herein. Further, there are no defenses available to USD that are unique to Plaintiff.

53. **Adequacy of Representation.** Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class. Furthermore, Plaintiffs have no interests that are antagonistic to those of the Class.

54. **Superiority.** A class action is superior to all other available means for the

1  fair and efficient adjudication of this controversy. The damages or other financial
2  detriment suffered by individual Class members are relatively small compared to the
3  burden and expense of individual litigation of their claims against USD. It would, thus,
4  be virtually impossible for the Class on an individual basis, to obtain effective redress
5  for the wrongs committed against them. Furthermore, even if Class members could
6  afford such individualized litigation, the court system could not. Individualized
7  litigation would create the danger of inconsistent or contradictory judgments arising
8  from the same set of facts. Individualized litigation would also increase the delay and
9  expense to all parties and the court system from the issues raised by this action. By
10 contrast, the class action device provides the benefits of adjudication of these issues in
11 a single proceeding, economies of scale, and comprehensive supervision by a single
12 court, and presents no unusual management difficulties under the circumstances.

13         55.    In the alternative, the Class may also be certified because:

14                a)    the prosecution of separate actions by individual Class members
15                      would create a risk of inconsistent or varying adjudications with
16                      respect to individual Class members that would establish
17                      incompatible standards of conduct for the USD; and/or
18                b)    the prosecution of separate actions by individual Class members
19                      would create a risk of adjudications with respect to them that would,
20                      as a practical matter, be dispositive of the interests of other Class
21                      members not parties to the adjudications, or substantially impair or
22                      impede their ability to protect their interests; and/or
23                c)    USD has acted or refused to act on grounds generally applicable to
24                      the Class as a whole, thereby making appropriate final declaratory
25                      and/or injunctive relief with respect to the members of the Class as
26                      a whole.

27

28

## COUNT I

### Breach of Contract

56.    Plaintiffs restate, reallege, and incorporate by reference the allegations contained in all preceding paragraphs of this complaint as if fully set forth herein.

57.    Plaintiffs bring this claim individually and on behalf of the members of the Class against USD.

58.    Through its policies, the admission agreement, and payment of tuition and fees, Plaintiffs and each member of the Class entered into a binding contract with USD.

59.    As part of the contract, and in exchange for the aforementioned consideration, USD promised to provide in-person education services, including in-person instruction and access to on-campus resources, for the full duration of the Spring 2020 semester, and continuing into the 2020-2021 academic year.

60.    Plaintiffs and Class members fulfilled their end of the bargain when they paid monies due for tuition, fees, and related expenses.

61.    USD has failed to provide the contracted-for services but has retained tuition monies paid by Plaintiffs and the Class, and refuses to issue a corresponding tuition adjustment.

62.    Plaintiffs and members of the Class have suffered damage as a direct and proximate result of USD's breach, including but not limited to deprivation of the education, experience, and services that they were promised and for which they have already paid.

63.    As a direct and proximate result of USD's breach, Plaintiffs and the Class are entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to reimbursement of certain tuition, fees, and other expenses that were collected by USD for services that USD has failed to deliver.

## COUNT II

### Unjust Enrichment

64.     Plaintiffs restate, reallege, and incorporate by reference the allegations contained in all preceding paragraphs of this complaint as if fully set forth herein.

65.     Plaintiffs bring this claim individually and on behalf of the members of the Class against USD, and in the alternative to Count I.

66.     Plaintiffs and members of the Class conferred a benefit on USD in the form of monies paid for tuition, fees, and related expenses in exchange for certain service and promises. This tuition was intended to cover in-person educational services for the academic semester.

67.     USD voluntarily accepted and retained this benefit by accepting payment.

68.     USD has retained this benefit even though it ceased providing the full education, experience, and services for which the tuition and fees were collected.

69.     The online education services USD substituted for the in-person education for which Plaintiffs and class members paid has a substantially lesser value, but USD has nonetheless retained full payment.

70.     It would be unjust and inequitable for USD to retain benefits in excess of the services it provided, and USD should be required to disgorge any tuition, fees and related expenses that exceed the value of online education.

## COUNT III

### Unfair and Deceptive Acts and Practices

71.     Plaintiffs restate, reallege, and incorporate by reference the allegations contained in all preceding paragraphs of this complaint as if fully set forth herein.

72.     This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

73.     Plaintiffs and the other members of the Class are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought USD's educational services for personal purposes. USD is a "person" under Cal. Civ. Code §

1761(c).

