Tammy Hussin (SBN 155290)
tammy@hussinlaw.com
**HUSSIN LAW FIRM**
1596 N. Coast Highway 101
Encinitas, CA 92024
Tel:    (877) 677-5397
Fax:    (877) 667-1547
*Additional Attorneys for Plaintiffs Listed Below*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re University of San Diego Tuition and Fees COVID-19 Refund Litigation | Master File No. 20-cv-1946-LAB-WVG |

**CONSOLIDATED CLASS ACTION COMPLAINT FOR:**

**(1)  BREACH OF CONTRACT;**

**(2)  UNJUST ENRICHMENT;**

**(3)  CONVERSION;**

**(4)  VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT ("CLRA"), CAL. CIV. CODE §§ 1750-1785; and**

**(5)  VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL"), BUSINESS AND PROFESSIONS CODE §§ 17200, *et seq.***

**DEMAND FOR JURY TRIAL**

This document relates to:

All Actions

# TABLE OF CONTENTS

**Page**

I.    NATURE OF THE ACTION ................................................. 1

II.   PARTIES ................................................................ 4

III.  JURISDICTION AND VENUE .............................................. 5

IV.   FACTUAL ALLEGATIONS ................................................. 6

      A.  Contract Terms ..................................................... 6

      B.  Closure of Campus and Suspension of In-Person Education ........... 16

      C.  Materiality of USD's Breach ...................................... 19

      D.  Lower Tuition for Online Education ............................... 21

      E.  Damages .......................................................... 23

V.    CLASS ACTION ALLEGATIONS ........................................... 23

      A.  Class Definition ................................................. 23

      B.  Numerosity ....................................................... 24

      C.  Adequacy ......................................................... 24

      D.  Typicality ....................................................... 24

      E.  Superiority ...................................................... 24

      F.  Commonality and Predominance ..................................... 26

VI.   FIRST CAUSE OF ACTION .............................................. 26

      Breach of Contract ................................................... 26

VII.  SECOND CAUSE OF ACTION ............................................. 29

      Unjust Enrichment .................................................... 29

VIII. THIRD CAUSE OF ACTION .............................................. 30

      Conversion ........................................................... 30

IX.   FOURTH CAUSE OF ACTION ............................................. 32

      Violation of California's Consumers Legal Remedies Act ("CLRA"),
      Cal. Civ. Code §§ 1750-1785 ......................................... 32

-i-

X.  FIFTH CAUSE OF ACTION                                         33

    Violation of California's Unfair Competition Law ("UCL"), California
    Business and Professions Code §§ 17200, *et seq.*               33

XI.  PRAYER FOR RELIEF                                            36

XII. DEMAND FOR JURY TRIAL                                        37

**CONSOLIDATED CLASS ACTION COMPLAINT**

Plaintiffs EDGAR CHAVARRIA, CATHERINE HOLDEN, HALEY MARTINEZ, and MATTHEW SHERIDAN ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys, hereby file the Class Action Complaint against Defendant UNIVERSITY OF SAN DIEGO, a California corporation ("USD"):

## I.      NATURE OF THE ACTION

1.      USD is a prestigious private university in San Diego, California, providing higher education in the arts, sciences, law, business, nursing and health science, engineering, leadership and education, and peace studies. Plaintiffs are students at USD's Paralegal Certificate Program (Martinez and Sheridan) and undergraduate program (Chavarria and Holden).

2.      On March 12, 2020, USD announced that it was canceling in-person classes due to the pandemic of the Coronavirus Disease 2019 ("COVID-19").

3.      Plaintiffs do not dispute that USD's decision to cease in-person instruction was warranted. Plaintiffs ask merely to be refunded the money they spent for educational services that were not provided.

4.      Prior to its March 12, 2020 announcement that it would cease in-person instruction, USD forbade students from transferring credits earned through an online format.[1] For the few classes for which USD provided online instruction, USD charged far less in tuition. For example, USD charged $1,580 per unit of on-campus classes for its

---

[1] USD Petition to Transfer Credits, *available at* http://web.archive.org/web/20200611012018/https://www.sandiego.edu/cas/student-resources/transferring-credits.php (last viewed Sept. 22, 2020). *See also* USD School of Business Requirements ("Currently, the School of Business does not accept any online courses or hybrid courses for continuing students at the undergraduate level.") *available at* https://catalogs.sandiego.edu/undergraduate/colleges-schools/business-administration/#requirementstext (last viewed Sept. 22, 2020).

**CONSOLIDATED CLASS ACTION COMPLAINT**

Master of Science in Health Care Informatics, but charged **41% less** – $925 per unit – for the online version of the same class, for the same degree.[2]



5.   Though USD could no longer provide the promised hours of instruction, USD demanded that students pay the full tuition price.

6.   Adding insult to injury, USD in fact *increased* its tuition.

7.   Similarly, students paid fees for services and access to facilities and equipment over the full semester. Though USD provided these services and facility/equipment access for only part of the semester, and could not provide them for the full semester, USD demanded that students pay fees for the entire semester.

8.   While the effects of the COVID-19 crisis are shared by all individuals and institutions across the country, USD has failed to apportion the burden in an equitable manner or consistent with its obligations as an educational institution.

---

[2]  Financial Aid for Graduate Students at USD, *available at* https://onlinedegrees.sandiego.edu/become-a-student/tuition-financial-aid/ (last viewed Sept. 24, 2020).

**CONSOLIDATED CLASS ACTION COMPLAINT**

9.      USD is not entitled, by either contract or equitable principles, to pass the entire cost of its COVID-19 related closure to its students and their families. Plaintiffs and the putative class are entitled to a partial refund of the tuition, fees, and other related payments for in-person educational services, access to facilities, and/or related opportunities for which they paid that USD did not provide.

10.     USD's deeply discounted online course tuition reflects the inability of online classes to replicate the full academic opportunities and experiences of in-person instruction. Remote learning options cannot replace the comprehensive educational experience promised by USD. Access to facilities, materials, laboratories, faculty, student collaboration, and the opportunity for on campus living, school events, dialogue, feedback and critique are essential to the in-person educational experience.

11.     Plaintiffs and the putative class contracted and paid for an education, not course credits. They paid for the robust education and full experience of academic life on USD's campus; remote online learning cannot provide the same value as in-person education.

12.     As a result, USD has financially damaged Plaintiffs and the putative class members. Plaintiffs bring this suit because Plaintiffs and the class members did not receive the full value of the services for which they paid. They lost the benefit of their bargain and/or suffered out-of-pocket loss. They are entitled to recover compensatory damages, trebling where permitted, and attorneys' fees and costs.

13.     Plaintiffs seek, for themselves and the putative class members, a return of a prorated portion of the tuition, fees and other related costs, proportionate to the diminished value of online classes and the amount of time in the Spring 2020 and following semesters when USD ceased in-person classes, campus services and access to campus facilities,

-3-

CONSOLIDATED CLASS ACTION COMPLAINT

1    continuing through to such time as USD reinstates in-person classes.

