**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

In re University of San Diego Tuitiion and Fees COVID-19 Refund Litigation

This document relates to:

All actions

Case No.: 20cv1946-LAB-WVG

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT [Dkt. 33]**

In February and March 2020, COVID-19 began spreading rapidly throughout the United States. Plaintiffs Edgar Chavarria, Catherine Holden, Haley Martinez, and Matthew Sheridan were enrolled for the Spring 2020 semester at the University of San Diego ("USD" or the "University") when the ubiquitous and deleterious effects of the COVID-19 pandemic forced the University to cancel in-person classes. USD required that all classes be taught remotely for the rest of the semester and directed students living on campus to move out. Later, on July

29, 2020 – with the pandemic still raging, USD cancelled all in-person classes for the Fall 2020 semester. By the Spring 2021 semester, USD planned to resurrect some in-person classes, only to shut these plans down again on February 12, 2021, when the COVID pandemic again surged.

Plaintiffs allege that these changes drastically affected their educational experience: no in-person classes; fewer informal interactions with faculty and other students; no science laboratories; no computer labs; no in-person health services and counseling; and no athletic and recreational facilities. But at the time of each cancellation announcement, Plaintiffs had already paid their tuition and fees and USD refused to offer tuition refunds, although the University agreed to refund some fees. In response, Plaintiffs filed suit on behalf of themselves and a putative class. The Court consolidated the various individual actions into this one, and Plaintiffs filed a Consolidated Class Action Complaint, asserting claims for breach of contract, unjust enrichment, conversion, violation of California's Consumer Legal Remedies Act ("CLRA"), and violation of California's Unfair Competition Law ("UCL"). (Dkt. 30, "CCAC"). USD then moved to dismiss the CCAC. (Dkt. 33).

The motion to dismiss is **GRANTED IN PART**. The Court finds that Plaintiffs' quasi-contract claim is barred by the existence of a contract covering the same subject matter; the economic loss doctrine bars their claim for conversion; they don't allege any false representations to support their CLRA claim; and they don't identify any unlawful, unfair, or fraudulent practice violating the UCL. The quasi-contract claim and the conversion claim are **DISMISSED WITH PREJUDICE**. The CLRA and UCL claims are **DISMISSED WITHOUT PREJUDICE**. The CCAC properly states a claim for breach of contract, so as to that claim the Motion is **DENIED IN PART**.

//

//

**BACKGROUND**

USD is a private university in San Diego, California. (CCAC ¶ 18).[1] USD students pay tuition and fees in exchange for educational services, use of University facilities, and other supporting services. (*See, e.g., id.* ¶¶ 14, 24). Like many businesses, USD attracts students by advertising the quality of its product. Its marketing materials discuss, among other things: “direct access to [its] award-winning faculty” in an “inspiring and intimate setting,” (*id.* ¶ 33); use of physical facilities, including “high-tech” fitness centers (¶¶ 35, 42–44); student housing, which it describes as giving “easy access to . . . professors [and] close proximity to . . . classmates for study group sessions,” (*id.* ¶ 36); “[s]tudent organizations [that] offer opportunities for leadership, personal growth, and recreation” and “hands-on, real-world . . . experience” in certain fields, (*id.* ¶¶ 38, 39); on-campus physical and mental health services, (*id.* ¶¶ 42, 45–46); and a “Learning Commons” with modern designs, equipment, and technology to “enchance[] collaborative learning experiences,” (*id.* ¶¶ 47–49).

During USD’s Spring 2020 term, each Plaintiff had enrolled as a USD student and had paid tuition and fees. But the COVID-19 pandemic interrupted their studies. (*Id.* ¶¶ 14–17, 54). On March 12, 2020, USD cancelled all classes from March 14 through March 22, and informed students that all courses would resume via remote teaching on March 23, 2020, through the end of the semester. (*Id.* ¶ 57). Students living in student housing were directed to “relocate from campus” by March 22, 2020. (*Id.*). USD also closed other facilities on its campus. (*See id.* ¶ 61).