74.     USD's educational services are "services" under Cal. Civ. Code § 1761(b). Plaintiffs, the other members of the Class, and USD have engaged in "transactions," as that term is defined by California Civil Code § 1761(e). These transactions all occurred on in the State of California.

75.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purposes of the CLRA, and the conduct was undertaken by USD in transactions intended to result in, and which did result in, the sale of services to "consumers," as that term is defined in the CLRA.

76.     USD's false and fraudulent representations and omissions have violated, and continue to violate the CLRA because they extend to transactions that are intended to result, or have resulted, in the sale of services to consumers, including the Plaintiffs and the Class members.

77.     USD's conduct violates Cal. Civ. Code § 1770(a)(5), which prohibits "[r]epresenting that . . . services have . . . characteristics . . . that they do not have," and Cal. Civ. Code § 1770(a)(7), which prohibits: "[r]epresenting that . . . services are of a particular standard, quality, or grade . . . if they are of another," causing injury to Plaintiffs and the Class.

## COUNT IV

### Violation of California's Unfair Competition Law

78.     Plaintiffs restate, reallege, and incorporate by reference the allegations contained in all preceding paragraphs of this complaint as if fully set forth herein.

79.     This cause of action is brought pursuant to California's Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*.

80.     By committing the acts and practices alleged herein, USD has engaged in deceptive, unfair, and unlawful business practices in violation of the UCL and similar statutes.

81.   Plaintiffs have standing to pursue this claim as they have suffered injury in fact and have lost money or property as a result of USD's actions as set forth above. Class members also have suffered injury in fact and have lost money or property as a result of USD's actions as set forth above.

82.   The violation of any law constitutes an "unlawful" business practice under Cal. Bus. & Prof. Code § 17200 and similar statutes.

83.   USD has violated the UCL's proscription against engaging in unlawful conduct as a result of its violations of, *inter alia*, the CLRA and similar statutes, as alleged above.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against USD as follows:

A.   For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class;

B.   A declaration that USD is financially responsible for notifying members of the Classes of the pendency of this suit;

C.   An order requiring an accounting for, and imposition of a constructive trust upon, all monies received by USD as a result of the conduct alleged herein;

D.   For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

E.   For actual, compensatory, and punitive damages in amounts to be determined by the Court and/or jury;

F.   For prejudgment interest on all amounts awarded;

G.   For an order of restitution and all other forms of equitable monetary relief, including disgorgement;

H.   For injunctive and declaratory relief as the Court may deem proper;

I.   For an order awarding Plaintiffs and the Class reasonable attorneys' fees

1  and expenses and costs of suit; and

2         J.      All other relief to which Plaintiffs and members of the Class may be

3  entitled by law or in equity.

4                                    **JURY DEMAND**

5         Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by

6  jury of any and all issues in this action so triable of right.

7

8  Dated: October 1, 2020                    Respectfully submitted,

9                                            HALEY MARTINEZ and MATTHEW
                                             SHERIDAN, *on behalf of themselves and*
10                                           *all others similarly situated.*

11                                 By:       */s/Tammy Hussin*
12                                           Tammy Hussin, Esq.
13                                           **HUSSIN LAW**
                                             1596 N. Coast Highway 101
14                                           Encinitas, CA 92024
                                             Tel: (877) 677-5397
15                                           Fax: (877) 667-1547
16                                           tammy@hussinlaw.com

17

18                                 By:       */s/Yvette Golan*
                                             Yvette Golan*
19                                           **THE GOLAN FIRM**
20                                           2000 M Street, NW, Suite #750-A
                                             Washington, D.C. 20036
21                                           T: (866) 298-4150
22                                           F: (928) 441-8250
                                             ygolan@tgfirm.com
23

24                                 By:       */s/James A. Francis*
                                             James A. Francis*
25                                           John Soumilas*
26                                           David A. Searles*
                                             Edward H. Skipton*
27                                           **FRANCIS MAILMAN SOUMILAS,**
28                                           **P.C.**

1   1600 Market Street, Suite 2510
Philadelphia, PA 19103
2   T: (215) 735-8600
F: (215) 940-8000
3   jfrancis@consumerlawfirm.com
4   jsoumilas@consumerlawfirm.com
dsearles@consumerlawfirm.com
5   eskipton@consumerlawfirm.com

6

7   *Pro hac vice forthcoming

8   Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28