2                                   **II.      PARTIES**

3           14.    Plaintiff Edgar Chavarria was an undergraduate student during the Spring

4    2020 semester and graduated in May 2020. In the Spring 2020 semester, USD charged

5    Plaintiff approximately $25,225.00 in tuition and at least $298.00 in Mandatory Fees,

6    including $170.00 in health services fees, $121.00 in student association fees, and $7.00

7    in media fees. Additionally, Plaintiff was charged $80.00 for a Course fee. Plaintiff

8    Chavarria is a resident of Lafayette, Colorado. Plaintiff Chavarria paid tuition and fees

9    for in-person educational services, experiences, opportunities, and other related collegiate

10   services. Plaintiff Chavarria has not been provided a pro-rated refund of the tuition for his

11   in-person classes that were discontinued and moved online, or the Mandatory Fees he

12   paid after the University's facilities were closed and events were cancelled. Plaintiff

13   Chavarria was also charged the $70.00 student life pavilion fee and $140.00 parking fee

14   but was provided a 60% prorated refund during late March 2020. Whereby, the University

15   acknowledges that certain services were not provided in accordance with prior

16   arrangements and students like Plaintiffs did not receive all of the benefits of their bargain.

17          15.    Plaintiff Catherine Holden is a resident of Los Angeles County.  Plaintiff

18   Holden was an undergraduate student at the University of San Diego during the 2019-

19   2020 academic year.  Plaintiff Holden completed her Bachelor of Arts Degree in

20   Communications and Marketing in May 2020.

21          16.    Plaintiff Haley Martinez lives in the State of California, but her permanent

22   address and her domicile is in the State of New York. Plaintiff Martinez is thus a citizen

23   of the State of New York. Plaintiff Martinez is attending USD's Paralegal Certificate

24   Program during the Fall 2020 semester. Plaintiff Martinez paid, either directly or through

25
                                              -4-
                          **CONSOLIDATED CLASS ACTION COMPLAINT**

a third party paying on her behalf, $6,840 in tuition for the 2020 Fall semester (accelerated program).

17.    Plaintiff Matthew Sheridan is a citizen and resident of the State of California. Plaintiff Sheridan is attending USD's Paralegal Certificate Program during the Spring 2020, Summer 2020, and Fall 2020 semesters.  Plaintiff Sheridan paid, either directly or indirectly through a third party paying on his behalf, $6,525 in tuition for the 2020 Spring, Summer, and Fall semesters.

18.    Defendant the University of San Diego ("USD") is a private university incorporated in the State of California.  USD reported it had an endowment of $546 million for the 2019 fiscal year.  For the Spring 2020 semester, USD had a total enrollment of 5,643 undergraduate students and 3,120 graduate students. USD is a non-profit corporation. Its principal place of business is in San Diego, California, its headquarters is in San Diego, California, and it conducts the vast majority of its activities, including the activities giving rise to this suit, in San Diego, California.

### III.    JURISDICTION AND VENUE

19.    The Court has original jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because at least one member of the Class, as defined below, is a citizen of a different state than USD, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

20.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because USD is headquartered in this district.

21.    The Court has personal jurisdiction over USD because USD is headquartered in this district, because many of the acts and transactions giving rise to this action occurred

CONSOLIDATED CLASS ACTION COMPLAINT

1   in this district, and because USD conducts substantial business in this district. USD's

2   principal place of business is in this district.

3      22.   A substantial portion of USD students are not citizens of California. In the

4   2019-2020 academic year, 46% of USD's first-time, first-year students were not citizens

5   of California.[3] Over 36% of USD's students enrolled in the Spring 2020 semester are not

6   citizens of California (*i.e.,* 2,723 full-time students and 461 part-time students are citizens

7   of another state or country).

8      23.   Plaintiff Martinez is domiciled in New York, and she is a citizen of New

9   York.

10                    **IV.      FACTUAL ALLEGATIONS**

11         **A.   Contract Terms**

12      24.   Plaintiffs and Class members entered into a contract with Defendant

13   whereby, in exchange for the payment of tuition, fees and other related costs, Defendant

14   would provide an agreed-upon number of classes through in-person instruction (as

15   described in the course catalog) and access to physical resources and school facilities such

16   as libraries, laboratories, and classrooms.

17      25.   The nature of the relationship between Plaintiffs and Defendant was

18   established through all the documents and materials entered into and provided through

19   the application process, the admission process, enrollment, the registration process, and

20   the payment process, including through many documents that are exclusively in the

21   control of Defendant.

22   _____

23   [3]  University of San Diego, 2019-2020 Common Data Set at 16, *available at*
     https://www.sandiego.edu/facts/documents/cds/CDS_2019-20.pdf (last viewed Nov. 16,
24   2020).

                                  -6-
25                    **CONSOLIDATED CLASS ACTION COMPLAINT**

26.     Defendant committed to providing the courses as described in its marketing materials, website, and the course catalog.

27.     For each class, Defendant promised to provide the education specified in the course catalog and syllabus, including the time and physical location of the in-person instruction. An example of such a promise is below:[4]

**20th Century Continental Phil**                                        Michelle Gilmore-Grier
PHIL 474 Section 01 CRN: 4148
Credits:          3
Meeting Time:     TR 10:45 am - 12:05 pm, CH112 112 (27-JAN-2020 - 13-MAY-2020)

A survey of the major figures or major themes of continental philosophy from its origins in the Twentieth Century. Figures such as Husserl, Heidegger, Sartre, Arendt, Foucault, Derrida, etc.. Movements such as phenomenology, hermeneutics, existentialism, critical theory, structuralism, post-structuralism, and post-modernism among others. Themes such as the relationship between mind and body, thought and action, authenticity and inauthenticity, death and meaning, politics and identity, language and meaning.

28.     As Defendant promised, "The catalog is the official record of courses offered by USD and has an annual deadline of March 1 for curricular changes. Thus, curricular changes must be approved prior to the March 1 catalog deadline in order for those changes to go into effect in the following Fall semester."[5]

29.     Defendant also committed to not revising existing courses unless the revisions are submitted and approved by the responsible school committee.[6]

---

[4]  USD Faculty/Student Self-Service System, *available for search at* https://usdssb.sandiego.edu/prod/usd_course_query.p_create (last viewed Dec. 31, 2020).

[5]  USD Timeline for Course Approvals through the CCC, *available at* https://www.sandiego.edu/curriculum/core/core-submission/ (last viewed Sept. 24, 2020). *See also* USD Curriculum and Academic Planning, *available at* https://www.sandiego.edu/cas/faculty/faculty-resources/chair/curriculum.php#accordion-panel11 (last viewed Sept. 24, 2020).

[6]  *See* USD Undergraduate Curriculum Committee (UCC) Procedures and Policies, *available at* https://www.sandiego.edu/curriculum/documents/UCC-Procedures-2020-2021.pdf (last viewed Sept. 24, 2020); USD Graduate Studies Committee (GSC) Curriculum Procedures, *available at* https://www.sandiego.edu/curriculum/documents/gsc-procedures.pdf (last viewed Sept. 24, 2020).

        Course changes can cause a school to lose its accreditation. For example, USD promised Plaintiffs a paralegal program that is accredited by the American Bar Association. However, USD's changes to its paralegal classes require USD to document

30.     So as to provide "meaningful student-faculty interactions," Defendant requires its College of Arts and Sciences faculty to be physically present for office hours:[7]

- "It is a primary duty of each faculty member to be available to students for help and guidance. Consequently, the faculty member will be on campus and available beyond the hours of actual classroom instruction."

- "The number of scheduled, face-to-face office hours is at least five per week regardless of teaching load."

- "Faculty may hold additional 'virtual' office hours, but these shall not replace or be in lieu of on campus office hours."

31.     Similarly, USD requires undergraduate students to live on campus for the first and second year of their studies.[8] According to USD, "Higher education research consistently demonstrates the positive outcomes of living on campus. It helps to build a 'holistic and transformative educational experience' to maintain USD's liberal arts values and intellectual culture."[9]

---

and submit its changes to the American Bar Association, which continues to require certain number of hours of "structured instructional activities" above and beyond "[w]ork that would normally be done outside of class . . ." American Bar Association, Template to Report COVID-19 Related Changes, *available at* https://www.americanbar.org/content/dam/aba/administrative/paralegals/covid19reportin gtemplate.docx (last viewed Sept. 29, 2020).