USD didn’t re-open for in-person instruction during the Fall 2020 term, instead announcing less than a month before the start of that term that all classes

---

[1] For the purposes of a motion to dismiss under Rule 12(b)(6), the Court accepts as true the well-pleaded factual allegations of the CCAC. *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008).

would continue to be taught online. (*Id.* ¶ 62). Although the University informed students that it planned to resume some in-person instruction during the Spring 2021 term, on February 12, 2021, it changed course, announcing that all in-person, on-campus classes and activities would cease. (*Id.* ¶ 65).

USD charged full tuition and fees for Spring 2020, providing only limited refunds for certain fees. (*See id.* ¶ 14). It continued to charge full tuition for the Fall 2020 and Spring 2021 terms. (*See id.* ¶¶ 5–6, 66). Plaintiffs contend that USD acknowledged that online-only education wasn't as valuable as an in-person education by: (1) emphasizing the value of USD's facilities and in-person experiences through its marketing materials; (2) refusing to accept pre-pandemic online credits as equivalent to in-person instruction; and (3) charging a reduced price for the few courses that the University itself offered online before the pandemic. (*Id.* ¶¶ 4, 30–31, 33–38, 42–49, 74). Nevertheless, USD rejected claims for any refund of tuition or many of its fees students had paid. (*Id.* ¶¶ 14, 66, 129).

Plaintiffs' operative pleading, the CCAC, asserts claims for breach of contract, unjust enrichment, conversion, and violations of the California CLRA and UCL. USD seeks dismissal of each of those claims under Fed. R. Civ. P. 12(b)(6).

**STANDARD OF REVIEW**

A Rule 12(b)(6) motion to dismiss calls for a preliminary evaluation of a party's pleading and tests only whether the pleading provides "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal marks and citation omitted). The required short and plain statement "does not need detailed factual allegations," only "factual allegations . . . enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." *Id.* (internal marks and citations omitted). The Court must

draw all reasonable inferences in the plaintiff's favor. *Dahlia v. Rodriguez*, 735 F.3d 1060, 1066 (9th Cir. 2013). Reasonable inferences are those with "plausible grounds"—the complaint's factual allegations must "raise a reasonable expectation that discovery will reveal evidence" supporting that inference. *Twombly*, 550 U.S. at 556.

Where a plaintiff's claims sound in fraud, the heightened standard of Rule 9(b) applies. *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1102 (9th Cir. 2003). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To meet these requirements, a complaint alleging fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir. 1985); *Vess*, 317 F.3d at 1106 ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.") (internal citation omitted). Because the CCAC's CLRA and UCL claims sound in fraud, the Court applies the heightened pleading standard to those claims.

## DISCUSSION

### I. The Educational Malpractice Doctrine Doesn't Apply to Plaintiffs' Claims

USD first argues that California's educational malpractice doctrine bars each of Plaintiffs' claims. The Court disagrees. Under that doctrine, courts decline to intervene in "the academic affairs of schools" unless the challenged decision is "arbitrary and capricious, not based upon academic criteria, and the result of irrelevant or discriminatory factors." *Banks v. Dominican College*, 35 Cal. App. 4th 1545, 1551 (1995). They do so "because of the lack of a satisfactory standard of care by which to evaluate [academic and disciplinary] decisions" or where a plaintiff seeks to enforce "general promises or expectations." *Kashmiri v. Regents*

*of University of California*, 156 Cal. App. 4th 809, 826 (2007). But "not all decisions made by a university are pedagogical in nature." *McCarthy v. Loyola Marymount Univ.*, No. CV 20-04668-SB (JEMx), 2021 WL 268242, at *3 (C.D. Cal. Jan. 8, 2021). California courts "have . . . not been hesitant to apply contract law [despite the educational malpractice doctrine] when the educational institution makes a specific promise to provide an educational service, such as . . . a failure to deliver a promised number of hours of instruction." *Kashmiri*, 156 Cal. App. 4th at 826.