   USD's changes to its Paralegal Certificate Program have not yet been approved by the American Bar Association.

[7] USD Guidelines for Faculty Scheduling, *available at* https://www.sandiego.edu/cas/faculty/faculty-resources/chair/faculty.php#accordion-panel10 (last viewed Sept. 24, 2020).

[8] USD One Stop, *available at* https://www.sandiego.edu/one-stop/tuition-and-fees/undergraduate.php#2011_3 (last viewed April 27, 2021).

[9] USD, Information on the Second-year housing requirement, *available at* https://www.sandiego.edu/residentiallife/documents/SecondYearResidencyRequirment.p df (last viewed April 27, 2021) (internal citation omitted).

-8-

**CONSOLIDATED CLASS ACTION COMPLAINT**

32.    Defendant also promised Plaintiffs and Class members a rich educational experience of a residential program. Part of the agreement between Plaintiffs and Defendant are the countless representations about every aspect of a student's life on campus that Defendant uses to attract students, made in Defendant's course catalogs, marketing materials, acceptance letters, enrollment acknowledgements, student handbooks, and throughout Defendant's website.[10]



33.    In an effort to market itself to prospective students, Defendant touts that it can provide "direct access to our award-winning faculty" in an "inspiring and intimate setting."[11]

---

[10] USD Home page, as it appeared September 1, 2020, *available at* http://web.archive.org/web/20200901063839/https://www.sandiego.edu/.

[11] USD, Why USD?, as it appeared August 23, 2020, *available at* http://web.archive.org/web/20200823193245/https://www.sandiego.edu/admissions/why-usd.php.

CONSOLIDATED CLASS ACTION COMPLAINT

Why USD?

**It's a place like no other.**

. . . Set atop a mesa with stunning, panoramic views of the Pacific Ocean, downtown San Diego and Mission Bay, our students study and collaborate in an inspiring and intimate setting. Small class sizes ensure that you'll have direct access to our award-winning faculty, and our contemporary Catholic values and liberal arts education help to develop ethical leaders and compassionate citizens with a global perspective. Located on the Pacific Rim just 22 miles from the Mexican border, USD is optimally positioned for international activity. While here, you will have the opportunity to expand your horizons by participating in the highest-ranking study abroad program in the nation. Developing meaningful relationships on campus, in the local community and around the world will help you to reach your full potential in mind, body and spirit.

34.    Defendant's representations relate not only to the on-campus, in-person academic program Defendant offers and their students accepted, but also to residential facilities, dining options, sports and recreational facilities, extracurricular activities, mentoring, campus diversity, and health and counseling services — all of which are part and parcel of Defendant's in-person, on-campus program.

35.    By way of just a couple of examples:

- "USD offers tutoring and support services through a number of areas on campus to help students thrive and succeed."[12]

- "All University facilities are generally available to all segments of the University community for University-related uses. The University likewise leases its facilities at times to outside organizations and groups."[13]

---

[12]  USD, Academic Services, *available at* https://catalogs.sandiego.edu/undergraduate/academic-services/ (last viewed Dec. 31, 2020).

[13]  USD, Facilities Scheduling Guidelines, *available at* http://web.archive.org/web/20190525175536/https://www.sandiego.edu/scheduling/policies-guidelines/scheduling-policy.php.

**CONSOLIDATED CLASS ACTION COMPLAINT**

36.   On Defendant's website, describing the "Residential Life and Housing" of its "Student Experience," Defendant proclaims, "What's the best thing about making USD your new home?  Well, everything! You have easy access to classes and your professors. You're in close proximity to your classmates for study group sessions and on-campus events. There's no better way to grow your community than living with your classmates and peers."[14]

37.   Also part of the promised USD "Student Experience," Defendant explains that "Campus dining is about more than food. We strive to create memorable experiences and gathering places that foster a sense of community and comfort."[15]  The webpage then lists 10 eateries/restaurants from which students may choose.

38.   Another part of the USD "Student Experience" is its "Clubs and Organizations." "Student organizations offer opportunities for leadership, personal growth and recreation. They allow you to become an engaged citizen and student leader. Community service initiatives, leadership programs and fraternity and sorority life help you gain valuable skills, complementing your education outside of the classroom."[16]

39.   The "Clubs and Organizations" webpage offers prospective students a window into an array of extracurricular activities USD offers. These activities include:[17]

- Sports Clubs and Recreation: "Learn, live, play! Get active on- and off-campus in the beautiful San Diego community. Campus Recreation offers a variety of fitness, wellness and outdoor

[14]  USD, Residential Life and Housing, *available at* https://www.sandiego.edu/student-experience/housing.php (last viewed Dec. 31, 2020).

[15]  USD, Dining, *available at* https://www.sandiego.edu/student-experience/dining.php (last viewed Dec. 31, 2020).

[16]  USD, Clubs and Organizations, *available at* https://www.sandiego.edu/student-experience/clubs-and-organizations.php (last viewed Dec. 31, 2020).

[17]  *Id.*

**CONSOLIDATED CLASS ACTION COMPLAINT**

adventure that give students opportunities to develop a healthy mind, body and spirit."

- Student Media: "Get hands-on, real-world journalism experience through our entirely student-run media including USDtv, The Vista student newspaper and USD Radio. Student-run media is a forum for the free exchange of ideas that provides the campus community with information and entertainment."

- Student Organizations: "USD is home to more than more than 180 organizations including honor societies, groups for artistic expression, multicultural engagement, philanthropic endeavors and social justice. Find out what sparks your interest while exploring your identity and making lasting connections."

40. Regarding the "Inclusion and Diversity" aspects of the USD "Student Experience," USD boasts that it is "committed to creating a welcoming and inclusive community for students, families, faculty and staff from different backgrounds and faith traditions. As a university dedicated to academic excellence, we believe diverse perspectives maximize the transformative potential of learning, teaching and scholarship."[18]

41. To further these objectives, Defendant advertises a number of on-campus resources, including a Center for Including and Diversity, an LGBTQ+ & Allies Commons, and a Black Student Resource Commons.[19]

42. Defendant further promises, "Centers throughout campus focus on issues related to physical well-being, life away from home and mental health. The on-campus health center, counseling, disability and wellness promotion programs are available to every student, along with high-tech fitness centers, to ensure that you have the resources

---

[18] USD, Inclusion and Diversity, *available at* https://www.sandiego.edu/student-experience/inclusion-and-diversity.php (last viewed Dec. 31, 2020).
[19] *Id.*

**CONSOLIDATED CLASS ACTION COMPLAINT**

1  needed to feel healthy, safe and supported."[20]

2  43.  Defendant also markets "Campus Recreation," which "supports student

3  learning by providing opportunities to be active, develop leadership skills, cultivate

4  community and persist in experiences proven to enhance well-being. We are committed

5  to providing welcoming and well-maintained facilities, staffed with an emphasis on

6  compassionate service. Campus Recreation strives to offer a variety of fitness, wellness

7  and adventure opportunities that integrate habits promoting health in mind, body and

8  spirit …."[21]

9  44.  Defendant touts The McNamara Fitness Center, a 4,000 square foot facility

10  with three Olympic platforms, cardiovascular exercise machines, and weight-lifting

11  equipment.[22]

12  45.  Defendant promises counseling services, including group therapy and

13  support groups, individual counseling, as well as psychological and psychiatric

14  consultations.[23]

15  46.  Defendant also promises a variety of wellness group counseling, including

16  "Coping with Stress and Anxiety," "Grad Student Support," and a "Guy Talk Discussion

17  Group."[24]

18

19  [20] *Id.*

20  [21] USD, Campus Recreation, *available at* https://www.sandiego.edu/campusrecreation/ (last viewed Dec. 31, 2020).