In support of this proposition, the *Kashmiri* court cited with approval *CenCor, Inc. v. Tolman*, 868 P.2d 396 (Colo. 1994), describing that case as holding that the educational malpractice doctrine did not bar a breach of contract action "where there were allegations that [the] school had made *specific* promises, such as promises to provide modern, functioning equipment, computer training, and qualified instructors, and did not do so." *Kashmiri*, 156 Cal. App. 4th at 826. This is, in effect, what Plaintiffs allege here: USD promised in-person instruction along with access to physical resources, libraries, laboratories, computer laboratories; Plaintiffs agreed to pay tuition and fees in reliance on those promises; and USD failed to refund any tuition or fees when it became clear that it wouldn't be able to fully perform.

Many decisions applying California's educational malpractice doctrine have held the doctrine does not bar claims that a university promised in-person instruction and access to physical resources and facilities but didn't provide them as a result of the COVID-19 pandemic. *See, e.g., McCarthy*, 2021 WL 268242; *Saroya v. Univ. of the Pacific*, Case No. 5:20-cv-03196-EJD, 2020 WL 7013598 (N.D. Cal. Nov. 27, 2020); *Verlanga v. Univ. of San Francisco*, Case No. CGC-20-584829, 2020 WL 7229855 (Cal. Super. Nov. 12, 2020); *Grant v. Chapman Univ.*, Case No. 30-2020-01146699-CU-BC-CXC, 2021 WL 684581 (Cal. Super. Jan. 22, 2021); *In re Univ. of Southern California Tuition and Fees COVID-19 Refund Litig.*, Case No. CV 20-4066-DMG (PVCx), 2021 WL 3560783 (C.D. Cal.

Aug. 6, 2021); *but see Abuelhawa v. Santa Clara Univ.*, No. 20-cv-04045-LHK, 2021 WL 1176689 (N.D. Cal. March 29, 2021); *Lindner v. Occidental College*, No. CV 20-8481-JFW(RAOx), 2020 WL 7350212 (C.D. Cal. Dec. 11, 2020). The Court agrees with these holdings and determines that the educational malpractice doctrine does not bar Plaintiffs' claims.

**II. Plaintiffs Allege a Concrete and Particularized Injury**

USD argues next that Plaintiffs lack Article III standing because they allege "uncertain and speculative" damages. At the pleading stage, a plaintiff "must clearly allege facts demonstrating" that he: (1) suffered an injury in fact; (2) that is fairly traceable to the challenged conduct; and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 785 U.S. 330, 338 (2016). USD attacks the first element, arguing that the alleged injury isn't "concrete and particularized," but is instead "inherently speculative" because "the Court has no method to calculate the difference in value of a class offered online versus a class offered in person." (Dkt. 33-1 at 8–9); *Spokeo*, 785 U.S. at 339.

This argument misreads the standing requirements. A "concrete" injury must merely be "real" and need not be "tangible." *Spokeo*, 785 U.S. at 340. And a "particularized" injury "must affect the plaintiff in a personal and individual way." *Id.* at 339. At this stage of the litigation, Plaintiffs don't need to provide a "just and reasonable damages model"—that isn't required until the class certification stage. (Dkt. 33-1 at 10); *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013).

A plaintiff may satisfy the concrete and particularized harm standard by alleging that he overpaid in a transaction, then offering evidence of the difference between his payment and some measure of the true value of the purchase. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (plaintiffs properly alleged injury-in-fact by alleging that they overpaid for their homes). Plaintiffs have met that pleading hurdle here: they allege that they paid for one package of educational services and received another of lesser value. This allegation suffices

under the "actual and concrete economic injury" standard and qualifies as an injury-in-fact for standing purposes. *Id.*

**III. The CCAC States a Claim for Breach of Contract**

Turning to the individual claims, USD argues that Plaintiffs' breach of contract claim fails because: (1) the CCAC doesn't identify any specific breached promises; (2) USD's policy restricting refunds bars the claims; and (3) Plaintiffs don't allege that USD caused any damages. The Court disagrees with all three arguments.