21  [22] USD, Jenny Craig Pavilion, *available at* https://www.sandiego.edu/jenny-craig-pavilion/fitness-center/ (last viewed Dec. 31, 2020).

22  [23] USD, Counseling Center, *available at* https://www.sandiego.edu/counseling-center/ (last viewed Dec. 31, 2020).

23

24  [24] USD, Student Wellness, *available at* https://www.sandiego.edu/wellness/programs-and-services/groups/#accordion-panel1 (last viewed Dec. 31, 2020).

25

-13-

**CONSOLIDATED CLASS ACTION COMPLAINT**

47.   As part of the "Student Experience," Defendant's "two-story, 36,000 square-foot Learning Commons is . . . a place where students do more than learn by listening, they learn by doing — by rolling up their sleeves, taking on challenges, confronting problems and doing those things collaboratively."[25]

48.   Defendant further boasts of the Learning Commons; "Unique among all other teaching and learning spaces on the USD campus, this new building gives students modern, flexible classrooms that feature updated room designs, the latest writing surfaces, cutting-edge technology that enhances collaborative learning experiences and furniture that can be moved, rearranged and completely reconfigured to meet better serve group dynamics."[26]

49.   Additionally, Defendant boasts that the Learning Commons "offers the flexibility that faculty and students need for multidisciplinary instruction, seminars, small-group work and individual study at all hours of the day and night.  At the heart of it all is a creative and dynamic Town Square, an informal gathering space featuring stadium seating for up to 200 people, encircled by a second-story observation gallery and equipped with the latest in sound and video technology to maximize opportunities for events, presentations, films and impromptu socializing.  The Learning Commons hosts classes, study groups, work teams and solo exploration and innovation. It attracts forward thinkers who blaze trails in territories others haven't even thought to explore. It is the gathering place for those who are determined to confront humanity's urgent challenges

---

[25]  USD, Learning Commons, *available at* https://www.sandiego.edu/student-experience/learning-commons.php (last viewed Dec. 31, 2020).
[26]  *Id.*

**CONSOLIDATED CLASS ACTION COMPLAINT**

1    and those who will drive world-altering change."[27]

2       50.    In exchange for these promised services, USD charged tuition and fees. The

3    rate of annual tuition paid by undergraduate students during the 2019-2020 academic year

4    was $50,450, or $25,225 for the semester.[28]   The rate of annual tuition for other

5    specialized degree programs USD offered varied by the program, including $56,230 each

6    year for USD's law school[29], $1,520 per unit for USD's Masters in Business

7    Administration tuition, and $1,535 per unit for USD's School of Nursing and Health

8    Science Master's program.[30]

9       51.    Additionally, Defendant assessed a variety of fees to its students for the

10   2019-2020 academic term.  The estimated fees charged to undergraduate students at USD

11   for the 2019-2020 academic year was approximately $744 per student[31], $481 for USD

12   law school students[32], $237 for Masters and Doctoral students.[33]  These fees are assessed

---

[27]  *Id.*

[28]  USD Undergraduate Educational Cost, available at
http://web.archive.org/web/20200611011302/https://www.sandiego.edu/one-stop/tuition-
and-fees/undergraduate.php (website as of June 11, 2020).

[29]  USD School of Law Cost of Attendance, available at
https://www.sandiego.edu/law/financial-aid/cost-of-attendance/2019-20.php#accordion-
panel1 (last viewed Sept. 24, 2020).

[30]  USD Graduate and Doctoral Educational Cost, available at
http://web.archive.org/web/20200611011319/https://www.sandiego.edu/one-stop/tuition-
and-fees/graduate.php (website as of June 11, 2020).

[31]  USD Undergraduate Educational Cost, available at
http://web.archive.org/web/20200611011302/https://www.sandiego.edu/one-stop/tuition-
and-fees/undergraduate.php (website as of June 11, 2020).

[32]  USD School of Law Cost of Attendance, available at
https://www.sandiego.edu/law/financial-aid/cost-of-attendance/2019-20.php#accordion-
panel1 (last viewed Sept. 24, 2020).

[33]  USD Graduate and Doctoral Educational Cost, available at
http://web.archive.org/web/20200611011319/https://www.sandiego.edu/one-stop/tuition-
and-fees/graduate.php (website as of June 11, 2020).

**CONSOLIDATED CLASS ACTION COMPLAINT**

to students for services rendered, including student center fees and other resources available to students on campus.

52.    Defendant also assessed certain housing fees to putative Class members living in USD's student housing.

53.    Plaintiffs accepted Defendant's offer.

54.    Plaintiffs accepted admission, enrolled, registered for classes, and paid tuition and fees to Defendant in exchange for, and had the reasonable expectation of receiving, among other things: in-person coursework; face-to-face interaction and collaborating with professors, advisors, and peers; access to facilities such as libraries, laboratories, computer labs, and study rooms; student governance and student unions; extra-curricular activities, groups, intramural sports, and related activities; student art, culture, church access, and other activities; social development, fraternal organizations, and independence; hands-on learning and experimentation; and networking and mentorship opportunities.

55.    Plaintiffs substantially performed their contractual obligations. Defendant did not.

56.    Plaintiffs bring this action on behalf of themselves and similarly situated students who enrolled in USD for the Spring 2020 academic term and/or anytime thereafter until in-person instruction resumes to pre-pandemic status.

**B.    Closure of Campus and Suspension of In-Person Education**

57.    On or about March 12, 2020, Defendant announced that "the university is mandating campus-wide remote teaching effective March 23, 2020, through the end of the spring semester" and that "[they] are cancelling all classes from March 14-22." Additionally, on March 12, 2020, Defendant announced that "all USD students who live

-16-

**CONSOLIDATED CLASS ACTION COMPLAINT**

in the residence halls must relocate from campus no later than March 22."[34]

58.     While Defendant's decision to close campus and end in-person classes was warranted by the circumstances, there decision to retain the tuition and fees paid by Plaintiffs and the putative class was not warranted or required by law. As a result, Defendant effectively breached or terminated the contract USD had with each and every student who paid for the opportunity to participate fully in the academic life on the USD campus.

59.     Though all in-person instruction ended after USD's March 12, 2020 announcement, some classes were taught in an online format beginning March 23, 2020. Even for students with concentrations in areas where in-person instruction is especially crucial (such as music, theatre, and the sciences), Defendant provided either no instruction or only remote, online instruction.

60.     For example, while Defendant provided online instruction for some of Plaintiff Sheridan's Spring 2020 classes after its March 12, 2020 closure announcement, it provided fewer hours of instruction and fewer days of instruction than promised.

61.     As a result of the closure of Defendant's campuses and facilities, Defendant has failed to deliver the educational services, facilities, access and/or opportunities for which Plaintiffs and the putative class contracted and paid, either directly or through a third-party on their behalf.

62.     On July 29, 2020, less than a month before the Fall semester began for most students, Defendant canceled all in-person classes for the Fall 2020 semester and

---

[34] USD, March 12, 2020 Letter, Office of the President, *available at* https://www.sandiego.edu/president/documents/emails/2020/coronavirus-mar12-update.html (last viewed April 27, 2021).