First, the University contends that the CCAC doesn't point to an "identifiable contractual promise that [USD] failed to honor." (Dkt. 33-1 at 12, quoting *Ross v. Creighton Univ.*, 957 F.2d 410, 416–17 (7th Cir. 1992)). Under California law, a private university can be liable for breach of a contract with its students if the university "ma[de] a specific promise to provide an educational service," but failed to follow through. *Kashmiri*, 156 Cal. App. 4th at 826. Those promises don't need to be part of a formal agreement, but instead may be part of an implied-in-fact contract "manifested by [the parties'] conduct." *Id.* at 827. The Court need only be able to reasonably infer a promise from the alleged conduct. *Youngman v. Nevada Irr. Dist.*, 70 Cal. 2d 240, 246–47 (1969).

Drawing all reasonable inferences in Plaintiffs' favor, the CCAC alleges sufficient conduct to establish promises forming implied-in-fact terms of the parties' contract. USD allegedly provided meeting times and physical locations for its courses in a catalogue that it encouraged students to rely on as the "official record," (CCAC ¶¶ 27–29); touted the benefits to students of its policy requiring certain faculty to be physically present for office hours, (*id.* ¶ 30); and advertised the "general availa[bility]" of "[a]ll University facilities," including specifically identified facilities, and "tutoring and support services . . . on campus." (*Id.* ¶¶ 35, 44, 47–49). These aren't "mere[] . . . invitations to bargain," as USD insists. (Dkt. 33-1 at 15 (quoting *Harris v. Time, Inc.*, 191 Cal. App. 3d 449, 455 (1987))).

Instead, USD offered these specific benefits in exchange for enrollment and payment of tuition, which Plaintiffs accepted through performance, only to have them terminated when the pandemic caused the University to shut-down in-person services. This is enough to allege conduct establishing an enforceable implied-in-fact contract. *See Kashmiri*, 156 Cal. App. 4th at 826.

Nevertheless, USD insists, it didn't breach any promises to provide "exclusively in-person instruction and access to facilities." (Dkt. 33-1 at 13). But the keystone of an implied-in-fact contract is the parties' reasonable expectations at the time of contracting. *Kashmiri*, 156 Cal. App. 4th at 831–32. Even looking beyond the nonsensical implication that a reasonable prospective student might understand USD's promises to incorporate remote "access" to a fitness center, science and computer laboratories, and study rooms, (*see* CCAC ¶¶ 44, 54), a student would also reasonably understand USD's promises of these benefits would apply during the entire school term.

USD also fails to show that its refund policies bar Plaintiffs' claims. Under USD's policies, "[f]ees and deposits are non-refundable," and "[t]uition is fully or partially refundable only when a student withdraws officially during the published refund withdrawal schedule." (Dkt. 33-2, Ex. A at 9). As to both policies, USD doesn't provide any California or Ninth Circuit authority for the proposition that a refund policy can be used to excuse non-performance under contract law. Its citation to *Zwiker v. Lake Superior State Univ.*, Case No. 20-000070-MK, 2020 WL 8572097 (Mich. Ct. Cl. Oct. 20, 2021), a Michigan state court case applying Michigan law, isn't persuasive. In that case, the court rejected the plaintiff's breach of contract claims not because of a refund policy, but because the plaintiff failed to allege any failure to perform. *Id.* at *4–5. Moreover, by its terms USD's tuition refund policy is inapposite because it applies "only when a student withdraws officially during the published refund withdrawal schedule," contemplating a student's withdrawal rather than USD's alleged non-performance. *See McCarthy*,