**CONSOLIDATED CLASS ACTION COMPLAINT**

announced that all Fall 2020 semester courses would be taught only online.

63. With Fall 2020 classes beginning less than a month later, Defendant's July announcement did not give students the time needed to make alternate arrangements (such as applying to another program).

64. By the time of USD's July 29, 2020 announcement, Plaintiffs had already relied on USD's promises of in-person Fall 2020 courses. For example, they had extended their leases for apartments in the San Diego area.

65. Regarding the Spring 2021 semester, on December 18, 2020 and again on January 8, 2021, USD promised that certain classes would be provided in-person. Again, USD did not fulfill its promise, announcing on February 12, 2021 that all in-person on-campus classes and activities would cease.

66. Though Plaintiffs and members of the Class paid tuition to Defendant in exchange for a full semester of in-person education, Defendant ceased to provide the in-person education it promised, and thus has failed to uphold its side of the agreement. Nonetheless, Defendant insists that students uphold their side of the agreement and refuses to refund tuition and related expenses.

67. In so doing, Defendant is attempting to replace the irreplaceable – on-campus life at an elite university – with "virtual learning" via online classes, and is attempting to pass off this materially different educational experience as the same as or just as good as full participation in the university's academic life.

68. Plaintiffs and members of the Class paid tuition to Defendant in reliance on its promise of teaching a certain number of courses in an in-person course format and with in-person facility access. Plaintiffs did not choose to attend and/or pay tuition for an online institution of higher learning, but instead chose to attend Defendant's institution and

-18-

1    enroll on an in-person basis.

2                    **C.    Materiality of USD's Breach**

3           69.    As USD recognizes, canceling of even one day of class "may amount to the

4    loss of a full week of instruction for the students who are paying considerable tuition."[35]

5    Nonetheless, March 14-22, 2020, USD canceled all instruction, and did not provide any

6    replacement instruction -- remote or otherwise.  When classes resumed, some courses

7    were taught only in an online format, and other courses were not taught at all.

8           70.    The move to online-only classes further deprived students of the opportunity

9    to benefit from a wide variety of academic and student events, on-campus entertainment,

10   facilities, and athletic programs, which are material elements of the contract for which

11   Plaintiff and the Class members agreed to pay for.

12          71.    The online learning options Defendant offered for the Spring 2020, Summer

13   2020, and Fall 2020 semesters, though consistent with safety measures, cannot provide

14   the academic and collegiate experience USD extols.

15          72.    For example, Defendant lauds its Paralegal Certificate Program as giving

16   students "[i]nternships to gain real world experience and hit the ground running."[36]

17   Plaintiff Sheridan attended the internship program at USD in the Summer 2020 semester.

18

19   [35]  USD School of Leadership and Education Sciences, Faculty and Personnel Handbook
     at 134 (2010-2011), *available at*

20   https://sites.sandiego.edu/solesaccreditation/files/2011/01/GBCF-Exhibit-1-SOLES-
     FHB-10-11.pdf (last viewed April 27, 2021).

21   [36]  USD Paralegal Program, Prospective Students, "Why Choose USD's Paralegal
     Program?" *available at* https://www.sandiego.edu/law/academics/paralegal/prospective-

22   students.php#content-accordion3 (last viewed Sept. 29, 2020). *See also* USD Paralegal
     Studies, Curriculum ("each student in the day program completes an internship in a

23   corporation, law office, legal clinic or government agency."), *available at*
     https://catalogs.sandiego.edu/graduate/colleges-schools/paralegal-studies/#text (last

24   viewed Sept. 29, 2020).

25                                        -19-

But instead of providing the "real world" internship as promised, Defendant provided only a "simulated" internship.

73.     Defendant itself recognized that the "simulated" internship it provided was not reasonably equivalent to its promised internship; Defendant instructed students such as Plaintiff Sheridan that while the normal internship program qualified as "experience" and could be listed as such in their resume, the internship program Defendant actually provided qualified only as "education," and could not be listed as "experience" in their resume.

74.     Defendant's own policies recognize that online classes are not the same in those delivered in-person. For example, as of June 2020, Defendant forbade students from transferring course credits earned through an online format.[37]

Transfer Requirements

☐  No online courses accepted

75.     As another example, its Law School Academic Rules specifically define class attendance as meaning "physical presence."[38]

_____

[37]  USD Petition to Transfer Credits, *available at* http://web.archive.org/web/20200611012018/https://www.sandiego.edu/cas/student-resources/transferring-credits.php (last viewed Sept. 22, 2020). *See also* USD School of Business Requirements ("Currently, the School of Business does not accept any online courses or hybrid courses for continuing students at the undergraduate level.") *available at* https://catalogs.sandiego.edu/undergraduate/colleges-schools/business-administration/#requirementstext (last viewed Sept. 22, 2020).

[38]  USD Law School Academic Rules, August 2020, at 31, *available at* https://www.sandiego.edu/law/documents/academics/academic-rules-august-2020.pdf (last viewed Sept. 24, 2020) (highlights added). *See also* USD 2019-2020 Undergraduate Course Catalog at 24 ("Regular and prompt attendance at class is deemed essential for the optimal educational progress of the student, and for the orderly conduct of academic life."), *available at* https://catalogs.sandiego.edu/pdf/2019-2020-undergraduate.pdf (last viewed April 27, 2021); *id.* at 50 ("Students are expected to complete the preponderance

-20-

**XIV.   ATTENDANCE AND PREPARATION**

A.   Class Attendance. Attendance is expected in all classes. Attendance means physical presence in the classroom. Regular and punctual class attendance is necessary to satisfy the class hour's requirement.

76.    The online learning options USD offered to students was materially different because it lacked important features as compared with those courses' in-person counterparts.

77.    Students, like Plaintiffs, have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

78.    Students, like Plaintiffs, have been denied access to facilities such as libraries, laboratories, computer labs, recitations, and study rooms, are integral to a university education.

79.    Students, like Plaintiffs, have been denied access to campus activities, meaningful networking for future careers, and the intellectual and academic development and independence fostered by campus life.

80.    Defendant priced the tuition and Mandatory Fees based on the in-person educational services, opportunities and experiences it was providing on campus.

**D.    Lower Tuition for Online Education**

81.    The market price for in-person education is more than that for online education.

82.    Accordingly, the tuition and fees for in-person instruction at USD are higher than tuition and fees for its own online classes and for other online institutions. Such costs cover not just the academic instruction, but encompass an entirely different experience

of their baccalaureate work at the university, especially in their junior and senior years.").

**CONSOLIDATED CLASS ACTION COMPLAINT**

which includes but is not limited to:

   a)  Face-to-face interaction with professors, mentors, and peers;

   b)  Access to facilities such as libraries, laboratories, computer labs, and study rooms;

   c)  Student governance and student unions;

   d)  Extra-curricular activities, groups, intramural sports, etc.;

   e)  Student art, cultures, and other activities;

   f)  Social development and independence;

   g)  Hands on learning and experimentation; and

   h)  Networking and mentorship opportunities.

83.   The fact that USD students paid a higher price for an in-person education than they would have paid for an online education is illustrated by the vast price difference in USD's in-person, on-campus programs versus Defendant's own online learning program.