2021 WL 268242 at *4.

Finally, the CCAC successfully pleads that USD caused Plaintiffs' injury. The injury must be "proximately caused by" USD's breach. *Vu v. Cal. Comm. Club, Inc.*, 58 Cal. App. 4th 229, 233–34 (1997). That is, the breach, "in the natural and continuous sequence, unbroken by any efficient intervening cause," must have "produced the injury." *State of Cal. Superior Court*, 150 Cal. App. 3d 848, 857 (1984). But an intervening cause must "come[] *between* the initial event in a sequence and the end result." *Cause*, Black's Law Dictionary (9th Ed. 2009). Here, Plaintiffs allege that the breach was USD's decision to keep their tuition and fee payments. COVID-19 and the related government orders preceded the breach, so those events didn't break the causal chain between the alleged breach and injury.

The CCAC successfully states a claim for breach of contract, so the Motion is **DENIED** as to that claim.

## IV. Plaintiffs Fail to Allege a Quasi-Contract Claim for Restitution

Plaintiffs style their next claim as "unjust enrichment." (CCAC ¶¶ 117–23). Under California law, "'unjust enrichment' is synonymous with 'restitution,'" which is a remedy, not a claim. *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). But this isn't a substantive issue warranting dismissal: Courts routinely construe claims pled as "unjust enrichment" to be actions in quasi-contract for restitution. *Id.* Because the parties understand the nature of the claim, the way it is titled amounts to only a semantic issue. The Court construes the claim as seeking restitution in quasi-contract.

But the CCAC can't state such a claim. Although a party "may state as many separate claims . . . as it has, regardless of consistency," Fed. R. Civ. P. 8(d)(3), courts may dismiss quasi-contract claims where the parties agree that they had a binding contract covering the benefit that the plaintiff seeks to have returned. *See, e.g., Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388 (2012). A quasi-

contract claim exists where, "for reasons of justice . . . the law implies an obligation to pay." *Weitzenkorn v. Lesser*, 40 Cal. 2d 778, 794 (1953). "[T]here is no equitable basis [under California law] for an implied-in-law promise to pay reasonable value when the parties have an actual agreement covering compensation." *Id.* (quoting *Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, 41 Cal. App. 4th 1410, 1420 (1996)).

The parties agree that Plaintiffs paid their tuition and fees pursuant to an agreement covering that compensation. If that agreement required USD to perform in ways that it didn't, Plaintiffs' recourse is in contract. If the agreement didn't require USD to do those things, the Court can't augment the contract by finding that a second contract involving the same compensation was implied-in-law. The CCAC's claim for unjust enrichment is **DISMISSED WITH PREJUDICE**.

## V. The CCAC Fails to State a Claim for Conversion

Plaintiffs likewise fail to state a claim for conversion. "Money cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment." *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1491 (2006). "[T]he simple failure to pay money owed does not constitute conversion." *Voris v. Lampert*, 7 Cal. 5th 1141, 1152 (2019) (cleaned up). Successful conversion claims "typically involve those who have misappropriated, commingled, or misapplied specific funds held for the benefit of others." *Id.* (cleaned up).

That's not what Plaintiffs allege here. They allege that they paid USD money in exchange for services that were only partially rendered. (CCAC ¶¶ 125–27). They don't seek recovery of their tuition and fees in their entirety—which could constitute a specific and identifiable sum—but only some unspecified proportion of those amounts representing the difference in value between the services they were promised and those they received. (*See id.* ¶ 9 (plaintiffs seek "partial refund

of the tuition, fees, and other related payments for . . . services . . . for which they paid that USD did not provide"); *id.* ¶ 13 ("Plaintiffs seek . . . a return of a prorated portion of [their payments] proportionate to the diminished value of online classes."); *id.* ¶ 132 (seeking return of "such monies had and received for which the benefit was not provided")).