84.   For example, Defendant charged $1,580 per unit of on-campus classes for its Master of Science in Health Care Informatics but charged 41% less — $925 per unit — for the online version of the same class, for the same degree.[39]

---

[39]  Financial Aid for Graduate Students at USD, *available at* https://onlinedegrees.sandiego.edu/become-a-student/tuition-financial-aid/ (last viewed Sept. 24, 2020). *Compare* USD Undergraduate Educational Cost, *available at* http://web.archive.org/web/20200611011302/https://www.sandiego.edu/one-stop/tuition-and-fees/undergraduate.php (website as of June 11, 2020); USD Graduate and Doctoral Educational Cost, *available at* http://web.archive.org/web/20200611011319/https://www.sandiego.edu/one-stop/tuition-and-fees/graduate.php (website as of June 11, 2020); USD School of Law Cost of Attendance, *available at* https://www.sandiego.edu/law/financial-aid/cost-of-attendance/2019-20.php#accordion-panel1(last viewed Sept. 24, 2020).

-22-

**CONSOLIDATED CLASS ACTION COMPLAINT**

## E.      Damages

85.     Through this lawsuit, Plaintiffs seek for themselves and Class members Defendant's disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring 2020 semester when classes moved online and campus services ceased being provided, accounting for the diminished value of educational opportunities, the reduced hours of instruction, as well as for each subsequent semester and continuing until USD resumes in-person classes. Plaintiffs seek return of these amounts on behalf of themselves and the Class as defined below.

86.     Plaintiffs also seek damages relating to Defendant's passing off an online, "virtual" college experience as identical to full immersion in the academic life of a college campus.

## V.      CLASS ACTION ALLEGATIONS

### A.      Class Definition

87.     Plaintiffs bring this action pursuant to 28 U.S.C. § 1332(d) on behalf of a proposed class of persons (the "Class"), defined as:

> All students who paid tuition and/or fees to attend the University of San Diego when classes were limited, in whole or in part, to online attendance as a result of or in connection with COVID-19.

88.     Excluded from the Class are Defendant, any of its past or present officers, directors, agents, and affiliates, any judge who presides over the action and members of the judge's immediate family, and all counsel of record.

89.     Plaintiffs reserve the right to expand, limit, modify, or amend the definitions of the class as may be desirable or appropriate during the course of the litigation.

90.     Class certification is proper because the questions raised by the Consolidated Complaint are ones of a common or general interest affecting numerous persons so that it

-23-

CONSOLIDATED CLASS ACTION COMPLAINT

is impracticable to bring them all before the Court.

**B.    Numerosity**

91.    The members of the Class are geographically dispersed and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiffs reasonably estimate that there are thousands of members in the Class. Although the precise number of Class members is unknown to Plaintiffs at this time, the true number of Class members is known by USD and may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of USD and third-party retailers and vendors.

**C.    Adequacy**

92.    Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel that are highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class. Furthermore, Plaintiffs have no interests that are antagonistic to those of the Class.

**D.    Typicality**

93.    Plaintiffs' claims are typical of the claims of the absent Class members. Among other things, all Class members were similarly situated and were comparably injured through USD's wrongful conduct as set forth herein. Further, there are no defenses available to USD that are unique to Plaintiffs.

**E.    Superiority**

94.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Here, classwide litigation is superior to individually litigating and adjudicating the dispute because the cost of litigating an individual claim for partial refund of tuition or fees makes such individual litigation unfeasible, given the

costs of bringing such an action relative to the amount of damages recoverable in an individual action.

95.    A class action is also superior to other available methods for the fair and efficient adjudication of the controversy because it eliminates the prospect of inconsistent rulings that would unsettle the legal obligations or expectations of Defendant, Plaintiffs, and Class members.

96.    Because the damages suffered by each individual class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual class members to redress the wrongs done to each of them individually, so that the prosecution of specific actions and the burden imposed on the judicial system by individual litigation by the Class would be significant, making class adjudication the superior option.

97.    The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

98.    The conduct of the action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, any challenge of managing the action as a class action is substantially outweighed by the benefits to the legitimate interests of the parties, the Court, and the public of class treatment, making class adjudication superior to other alternatives.

**CONSOLIDATED CLASS ACTION COMPLAINT**

99.    USD has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

### F.    Commonality and Predominance

100.    Plaintiffs' Consolidated Complaint raises questions of fact or law common to the class that predominate over questions affecting only individual class members. Among these predominating common questions are:

a)  whether the relationship between Defendant and Plaintiffs and members of the Class is contractual;

b)  whether USD accepted money from Class members in exchange for the promise to provide services;

c)  whether USD provided the services for which Class members contracted;

d)  whether Class members are entitled to a refund for that portion of the tuition and fees that was contracted for services that USD did not provide;

e)  whether USD is liable to Plaintiffs and the Class for unjust enrichment; and

f)  whether Defendant engaged in unfair business practices in violation of California law in refusing to refund any portion of the tuition and fees paid for services not offered to Plaintiffs.

101.    In the event that the Court were to find the proposed class definition inadequate in any way, Plaintiffs respectfully pray for certification of any other alternative, narrower class definition or for the certification of subclasses, as appropriate.

### VI.    FIRST CAUSE OF ACTION

### Breach of Contract

### (Brought by Plaintiffs on Behalf of Themselves and the Class)

102.    Plaintiffs re-allege and incorporate by reference all previous allegations as though set forth in full herein.

-26-

CONSOLIDATED CLASS ACTION COMPLAINT

103.   By the act of accepting admission, enrolling, registering, matriculating, together with payment of required fees, a contract between Plaintiffs and Class members, on the one hand, and Defendant, on the other hand, was created.  Thus, in addition to any enrollment contract that may exist between Defendant and the Plaintiffs and Class members, an implied-in-fact contract independently exists between the parties as a matter of California law.

104.   As part of the contract, and in exchange for the aforementioned consideration, Defendant promised to provide in-person education services, including in-person instruction and access to on-campus resources, for the full duration of the Spring 2020 semester, and continuing into the 2020-2021 academic year.

105.   Plaintiffs and Class members fulfilled their end of the bargain when they paid monies due for tuition, fees, and related expenses.

106.   By ceasing all in-person classroom instruction, relegating Plaintiffs and Class members to online instruction only and shutting off campus facilities to Plaintiffs and Class members, Defendant has failed to provide the services promised.

107.   Although Defendant may not bear culpability for the campus closures or the inability to provide any classroom instruction, neither do the enrolled students.  Yet, while Defendant has used the current COVID-19 shutdown circumstances to excuse its obligation to fully perform the obligations of their bargain with their students, Defendant continues to demand that all students fully perform their contractual obligations to pay in full all tuition and fees, without any reduction for Defendant's failure to fully perform their contractual obligations.  That is contrary to the tenets of contract law.

108.   The nature of the instruction provided by Defendant at the time Plaintiffs and Class members enrolled (*i.e.,* in-person classroom instruction), as well as the campus

**CONSOLIDATED CLASS ACTION COMPLAINT**

facilities Defendant offers across its schools and campuses, were and are material terms of the bargain and contractual relationship between students and Defendant.

109.   Defendant's failure to provide any in-person classroom instruction and its shutdown of campus facilities amount to a material breach of the contract.

110.   As a result of Defendant's material breach — regardless of whether Defendant's performance may be excused — Plaintiffs and Class members are not to be held liable for continuing to perform their contractual obligations.  That is, regardless of whether Defendant's failure to offer in-person classroom instruction or to provide campus facilities is to be excused as a result of the COVID-19 pandemic, Defendant cannot continue to demand full payment of tuition and fees from Plaintiffs and Class members for services and facilities that Defendant is indisputably failing to provide.

111.   Defendant's breach and continued demand for full payment from Plaintiffs and the Class members are the proximate causes of Plaintiffs' and Class members' injury.