Plaintiffs can't point to a specific and identifiable sum that USD allegedly converted because, as they concede, USD provided *some* services with non-specific value in exchange for Plaintiffs' tuition and fees. For this reason, the CCAC can't state a claim for conversion, so that claim is **DISMISSED WITH PREJUDICE**.

## VI. Plaintiffs Fail to State a Claim under CLRA

Plaintiffs' fourth cause of action relies on the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750–1785. A pleading seeking to state a claim under the CLRA must meet the heightened standard of Rule 9(b) and allege violative conduct causing damage to the claimant. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127–28 (9th Cir. 2009); Cal. Civ. Code § 1780(a). As relevant here, violative conduct includes "[r]epresenting that . . . services have . . . characteristics . . . that they do not have," Cal. Civ. Code § 1770(a)(5), and "[r]epresenting that . . . services are of a particular standard, quality, or grade . . . if they are another." Cal. Civ. Code § 1770(a)(7). Plaintiffs must also allege that a defendant was aware that its representations were false at the time of sale. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012).

USD argues that the CCAC fails to allege any actionable misrepresentations. Plaintiffs counter that two sets of alleged representations match the descriptions of Cal. Civ. Code §§ 1770(a)(5) and (7). One consists of the pre-pandemic representations that form the basis of Plaintiffs' contract claim. But Plaintiffs don't allege that USD knew that COVID-19 would render those representations false, nor do they contend that the representations were false at

the time they were made. *See Wilson*, 668 F.3d at 1145. It isn't enough to allege that USD made promises it believed it could keep, but proved unable to, so those allegations can't support Plaintiffs' CLRA claim.

The second set of representations includes USD's purported promises to conduct classes in person for the Spring 2021 semester. While the specific content of these statements isn't alleged, Plaintiffs ask the Court to take judicial notice of them to satisfy Rule 9(b)'s heightened pleading standard. (*See* Dkt. 37 at 18 n.13). USD doesn't oppose this request, so the Court grants it but nonetheless finds the statements insufficient to support the CLRA claim.

USD stated:

- On December 18, 2020, USD's "current plan for the spring [2021] semester," was a "modest increase to [its] offerings for in-person instruction" with "most classes [to] be delivered remotely . . . . [W]e continue to follow federal, state, and county guidelines." (Dec. 18, 2020 Announcement, https://blue.sandiego.edu/emails/departments/provost/spring-semester21-update.php).
- On January 8, 2021, "San Diego County remains in . . . the most restrictive level of California's COVID-19 risk-ranking system. Among other restrictions, the Purple Tier does not permit in-person lectures or student gatherings at universities, yet some courses conducted in certain indoor settings . . . may be open. . . . We will begin the spring semester with remote instruction only. Our intent is to move to our hybrid academic model when state recommendations and county orders permit us to do so." Jan. 8, 2021 Announcement, https://blue.sandiego.edu/onward/2021/spring-semester-updates-2021-01-08.html).

Importantly, Plaintiffs don't allege that these statements were inaccurate. The first relates to USD's "current plan" and qualifies that the University would

"continue to follow federal, state, and county guidelines." (Dec. 18, 2020 Announcement, https://blue.sandiego.edu/emails/departments/provost/spring-semester21-update.php). Those guidelines had recently included orders directing Californians to stay at home "except as needed to maintain continuity of . . . federal critical infrastructure sectors." (*See* Dkt. 33-2 Ex. E).[2]

The second statement likewise doesn't amount to a representation that USD's classes would be held in-person. While it stated that "some courses conducted in certain indoor settings . . . may be open" despite the current level of restriction, it clarified that USD would "begin the spring semester with remote instruction only." The statement also made clear that holding *any* in-person classes was subject to "state recommendations and county orders" beyond USD's control. (Jan. 8, 2021 Announcement, https://blue.sandiego.edu/onward/2021/spring-semester-updates-2021-01-08.html). Again, these statements weren't false because they didn't amount to a representation that classes would be held in-person; rather, USD told Plaintiffs that it would begin the semester holding all classes remotely and that it "may" open some classes to in-person instruction when legally permitted.