112.   Plaintiffs and Class members have all been harmed as a direct, foreseeable, and proximate result of Defendant's actions because Plaintiffs and Class members are being charged full tuition and fees for services that Defendant is not providing.

113.   Plaintiffs and Class members are entitled to an award of money damages or partial restitution in an amount to be determined at trial as redress for Defendant's breach. Plaintiffs pray for the establishment of a Court-ordered and Court-supervised common fund from which the claims of affected Class members may be paid and the attorneys' fees and costs of suit expended by class counsel, as approved by the Court, may be awarded and reimbursed.

114.   Defendant continues to insist that full tuition and fees are due from Plaintiffs and the students, despite Defendant's failure to fully perform its contractual obligations.

Unless restrained by way of injunctive relief, Defendant's conduct is reasonably likely to lead to irreparable harm.  Plaintiffs and Class members are entitled to and hereby pray for injunctive relief to enjoin Defendant's continued conduct.

115.   Defendant continues to represent falsely on its web site that it offers campus facilities with significant benefit and value to students and continues to represent falsely the value of its in-person on-campus classes.   Unless restrained by way of injunctive relief, Defendant's conduct is reasonably likely to lead to irreparable harm.  Plaintiffs and Class members are entitled to and hereby pray for injunctive relief to enjoin Defendant's continued conduct.

116.   Defendant disputes its obligation to refund tuition and fees to Plaintiffs and Class members.  Given the dispute and the contractual relationship between the parties, Plaintiffs and Class members are entitled to and hereby pray for declaratory relief to have the Court declare the parties' respective obligations.

## VII.        SECOND CAUSE OF ACTION

### Unjust Enrichment

### (Brought by Plaintiffs on Behalf of Themselves and the Class)

117.   Plaintiffs bring this claim in the alternative to their breach of contract claim (First Cause of Action).

118.   Plaintiffs and Class members conveyed money to Defendant in the forms of tuition and fees for on-campus instruction and facility access that Defendant did not provide and is not providing.  Defendant has continued to retain these monies, despite not providing on-campus classroom instruction and campus services and facilities.

119.   USD voluntarily accepted and retained this benefit, by accepting payment, knowing that Plaintiffs and Class members expected to receive on-campus instruction and

facility access.

120.   USD has retained this benefit even though it ceased providing the full education, experience, and services for which the tuition and fees were collected.

121.   Between the parties (Defendant and the Class members), it would be inequitable to permit Defendant to retain all of the benefits Plaintiffs and Class members conferred on Defendant the form of tuition and fees paid.

122.   Plaintiffs and Class members are entitled to and hereby pray for an order of partial restitution as redress for Defendant's unjust enrichment.  Plaintiffs pray for the establishment of a Court-ordered and -supervised common fund from which the claims of affected Class members may be paid and the attorneys' fees and costs of suit expended by class counsel, as approved by the Court, may be awarded and reimbursed.

123.   Defendant continues to falsely represent on their website that they offer campus facilities with significant benefit and value to students and continue to falsely represent the value of their in-person on-campus classroom instruction.  This false in that such on-campus instruction is not being offered.  Defendant also continues to defy and deny requests for partial tuition or fee reimbursement, claiming that it is offering the same services for which Plaintiffs and Class members bargained.  Unless restrained by way of injunctive relief, Defendant's conduct is reasonably likely to lead to irreparable harm. Plaintiffs and Class members are entitled to and hereby pray for injunctive relief to enjoin Defendant's continued conduct.

## VIII.        THIRD CAUSE OF ACTION

### Conversion

### (Brought by Plaintiffs on Behalf of Themselves and the Class)

124.   Plaintiffs re-allege and incorporate by reference all previous allegations as

-30-

though set forth in full herein.

125.   Defendant received money from Plaintiffs and Class members in the form of tuition and fee payments.

126.   The money Plaintiffs and Class members paid to Defendant was supposed to be used for the benefit of Plaintiffs and Class members for Defendant's provision of on-campus university classroom instruction and to make available to Plaintiffs and Class members campus services and facilities.

127.   Defendant wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiffs and Class members by effectively closing their campuses to in-person classroom instruction and switching to a virtual online-only format, discontinuing paid-for services, and evicting students from campus housing.

128.   Defendant received and wrongfully kept the money Plaintiffs and Class members paid for tuition and fee payments, because Defendant has not provided campus facilities or on-campus instruction for the Winter/Spring 2020, Fall 2020, or Winter/Spring 2021 terms.  More specifically, Defendant failed to provide to Plaintiffs and Class members the benefits — such as in-person classroom instruction and related academic activities, access to campus services, facilities, and in-person extracurricular, athletic, and other student activities — that Plaintiffs and Class members paid the tuition and mandatory campus and student services fees to secure.

129.   Plaintiffs and/or Class members have requested that Defendant issue refunds.

130.   Defendant refused to return, and has thus wrongfully retained, a portion of tuition and mandatory campus and student services fees. Defendant, therefore, is indebted to Plaintiffs and Class members for the failure to provide on-campus classroom

-31-

**CONSOLIDATED CLASS ACTION COMPLAINT**

instruction and campus facilities.

131.   Defendant's actions have damaged Plaintiffs and Class members in the amounts of the tuition and mandatory campus and student services fees that defendant improperly withheld.

132.   Plaintiffs and Class members hereby pray for the full panoply of remedies available as redress for conversion, including a constructive trust over such monies had and received for which the benefit was not provided, restitution or disgorgement, as appropriate, and declaratory and injunctive relief.

## IX.     FOURTH CAUSE OF ACTION

**Violation of California's Consumers Legal Remedies Act ("CLRA"),
Cal. Civ. Code §§ 1750-1785**

**(Brought by Plaintiffs on Behalf of Themselves and the Class)**

133.   Plaintiffs re-allege and incorporate by reference all previous allegations as though set forth in full herein.

134.   This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

135.   Plaintiffs and the other members of the Class are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought USD's educational services for personal purposes. USD is a "person" under Cal. Civ. Code § 1761(c).

136.   USD's educational services are "services" under Cal. Civ. Code § 1761(b). Plaintiffs, the other members of the Class, and USD have engaged in "transactions," as that term is defined by California Civil Code § 1761(e). These transactions all occurred on in the State of California.

137.   The conduct alleged in this Complaint constitutes unfair methods of

-32-

**CONSOLIDATED CLASS ACTION COMPLAINT**

competition and unfair and deceptive acts and practices for the purposes of the CLRA, and the conduct was undertaken by USD in transactions intended to result in, and which did result in, the sale of services to "consumers," as that term is defined in the CLRA.

138.    After March 12, 2020, USD continued to promise courses would be delivered in an in-person format, despite its knowledge that it could not reasonably make such a promise.

139.    USD attempted to pass off online or self-study instruction as equal to or the same as the in-person instruction and full participation in the university's collegiate atmosphere, knowing this not to be true.

140.    USD's false and fraudulent representations and omissions have violated, and continue to violate the CLRA because they extend to transactions that are intended to result, or have resulted, in the sale of services to consumers, including the Plaintiffs and the Class members.

141.    USD's conduct violates Cal. Civ. Code § 1770(a)(5), which prohibits "[r]epresenting that … services have … characteristics … that they do not have," and Cal. Civ. Code § 1770(a)(7), which prohibits: "[r]epresenting that … services are of a particular standard, quality, or grade … if they are of another," causing injury to Plaintiffs and the Class.