Because the CCAC doesn't allege any "[r]epresent[ations] that . . . [USD's] services [had]. . . characteristics . . . that they [did] not have [or] . . . [were] of a particular, standard, quality, or grade . . . [but were] another," Cal. Civ. Code §§ 1770(a)(5), (a)(7), it doesn't allege a violation of those sections of the CLRA. That claim is **DISMISSED WITHOUT PREJUDICE**.

### VII. The CCAC Fails to State a UCL Claim

USD last argues that Plaintiffs aren't entitled to any relief under California's Unfair Competition Law because they have failed to allege that USD engaged in an "unlawful, unfair, or fraudulent" act or practice. Cal. Bus. & Prof. Code § 17200.

---

[2] The Court takes judicial notice of this document at Defendants' request and pursuant to Fed. R. Evid. 201(b)(2) and (c)(2).

The UCL's "larger purpose" is "protecting the general public against unscrupulous business practices," and courts must construe it accordingly. *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009). Following this construction, the Court holds that the CCAC doesn't allege any conduct that violates the UCL.

The parties agree that the "unlawful" prong is fulfilled only if the CCAC states a claim under CLRA. (*See* Dkt. 37 at 24; CCAC ¶ 144; Dkt. 33-1 at 24 (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003)). Because it doesn't, Plaintiffs haven't stated a UCL claim under the "unlawful" prong.

The CCAC bases its contention that USD's conduct was "fraudulent" on USD's representations regarding the services it would offer. (CCAC ¶¶ 146, 148). These statements weren't fraudulent within the meaning of the UCL. Although common law fraud requires allegations that a statement be "actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages," "[n]one of these elements are required to state a claim for injunctive relief under the UCL." *In re Tobacco II Cases*, 46 Cal. 4th at 312. Instead, "it is necessary only to show that members of the public are likely to be deceived." *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332 (1998). Nevertheless, the statements must amount to an "unscrupulous practice." *In re Tobacco II Cases*, 46 Cal. 4th at 312. Interpreting this requirement consistently with the statutory purpose of protecting the public against unscrupulous practices, the Court finds that USD's alleged statements were not fraudulent. As discussed above, the CCAC doesn't allege that USD knew or had any way of knowing that the COVID-19 pandemic would interfere with its ability to keep any pre-pandemic promises. And the University's December 2020 and January 2021 statements were sufficiently qualified that they weren't likely to deceive members of the public regarding the University's ability to provide in-person instruction and activities during the Spring 2021 term.

Finally, though Plaintiffs contend that the "unfair" prong is fulfilled both by USD's representations regarding its services and the University's "systematic[] breach[es]" of their contracts with Plaintiffs, these both effectively amount to a single practice: USD's alleged failure to follow through on its promises. (CCAC ¶¶ 145–46). But federal courts in the Ninth Circuit have held that, "where the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive." *NorthBay Healthcare Grp. - Hosp. Div. v. Blue Shield of California Life & Health Ins.*, 342 F. Supp. 3d 980, 988–89 (N.D. Cal. 2018); *see also Hadley v. Kellogg Sales Company*, 243 F. Supp. 3d 1074, 1104 (N.D. Cal. 2017). Because the Court already determined that USD's statements, as alleged, were neither unlawful nor fraudulent, the Court won't expand the meaning of those two terms by deeming the statements unfair.

The CCAC doesn't allege any unlawful, unfair, or fraudulent acts or practices, so its UCL claim is **DISMISSED WITHOUT PREJUDICE**.

**CONCLUSION**

The Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. The facts alleged in the CCAC preclude recovery for unjust enrichment or conversion, so those claims are **DISMISSED WITH PREJUDICE**. Plaintiffs don't allege sufficient facts to support their CLRA and UCL claims, which are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

Dated: March 30, 2022

**Hon. Larry Alan Burns**
United States District Judge