## X.    FIFTH CAUSE OF ACTION

**Violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200, *et seq.***

**(Brought by Plaintiffs on Behalf of Themselves and the Class)**

142.    Plaintiffs re-allege and incorporate by reference all previous allegations as though set forth in full herein.

-33-

CONSOLIDATED CLASS ACTION COMPLAINT

143.   California's Unfair Competition Law ("UCL"), California Business and Professions Code sections 17200, *et seq.*, prohibits an "unlawful, unfair or fraudulent business act or practice."

144.   Defendant violated the Unfair Competition Law by engaging in unlawful conduct as a result of its violations of, *inter alia*, the CLRA, as alleged above.

145.   Defendant also violated the Unfair Competition Law by committing an unfair business practice or act by systematically breaching their contracts with Plaintiffs and Class members, failing to provide services promised and paid for, including in-person classroom instruction and access to Defendant's facilities, and failing to refund tuition, fees, and costs on a mass scale.  At a minimum, this refusal to issue partial refunds for tuition and fees is not justified and has proven substantially injurious to student consumers in that each student consumer has lost hundreds or thousands of dollars, and in cases where student loans were obtained and interest is accruing, these amounts continue to grow.

146.   Defendant's conduct in representing that it offers campus facilities and on-campus instruction to Plaintiffs and Class members when, in fact, it ceased to do so, but continuing to charge and demand full tuition and fees as if such services and facilities were being provided, amounts to an unlawful, unfair, or deceptive business practice within the meaning of California's UCL.  Defendant's conduct of failing to reimburse students some portion of tuition and applicable fees that correspond to the duration during which they received virtual learning instead of in-person instruction constitutes an unfair business practice in violation of the UCL.

147.   Had Defendant disclosed that they would not be offering on-campus facilities or in-classroom instruction before it charged Plaintiffs and Class members full

-34-

**CONSOLIDATED CLASS ACTION COMPLAINT**

tuition and fees and decided to retain them, Plaintiffs and Class members either would not have enrolled at Defendant's educational institution or would not have agreed to pay the same amounts of tuition and fees for services and facilities they would not receive.

148.   Defendant's practices are fraudulent because Defendant represented that it would offer in-person instruction and access to Defendant's campus facilities.  Plaintiffs and Class members paid for the college experience advertised as well as the Spring 2020 term, the Fall 2020 term, and/or the Spring 2021 term.  However, Plaintiffs and Class members did not receive the services they paid for—Defendant ceased in-person instruction, moved some classes online and provided no instruction for other classes, and restricted student access to university facilities.

149.   Plaintiffs and Class members conveyed money to Defendant in the forms of tuition and fees while Defendant was engaged in the unlawful, unfair, or deceptive business practice.

150.   Plaintiffs and Class members have been and continue to be injured by Defendant's unlawful, unfair, or deceptive business practices because they are not receiving the instruction or facilities for which they conveyed money to Defendant.

151.   Plaintiffs and Class members are entitled to and pray for an order of partial restitution as redress for Defendant's violations of the UCL.

152.   Plaintiffs and Class members pray for the establishment of a Court-ordered and -supervised common fund from which the claims of affected Class members may be paid and the attorneys' fees and costs of suit expended by class counsel, as approved by the Court, may be awarded and reimbursed.

153.   Defendant continues to charge full tuition and fees as if full services and facilities were being provided, collecting millions of dollars from students deprived of the

**CONSOLIDATED CLASS ACTION COMPLAINT**

full benefit of their payments.

154.   Defendant continues to represent falsely on its website that it offers campus facilities with significant benefit and value to students and continues to represent falsely the value of its in-person on-campus classes.  Defendant also continues to defy and deny all requests for partial tuition reimbursement, claiming falsely that it is offering the same services as Plaintiffs and Class members had bargained for.   Thus, Defendant is continuing to demand full tuition and fees, even though Defendant has already announced that it will not be providing any on-campus instruction for the summer sessions and is uncertain of whether it will do so for the Fall 2020 term.  Unless restrained by way of injunctive relief, Defendant's conduct is reasonably likely to lead to irreparable harm. Plaintiffs and Class members are entitled to and hereby pray for injunctive relief to enjoin Defendant's continued conduct.

155.   As a direct and proximate result of Defendant's unlawful and unfair business acts and practices, Plaintiffs and Class members have suffered and will continue to suffer actual damages.

156.   Plaintiffs and Class members are entitled to and seek disgorgement and restitution of the benefits unjustly retained, whether in whole or in part, including through refunds for tuition and fees.

## XI.      PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully requests that the Court finds against Defendant as follows:

1.      An order certifying the action as a class action as defined herein, appointing Plaintiffs as Class representatives, their counsel as Class counsel, and directing that notice be disseminated to the absent Class members;

CONSOLIDATED CLASS ACTION COMPLAINT

2.     For judgment in favor of Plaintiffs and Class members and against Defendant on all counts and claims for relief;

3.     For compensatory, consequential, general, and special damages and/or restitution in an amount to be determined at trial;

4.     For statutory damages, treble damages, and special or exemplary damages to the extent permitted by law;

5.     Pre-judgment and post-judgment interest at the maximum legal rates; and

6.     For the establishment of a Court-ordered and -supervised common fund to be funded by Defendant and from which claims of all eligible class members will be paid, attorneys' fees awarded to class counsel will be paid, costs of suit approved by the Court and incurred by Class counsel will be reimbursed, and any award of interest will be disbursed;

7.     For interest as permitted by law;

8.     For an award of attorneys' fees;

9.     For costs of suit;

10.    For declaratory relief, to have the Court declare the obligations of the parties;

11.    For injunctive relief to enjoin Defendant's ongoing conduct; and

12.    For all such other relief as the Court deems just and proper.

## XII.     DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a jury trial with respect to all issues triable of right by jury.

CONSOLIDATED CLASS ACTION COMPLAINT

Dated:  April 28, 2021

**FRANCIS MAILMAN SOUMILAS, P.C.**

By: _____/s/ James A. Francis_____

James A. Francis (*pro hac vice*)
John Soumilas (*pro hac vice forthcoming*)
Edward H. Skipton (*pro hac vice forthcoming*)
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Tel: (215) 735-8600
Fax: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
eskipton@consumerlawfirm.com

Yvette Golan (*pro hac vice*)
THE GOLAN FIRM, P.C.
529 14th Street, N.W., Suite 914
Washington, DC 20045
Tel: (866) 298-4150
Fax: (928) 441-8250
ygolan@tgfirm.com

Carney R. Shegerian
Anthony Nguyen
Cheryl A. Kenner
SHEGERIAN & ASSOCIATES, INC.
145 S. Spring Street, Suite 400
Los Angeles, CA 90012
Tel: (310) 860-0770
Fax: (310) 860-0771
cshegerian@shegerianlaw.com
anguyen@shegerianlaw.com
ckenner@shegerianlaw.com

Michael Tompkins
LEEDS BROWN LAW
One Old Country Road, Suite 347
Carle Place, NY 11514-1851
Tel: (516) 873-9550
mtompkins@leedsbrownlaw.com

-38-
**CONSOLIDATED CLASS ACTION COMPLAINT**

Thomas S. Alch
SHOOP, PLC
9701 Wilshire Blvd., Suite 950
Beverly Hills, CA 90212
Tel: (310) 620-6330
thomas.alch@shooplaw.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the foregoing document was electronically filed and served, via the Court's ECF system, on this 28th day of April, 2021. The Court's ECF system will generate a Notice of Electronic Filing upon all counsel.

*/s/ James A. Francis*
James A. Francis

**CONSOLIDATED CLASS ACTION COMPLAINT**