James A. Francis*
Lauren KW Brennan*
**FRANCIS MAILMAN SOUMILAS, PC**
1600 Market St., Suite 2510
Philadelphia, PA 19103
Tel: (215) 735-8600

Jason Sultzer, Esq.**
Jeremy Francis, Esq.**
**SULTZER & LIPARI, PC**
270 Madison Avenue, Suite 1800
New York, NY 10016
Telephone: (212) 969-7810
sultzerj@thesultzerlawgroup.com
francisj@thesultzerlawgroup.com

Yvette Golan, Esq.*
**THE GOLAN FIRM PLLC**
529 14th St., N.W., Suite 914
Washington, DC 20045
Tel: (866) 298-4150
*Counsel for Plaintiffs and the Putative Class*

Carney R. Shegerian (SBN 150461)
Erik Dos Santos (SBN 309998)
**SHEGERIAN & ASSOCIATES, INC.**
11520 San Vincente Blvd.
Los Angeles, CA 90049
Tel: (310) 860-0770

Michael A. Tompkins, Esq.*
**LEEDS BROWN LAW, PC**
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: (516) 873-9550
mtompkins@leedsbrownlaw.com

*Admitted Pro Hac Vice*
**Pro Hac Vice Pending*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re University of San Diego Tuition and Fees COVID-19 Refund Litigation<br><br>This document relates to:<br>All actions | Master File No. 20-CV-1946-RBM-VET<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**<br><br>Fairness Hearing: March 3, 2025<br>Time: 9 a.m.<br>Courtroom: 5B, 5th Floor |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................iii

INTRODUCTION ........................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ..........................................3

ARGUMENT ...............................................................................................6

    1. Rule 23(a)(1): Numerosity is Satisfied .............................................6

    2. Rule 23(a)(2): Commonality is Satisfied ...........................................7

    3. Rule 23(a)(3): Typicality is Satisfied ................................................7

    4. Rule 23(a)(4): Adequacy is Satisfied ................................................8

    5. Rule 23(b)(3): Predominance is Satisfied ........................................11

    6. Rule 23(b)(3)(A)-(D): Superiority is Satisfied ..................................16

    I. The Settlement is Fair, Reasonable, and Adequate ............................17

    II. The Objection Should be Overruled ...............................................26

CONCLUSION ..........................................................................................29

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

## <u>TABLE OF AUTHORITIES</u>

2

3
*Abels v. JBC Legal Group, P.C.*,
    227 F.R.D. 541 (N.D. Cal. 2005) .................................................. 13

4
*Achziger v. IDS Prop. Cas. Ins. Co.*,
    772 F. App'x 416 (9th Cir. 2019) ............................................... 16

5

6
*Arredondo v. Univ. of La Verne*,
    341 F.R.D. 47 (C.D. Cal. Feb. 8, 2022)................................... Passim

7

8
*Bailey v. Rite Aid Corp.*,
    338 F.R.D. 390 (N.D. Cal. 2021) ............................................... 15

9

10
*Ballard v. Equifax Check Servs., Inc.*,
    186 F.R.D. 589 (E.D. Cal. 1999) ............................................... 16

11

12
*Bergeron v. Rochester Inst. of Tech.*,
    2024 U.S. App. LEXIS 31215 (2nd Cir. 2024).............................19

13

14
*Brown v. Hain Celestial Grp., Inc., No. 11-CV-03082-LB*,
    2014 WL 6483216 (N.D. Cal. Nov. 18, 2014) ............................. 12

15
*Carter v. San Pasqual Fiduciary Tr. Co.*,
    2018 U.S. Dist. LEXIS 33834, at *22 (C.D. Cal. Feb. 28, 2018)....................23

16

17
*Chavez v. Blue Sky Nat. Bev. Co.*,
    268 F.R.D. 365 (N.D. Cal. 2010) ............................................... 15

18

19
*Chin v. DaimlerChrysler Corp.*,
    461 F. Supp. 2d 279 (D.N.J. 2006) ............................................21

20

21
*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566, 575-76 (9th Cir. 2004)............................................17

22

23
*Edwards v. Ford Motor Co.*,
    2016 U.S. Dist. LEXIS 59651 (S.D. Cal. Jan. 22, 2016) ................................21

24

25
*G. F. v. Contra Costa Cnty.*,
    2015 U.S. Dist. LEXIS 100512, at *43 (N.D. Cal. July 30, 2015) ..................18

26

27
*Gutierrez v. Stericycle, Inc.*,

28

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

2019 U.S. Dist. LEXIS 237817, *12 ................................................................21

*Hanlon v. Chrysler Corp.,*
150 F.3d 10111029 (9th Cir. 1998) ...........................................................23

*Hopkins v. Stryker Sales Corp.,*
2013 U.S. Dist. LEXIS 16939, at *12 (N.D. Cal. Feb. 6, 2013) ......................23

*In re ConAgra Foods, Inc.,*
90 F. Supp. 3d 919 (C.D. Cal. 2015) ......................................................... 15

*In re Hyundai & Kia Fuel Econ. Litig.,*
926 F.3d 539, 556, 568 (9th Cir. 2019) .........................................................17

*In re Scotts EZ Seed Litig.,*
304 F.R.D. 397 (S.D.N.Y. 2015) ............................................................... 15

*In re Syncor ERISA Litig.,*
516 F.3d 1095, 1101 (9th Cir. 2008) ...........................................................17

*In re Toys "R" Us-Del., Inc. FACTA Litig.,*
295 F.R.D. 438, 450 (C.D. Cal. 2014) .........................................................18

*In re U.S. Foodservice Inc. Pricing Litig.,*
729 F.3d 108 (2d. Cir. 2013) ..................................................................... 16

*Jimenez v. Allstate Insurance Co.,*
765 F.3d 1161 (9th Cir. 2014) ................................................................... 16

*Jones v. Netcom, Inc. (In re Bluetooth Headset Products Liab. Litig.),*
654 F.3d 935, 946 (9th Cir. 2011) ...............................................................17

*Kashmiri v. Regents of Univ. of Cal.,*
156 Cal. App. 4th 809 (1st Dist. Ct. App. 2007) ...........................................28

*Kearney v. Hyundai Motor Am.,*
2013 U.S. Dist. LEXIS 91636, at *17-18 (C.D. Cal. June 28, 2013) ...............21

*KGM Harvesting Co. v. Fresh Network,*
36 Cal. App. 4th 376 (6th Dist. Ct. App., June 30, 1995) ............................. 14

*Lane v. Facebook, Inc.,*
696 F.3d 811, 818 (9th Cir. 2012) ...............................................................19

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Leyva v. Medline Indus. Inc.*,
  716 F.3d 510 (9th Cir. 2013) ......................................................... 15

*Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*,
  244 F.3d 1152 (9th Cir. 2001) ......................................................... 9

*Meehan v. Roadmaster Drivers School, Inc.,* Case No. 5:22-cv-04299-JMG
  (E.D. Pa. Sept. 18, 2024) ................................................................9

*Nat'l Rural Telecomms. Cooperative v. DIRECTV, Inc.*, 2
  21 F.R.D. 523, 527-528 (C.D. Cal. 2004) .......................................24

*O'Connor v. Boeing N. Am., Inc.*,
  184 F.R.D. 311 (C.D. Cal. 1998) ................................................... 15

*Officers for Justice v. Civil Service Comm'n*,
  668 F.2d 615, 625 (9th Cir. 1982) ........................................... 18-20

*Rai v. Santa Clara Valley Transp. Auth.*,
  308 F.R.D. 245 (N.D. Cal. 2015) ................................................... 16

*Restatement (Second) of Contracts*
  § 377 (1981) ................................................................................ 14

*Retta v. Millennium Prods.*,
  2017 U.S. Dist. LEXIS 220288, *15 (C.D. Cal. Aug. 22, 2017) .....................20

*Rodriguez v. West Pub. Corp.*,
  463 F.3d 948, 965 (9th Cir. 2009) ...................................................19

*Ruiz Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ....................................................... 12

*Senne v. Kansas City Royals Baseball Corp.*,
  934 F.3d 918 (9th Cir. 2019) ......................................................... 13

*Stewart v. Univ. of Maine System*, Civil Action Docket No. CV-20-537
  (Me. Superior Ct., Cumberland Cnty., Sept. 8, 2023).........................9

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442, 136 S. Ct. 1036, 194 L. Ed. 2d 124 (2016) ............................ 12

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ....................................................................... 7

v

*Zakaria v. Gerber Prod. Co.*, No. LACV
    1500200JAKEX, 2016 WL 6662723 (C.D. Cal. Mar. 23, 2016) .................... 15

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to this Court's November 19, 2024, Order (Dkt. 234) and the extension order (Dkt. 236), as well as the prior orders (*see e.g.*, Dkt. 231 and 221), Plaintiffs Edgar Chavarria, Catherine Holden, and Matthew Sheridan ("Named Plaintiffs") and the Settlement Class (together, "Plaintiffs") respectfully submit this memorandum of law in support of Plaintiffs' Motion for Final Approval of Class Action Settlement.[1] Plaintiffs' counsel has conferred with Defendant's counsel to ensure that this memorandum aligns with the terms agreed upon by the Parties – and previously submitted as Docket 232 as the Amended Settlement Agreement and Release ("Agreement").

In advance of the March 3, 2025 Fairness Hearing, Plaintiffs and Defendant respectfully submit that the Parties have complied with the Notice processes outlined in the Court's Preliminary Approval Orders (Dkt. 234 and 231) – and that the Agreement, as presented here, is both procedurally and substantively fair and a reasonable resolution of this action for all parties involved. To aid in the resolution of this Action, the Parties have jointly drafted and agreed upon a proposed Final Order (**Exhibit A**), which will be contemporaneously submitted pursuant to Your Honor's Civil Chambers Rules Section III Part G.

## **INTRODUCTION**

This proposed class action settlement would resolve the claims of students, like Named Plaintiffs, who paid Defendant University of San Diego ("Defendant" or "USD") tuition and fees for the Spring 2020 Semester for educational services that Plaintiffs claim were not delivered, and whose tuition and fees have not been refunded. In this action, Plaintiffs have asserted that USD breached its contract with students and was unjustly enriched when it failed to provide in-person and on-

---

[1] Unless otherwise indicated, capitalized terms shall have the same meaning as they do in the Amended Settlement Agreement. References to "§ __" are to sections in the Settlement Agreement, submitted as Docket 232 and all Exhibits are referred to as "Ex #." Are attached to the Declaration of Lauren Brennan, Esq.

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

campus educational services to its students for the entirety of the Spring 2020 semester and it failed to refund any of the tuition and fees paid by students. USD has defended the action arguing, *inter alia*, that no contract for in-person and on-campus educational services existed and asserted various affirmative defenses including excused performance and impossibility (*see e.g.,* Dkt. 33, 38). The Parties have vigorously litigated for over four years, completed fact discovery, conducted substantial expert discovery, and have briefed and/or argued many motions including motions for summary judgment by both parties and Plaintiffs' motion for class certification. The Parties were ultimately able to reach a settlement while simultaneously preparing for trial and nearing the completion of expert discovery.

As detailed herein, the Court should grant final approval because the Settlement provides a fair, reasonable, and adequate recovery for the Class. The Settlement creates a $1,400,000.00 Settlement Fund to the Class. Class Members received notice directly by email and/or regular mail, as well as indirect notice via a settlement website. § 2.3.2; **Exhibit D**, Declaration of Ryan McNamee ("McNamee Decl.") (detailing the notice process conducted by Apex Class Action Settlement on behalf of the Parties). Class Members did not have to take any action to participate in the Settlement but have been provided with the opportunity to submit an Election Form to choose the method by which they would like to receive payment. § 2.3.4. Over 770 Class Members did so.

The benefits provided by the Settlement, together with the provision of a direct notice program and a simplified payment process, makes the Settlement highly favorable for Class Members. It should be finally approved as both procedurally and substantively fair.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.   THE LITIGATION AND PLAINTIFFS' ALLEGATIONS

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

After initially filing their own separate class complaints, on April 28, 2021, Named Plaintiffs filed their Consolidated Class Action Complaint ("Consolidated Complaint", Dkt. 30). On March 30, 2022, the Court granted USD's motion to dismiss with respect to Plaintiffs' claims for quasi-contract and conversion claims but allowed their contract claim to go forward (Dkt. 45). The Parties then engaged in fact discovery between August 2022 and expert discovery up until this matter was resolved. Brennan Decl. ¶ 12. USD made extensive document productions, the Parties litigated several discovery disputes, took ten depositions, and exchanged expert reports and rebuttal reports. *Id.* ¶ 12.

On March 28, 2023, Plaintiffs filed their Motion for Class Certification (Dkt. 108). Defendant filed its Motion for Summary Judgment on May 26, 2023 (Dkt. 151). Plaintiffs then filed their Motion for Summary Judgment on June 9, 2023 (Dkt. 172). All three Motions were fully briefed before the Court directed the parties to resubmit those motions after the completion of expert discovery (Dkt. 208, 209).

## II.    SETTLEMENT NEGOTIATIONS

The Settlement is the result of lengthy, detailed, and adversarial negotiations including two settlement conferences (*see* Dkt. 56 and 106) and extensive arm's-length negotiation among the Parties.  Brennan Decl. ¶¶ 13-14, 22-23. Before and during these settlement discussions, the Parties exchanged sufficient information, including written discovery, one round of expert discovery (through 3 reports), and numerous depositions, to permit Plaintiffs and their counsel to evaluate the claims and defenses and to meaningfully conduct informed settlement discussions. Brennan Decl. ¶ 12-13. Class Counsel worked to thoroughly analyze the legal landscape, including conducting research into California contract and restitution laws and the available remedies to fully evaluate the risks and benefits to a potential resolution prior to trial.  Brennan Decl. ¶ 13.

The Parties were positioned to analyze and evaluate the claims and defenses

and the risks associated with proceeding to trial, including the risk that a trial may result in no recovery or recovery that is less favorable and would not occur for several years. *Id.* ¶ 37; see Dkt. 198 (reflecting pretrial submissions including a Joint Pre-Trial Order and jury instructions).

## III. THE TERMS OF THE PROPOSED SETTLEMENT

The Settlement's terms are detailed in the Agreement (Dkt. 232), but the Settlement's key terms are as follows:

### A. The Class

All enrolled students at USD who paid tuition, the Student Wellness fee and/or course fees to USD, or who were credited with having paid such tuition and/or Mandatory Fees to USD for the Spring 2020 term/semester, subject to the seven exclusions set forth below. Those seven categories of individuals are excluded from the Settlement Class definition: (1) students who enrolled in online-only classes at the beginning of the Spring 2020 semester, (2) students who paid no tuition or fees (i.e., students who received more in scholarships or grants from USD than what was charges in tuition and/or Mandatory Fees), (3) students who left or withdrew from USD prior to March 16, 2020, (4) any District Judge or Magistrate Judge presiding over this Action and members of their families, (5) the defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and nay entity in which the Defendant or its parents have controlling interest and their current or former officers, directors, agents, attorneys, and employees; (6) persons who properly execute and file a timely request for exclusion; and (7) the legal representatives, successors or assigns of any such excluded person.

§ 1.29.

### B. Relief for the Class Members

USD agrees to pay $1,400,000 into a common fund to pay Class Members and any Court-approved Attorneys' Fees and Costs, Service Awards, and all costs associated with the Settlement Claims Administrator. § 3.1. Class Members need not submit a claim form but may submit an Election Form to choose the method of

4

payment. § 2.3.4. In fact, over 770 Class Members submitted their Election Forms, demonstrating their approval of the Settlement. *See* Ex. D, McNamee Decl. at 12. The parties agreed upon an allocation formula and methodology that provides payment on a prorated basis based on a percentage of tuition and fees paid to USD, not including any grants and/or scholarships that did not require repayment. § 3.5.1.

### C.    The Release

In exchange for the benefits conferred by the Settlement, Class Members who do not opt out will be deemed to have released USD from all Released Claims. § 3.6.

### D.    Attorneys' Fees, Costs and Service Awards

Contemporaneously with this filing, Class Counsel is filing a Motion for Approval of Attorneys' Fees, Costs and Service Awards to be paid from the Settlement Fund. § 3.3. Named Plaintiffs also submit an application to the Court for payment of Service Awards of up to $5,000 each. § 3.4.

### E.    Settlement Administration and the Notice Plan

The Notice process was conducted by Apex Class Action Administrators and is detailed in the McNamee Declaration (Exhibit D), but several important pieces of information are included here and discussed below.

| | |
|---|---|
| Class Members: | 8,198 |
| Email Mailing Date: | Dec. 16, 2024 |
| Physical Mailing Date: | Dec. 23, 2024 |
| Emails Sent: | 6,961 |
| Mailings Sent: | 2,599 |
| Undeliverables: | 32 |
| Election Forms Submitted: | 777 |
| Emails Opened: | 5,658 |
| Website Address: | www.USDTuitionFeeSettlement.com |
| Website Visits: | 3,756 |

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*See* Ex. D, McNamee Decl. at ¶¶ 5-7, 10-12

### F.    Opt-Outs and Objections

No individuals opted out, and only one individual elected to object to the terms of the Settlement (Mr. Eric Bodman, filed via ECF at Dkt. 237). His objections and arguments are addressed below in Section C. The Parties have agreed that his objection should be overruled, and he be given 14 days after the Court overrules the objection to opt out or else be subject to the release and benefits afforded all Class Members. Language effectuating this agreement is included in the Parties' proposed Final Approval Order submitted herewith.

## ARGUMENT

At this stage after Notice, this Court should evaluate whether Rule 23(a) and (b) remain satisfied, and then evaluate whether the proposed Settlement is fair, reasonable and adequate pursuant to Rule 23(e), its delineated factors, and case law on the same. As respectfully submitted here, the Court's prior holdings remain true as to Rule 23(a) and (b), and the proposed Settlement is both procedurally and substantively fair when evaluated through the lens of Rule 23(e) factors.

### 1.    Rule 23(a)(1): Numerosity is Satisfied

"The prerequisite of numerosity is discharged if the class is so large that joinder of all members if impracticable." *Hanlon*, 150 F.3d at 1019 (quoting Fed. R. Civ. P. 23(a)(1)). Here, the Settlement Class is so numerous that joinder of all members is impracticable. It is comprised of 8,198 Class Members, according to the Settlement Claims Administrator after applying the exceptions set forth in the Class definition and reviewing the data provided by Defendant during the course of the settlement processes. *See* McNamee Decl. ¶ 5 *see also* § 1.29. Thus, the numerosity requirement is easily satisfied.

### 2.    Rule 23(a)(2): Commonality is Satisfied

Commonality under Rule 23(a)(2) requires a showing that there are questions

of law or fact common to the class, including that class members have suffered the same injury. *See* Dkt. 231 (*citing Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). The Court previously held that the Plaintiffs and Settlement Class Members "share a common claim [including] that the signed up and paid for in-person classes but only received in-person classes for half of the spring 2020 semester…" *Id.* at 14. The Court also held that class members were subject to the same legal and factual questions including whether they were entitled to access to campus-based educational services when they paid main campus tuition and fees, and that they suffered the same injury in the overpayment of tuition. *Id.*

Those common questions of law and fact remain the same, as they did at preliminary approval and nothing in the Notice process should alter the Court's prior holding. Thus, commonality is easily satisfied here.

### 3. Rule 23(a)(3): Typicality is Satisfied

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct, which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanlon*, 150 F.3d at 1020. The Court previously held that Plaintiffs satisfied typicality based on arguments (and related submissions) in Doc. 228, including at 14-16, and those facts remain true today, after Notice. As alleged and supported by substantial evidence, Plaintiffs' claims are typical of the Settlement Class's claims – basing their theory of liability, breach, and damages on the same theory as the proposed Settlement Class, and in fact allocating recovery in the settlement through the same calculations proposed during contested motion practice. (*See e.g.*, Dkt. 172-4 through 172-54 [compiling documents utilized by USD to convey its offerings across official policy documents, websites, secondary materials, course offerings, and other disclosures]). *See Gonzalez*, 489 F. Supp. 2d at 1156.

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs' claimed breach is the same as the Settlement Class's claimed breach: USD stopped providing the promised in-person instruction and access to these specific buildings, services and facilities as of March 14, 2020, despite the full payment of tuition and Mandatory Fees. *See* Dkt. 172-1 at 4, Joint Statement of Undisputed Facts No. 8. If this matter had gone to trial, Plaintiffs were going to seek the difference in market price between what they were promised and what they received, damages which require objective mathematical calculations that are the same for Plaintiffs and all other Class members. *See Waller*, 295 F.R.D. at 483 ("The injuries are economic in both instances and call for the same remedy: a refund of the value difference between a SimpleSave that is truly hands-free and one that requires a modicum of user programming if it is to save uncommon file types."); Dkt. 220-5 at § 3.5.1 (allocating refunds based on "a prorated basis based on a percentage of tuition and fees paid to USD during the Spring 2020 semester, taking into account any USD-funded amounts that did not require repayment).

Thus, typicality is easily satisfied.

### 4. Rule 23(a)(4): Adequacy is Satisfied

Rule 23(a)(4) requires that the representative "fairly and adequately protect the interests of the class." In the Ninth Circuit, adequacy of representation "depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (cleaned up).

Here, Plaintiffs satisfy the adequacy requirement. Plaintiffs' counsel has decades of experience prosecuting class actions and are especially well-positioned to have knowledge of the issues associated with these types of cases in the college contract and Covid-19 context.

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs' counsel has also been appointed and recognized as Class Counsel in similar tuition and fee refund actions against colleges and universities. *See Arredondo*, 341 F.R.D. at 54 ("Counsel here [including Leeds Brown Law, P.C. and Sultzer Law Group] has done significant work in identifying and investigating potential claims, including brining a meritorious motion for class certification supported by ample evidence. Counsel also has a wealth of experience handling class actions…. Counsel has demonstrated strong knowledge of the applicable law throughout the briefing process for this class certification motion."); *Meehan v. Roadmaster Drivers School, Inc.*, Case No. 5:22-cv-04299-JMG (E.D. Pa. Sept. 18, 2024) (in approving the class settlement of students at a driving school and noting, "… [A]s to the work Counsel [including attorneys from Francis Mailman Soumilas, P.C. and Leeds Brown Law, P.C.] has put in it's – from where I'm sitting, it's been substantial, and it's been first rate… [E]ach [of the firms] has represented their client with zeal and vigor."); *Stewart v. Univ. of Maine System*, Civil Action Docket No. CV-20-537 (Me. Superior Ct., Cumberland Cnty., Sept. 8, 2023) (in a contested certification hearing holding that "[Leeds Brown Law, P.C. along with Sultzer Law Group, P.C. and co-counsel] has demonstrable expertise litigating COVID-19 university tuition refund class action lawsuits."); *see also* Dkt. 220-1 at ¶¶ 17, 21 (detailing Plaintiff's counsel's experience in other similar actions, including joint actions). Plaintiffs' counsel has demonstrated their commitment repeatedly through this action, including extensive briefings on class certification, discovery motions, settlement conferences, and summary judgment – including completing a significant amount of pre-trial submissions before Your Honor was assigned. *See* Dkt. 198 (reflecting more than 350 trial exhibits being identified and competing jury instructions being presented).

As to the Named Plaintiffs, each shares the same interests as other class

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

members, as they bring the same claims and request the same relief. They have no claims antagonistic to the proposed Settlement Class, and there is no indication that the suit is collusive. *See e.g.*, Dkt. No. 98-3, at 85:2-5, 85:22- 86:3, 86:5-86:21 (Sheridan Dep.); Dkt. 172-71; *See also* Dkt. 172-79, Holden Dec. at ¶ 27 ("I am prepared to testify in court if I am needed, and I support this case for all the other students who were affected by USD's actions."); *see also* Dkt. 97-2 at 20 (Holden Dep.); Dkt. 97-3 at 17-19 (Chavarria Dep.); Dkt. 172-65 (swearing to his knowledge of the claims and continuing his support for the case and "all the other students" affected by the issues of the action). No conflicting interests have been identified by Defendant and each Named Plaintiff has executed the Agreement to demonstrate their continued commitment to bringing this action to resolution. *See* Dkt. 220-5 at 19-21.

Plaintiffs have each devoted significant time and energy to this suit, appearing for their depositions, appearing before the Court for two Settlement Conferences, responding to discovery requests – and remaining engaged through the negotiations process. Throughout their depositions, Plaintiffs answered questions regarding their experiences at USD, the claims they allege, and their understanding of their responsibilities as a class representative. For example, at Plaintiff Sheridan's deposition, (Dkt. No. 98-3 at 58-60), Plaintiff Sheridan testified about his role in directing the litigation, *id.* at 54:11-23, his role in supervising his attorneys, (*id.* at 54:24-55:8), his understanding of a class action, (*id.* at 56:17-57:3), his understanding of his responsibilities as a class representative, (*id.* at 57:14-59:20), and why he believes he would be a good representative, (*id.* at 59:21-60:25). Similarly, the other Named Plaintiffs testified to the same, including affirming their roles during the briefing of summary judgment. Dkt. 172-79, Holden Dec. at ¶ 27 ("I am prepared to testify in court if I am needed, and I support this case for all the

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

other students who were affected by USD's actions."); Dkt. 172-65, Chavarria Dec. at ¶¶ 1, 27 (swearing to his knowledge of the claims "so that me and other students can recover a partial refund of tuition and/or fees for the Spring 2020 semester…" and continuing his support for the case and "all the other students" affected by the issues of the action).

### 5. Rule 23(b)(3): Predominance is Satisfied

Under Rule 23(b)(3) a class may be certified if "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b). Rule 23(b)(3) also sets forth factors for courts to consider in evaluating predominance and superiority. These factors are: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

The predominance inquiry of Rule 23(a)(2) "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453, 136 S. Ct. 1036, 1045, 194 L. Ed. 2d 124 (2016) (cleaned up). *See also Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). Critically, "an individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide

proof." *Tyson Foods*, 577 U.S. at 453; accord *Ruiz*, 835 F.3d at 1134. This "inquiry is pragmatic and qualitative and focuses on whether common questions present the overriding issues in a suit." *Brown v. Hain Celestial Grp., Inc.*, No. 11-CV-03082-LB, 2014 WL 6483216, at *15, 2014 U.S. Dist. LEXIS 162038, at *46 (N.D. Cal. Nov. 18, 2014) (citing Newberg on Class Actions, § 4.51). Importantly, predominance is not defeated if some issues may require individualized inquiry, "such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods*, 577 U.S. at 453. *See also Dilts*, 267 F.R.D. at 635 ("individualized questions going to damages do not preclude a finding that common questions predominate.").

Here, the common issues (with common proof), "are more prevalent or important" than any individual issues. Particularly, the key issues in this implied-in-fact breach of contract action are: (1) whether USD promised in-person education and on-campus access, and (2) whether USD breached that promise by its March 2020 shut down. Both questions are "common, aggregation-enabling" issues "where the same evidence will suffice for each member." *See Tyson*, 577 U.S. at 453.

Plaintiffs have alleged that USD promised in-person education to all class members through the same course of performance, the same standardized documents, and the same representations. *See* Dkt. 172-2 at ¶¶ 1, 5, 7, 8, and 13 (compiling evidence on standardized documents and representations across contract formation stages). Cases dealing with standardized documents and practices are generally appropriate for resolution by class action because the common documents are the focal point of the analysis. *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 944 (9th Cir. 2019) ("predominance is rarely defeated in cases where such uniform policies exist."); *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 543 (N.D. Cal. 2005) ("Class actions are generally appropriate where standardized

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

documents are at issue."). Critically, the question over the interpretation of these documents and the expectations of the parties at contracting is an objective standard, making it ideal for class certification. *Arredondo*, 341 F.R.D. at 52 (noting "[T]he existence of standardized forms and documents supplied as part of the student-university contract…").

Similarly, proof of USD's breach will not vary from one class member to another; USD canceled a week of classes for all students, canceled in-person instruction for all students, and denied access to the promised facilities and services for all students. *See* Dkt. 172-1, Joint Statement Fact No. 8. Then, USD retained the full amount of tuition, course fees, and Student Wellness fees paid by all class members. See Dkt. 172-2 at 22 ("USD did not offer a refund for tuition and fees for the portion of the Spring 2020 semester during which instruction moved to remote means."); Exs. 1 and 2 (USD_016718 and USD_016712). Thus, the essential factual predicates for all Settlement Class Members are virtually the same – if not identical. *See Little*, 2022 WL 266726, at *7 (finding predominance because "[t]hese closures, and the failure to refund any money for the fees students paid, affected all students. They were no longer able to use the amenities or services for which they paid fees."); *Arredondo*, 341 F.R.D. at 53 ("For the period class members took online classes in lieu of in-person classes, damages are the difference between what each class member paid and the market value of the education they received.").

Predominance is further satisfied here because distribution of settlement proceeds is being done by the same objective criteria, which aligns with what Plaintiffs' expert proposed in his methodology. Given the issue of damage calculations in these cases has not been resolved by any court to Plaintiffs' Counsel's knowledge, the proposed methodology satisfies predominance and aligns with Plaintiffs' theory of damages. *See Arredondo*, 341 F.R.D. at 53 ("Without deciding

the correct calculation of market damages, the Court concludes Plaintiff has demonstrated that damages are capable of measurement on a class wide basis when considering what damages are attributable to Defendants' allegedly harmful conduct . . . A simple comparison of this value and the market value of online classes will yield the measure of damages for each student."). *See also KGM Harvesting Co. v. Fresh Network*, 36 Cal. App. 4th 376, 383 (6th Dist. Ct. App., June 30, 1995) (holding the open market value a reasonable approximation of damages and noting "[T]he object of contract damages is to [give] … the equivalent of the benefits of performance."); Restatement (Second) of Contracts § 377 (1981) ("A party whose duty of performance does not arise or is discharged as a result of impracticability of performance, frustration of purpose, non-occurrence of a condition or disclaimer by a beneficiary is entitled to restitution for any benefit that he has conferred on the other party by way of part performance or reliance.").

At this stage of the litigation and in the settlement context, Plaintiffs need show only that damages can be calculated on a class-wide basis; they need not perform those calculations until after the class is certified. *See Zakaria v. Gerber Prod. Co.*, No. LACV1500200JAKEX, 2016 WL 6662723, at *16 (C.D. Cal. Mar. 23, 2016) ("Plaintiff here has not completed the damages calculations. But, this does not preclude a finding of predominance. The theories of liability and proposed methods for calculating damages are sufficient."); *Chavez v. Blue Sky Nat. Bev. Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) ('[a]t class certification, plaintiff must present 'a likely method for determining class damages,' though it is not necessary to show that his method will work with certainty at this time."); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 946-47 (C.D. Cal. 2015) (granting motion to certify class, holding damages could be calculated on a class-wide basis despite the fact that plaintiff's experts had not yet conducted the hedonic regression or conjoint analysis);

*O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 341 (C.D. Cal. 1998) (certifying class, given expert report that damages could be calculated on a class-wide basis using hedonic price model using multiple regression analysis); *Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 408-411 (N.D. Cal. 2021) (similar); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 414 (S.D.N.Y. 2015) (rejecting defendant's objection that the proposed expert had not yet calculated the price premium; "nothing in Comcast requires an expert to perform his analyses at the class certification stage.") (emphasis in original).

Moreover, "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (holding predominance was satisfied because "if putative class members prove Medline's liability, damages will be calculated based on the wages each employee lost due to Medline's unlawful practices" and "Medline's computerized payroll and tine-keeping database would enable the court to accurately calculate damages and related penalties for each claim"). *See also Jimenez v. Allstate Insurance Co.*, 765 F.3d 1161, 1167 (9th Cir. 2014) ("So long as the plaintiffs were harmed by the same conduct, disparities in how or by how much they were harmed did not defeat class certification."); *Rai v. Santa Clara Valley Transp. Auth.*, 308 F.R.D. 245, 263 (N.D. Cal. 2015) ("Damage calculations at the class certification stage are not required to be 'exact[.]'). In fact, similar settlements have utilized similar methodologies for distributing proceeds to settlement, which further supports predominance. *See Arredondo v. Univ. of La Verne*, Case No. 2:20-cv-7665-MCS-RAO (C.D. Cal. April 14, 2023) (Dkts. 170-2 and 191) (approving allocation of cash benefits on a prorated basis utilizing a formula to account for the payment of tuition and fees after "taking into account any La Verne-funded and government funded scholarships and grants" among other factors").

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### 6. Rule 23(b)(3)(A)-(D): Superiority is Satisfied

"The superiority inquiry involves a comparative evaluation of alternative mechanisms of dispute resolution." *Achziger v. IDS Prop. Cas. Ins. Co.*, 772 F. App'x 416, 419 (9th Cir. 2019) (cleaned up); *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999).

Here, there is no better method available for adjudicating the claims which might be brought by each class member. Thousands of students paid for at least one on-site course at USD, several of which are supportive of this action. *See e.g.*, Dkt. 172-66; *see also* Turpen, Russo, D'Benedetto, and Bergen Decs filed in support of Class Certification at Dkt. 108 and 116. Litigating this case as a single class action "will achieve significant economies of 'time, effort, expense, and promote uniformity of decision.'" *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130-31 (2d. Cir. 2013). Without a representative action, thousands of enrolled students would unlikely be able to seek relief, given the costs of litigation against such a well-financed adversary would far exceed their potential recovery. *See Just Film,* 847 F.3d at 1123. Further, this action has been pending for more than four years and no other actions have been commenced by class members to counsel's knowledge. Thus, superiority is easily satisfied.

## I. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

Under Rule 23(e), a proposed class settlement should be approved when it is fair, reasonable, and adequate after considering whether: (a) the class representatives and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; and (iii) any agreement required to be identified under Rule 23(e)(3); and, (d) the proposal treats class members equitably.

In the Ninth Circuit, "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556, 568 (9th Cir. 2019) (en banc); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). The Court must evaluate whether the settlement is within the "range of reasonableness," and whether notice to the class after sending notice. Indeed, Courts in the Ninth Circuit apply several additional factors in evaluating the adequacy of a class action settlement: (1) the strength of the plaintiffs' case; (2) the extent of discovery completed and the stage of the proceedings; (3) the presence of a governmental participant; and (4) the reaction of the class members of the proposed settlement. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004); *see also Jones v. Netcom, Inc. (In re Bluetooth Headset Products Liab. Litig.)*, 654 F.3d 935, 946 (9th Cir. 2011). Here, these factors weigh in favor of final approval.

## A.    Rule 23(e)(2) Factors Weigh in Favor of Approval

### 1.    The Class Representative and Class Counsel Have Adequately Represented the Class

Named Plaintiffs have fulfilled their obligations throughout the case, including engaging with their counsel, sitting for depositions, and completing discovery. *See* Declarations of Catherine Holden, Edgar Chavarria, and Matthew Sheridan filed herewith. Additionally, the Class Representatives have no conflicts with the Class, have participated actively in the case, and are represented by attorneys experienced in class action litigation. Accordingly, this factor favors final approval.

### 2.    The Proposed Settlement Was Negotiated at Arm's Length

In reviewing what is "otherwise a private consensual agreement negotiated between the parties to a lawsuit," the court's scrutiny should be "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud

or overreaching by, or collusion between, the negotiating parties and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Service Comm'n*, 668 F.2d 615, 625 (9th Cir. 1982). A non-collusive settlement, negotiated by experienced class counsel with the involvement of a respected mediator, is entitled to "a presumption of fairness." *In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 450 (C.D. Cal. 2014).

Here, the proposed Settlement is the product of many months of negotiations between counsel – after two settlement conferences with the Court and substantial motion practice. *G. F. v. Contra Costa Cnty.*, 2015 U.S. Dist. LEXIS 100512, at *43 (N.D. Cal. July 30, 2015). Additionally, the Settlement does not bear any signs that the Ninth Circuit has identified as potentially indicating collusion or conflicts of interest:(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. *See In re Bluetooth*, 654 F.3d at 946. Here, Class Counsel will be paid from the same non-reversionary fund as members of the Class and thus had every reason to negotiate the largest fund possible. § 3.6.1. Also, the Settlement Agreement does not allow any of the settlement funds to revert to Defendant. § 3.1.2. This factor weighs strongly in favor of the Court approving the Settlement.

### 3. The Relief Provided to the Class is Adequate

#### (a) The Costs, Risks, and Delay of Trial and Appeal

In its evaluation of the Settlement, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Officers for Justice*, 688 F.2d at 625. There is "no single formula" to be applied, but the court may presume that the parties' counsel arrived at a

reasonable range of settlement by considering the plaintiffs' likelihood of recovery. *Rodriguez v. West Pub. Corp.*, 463 F.3d 948, 965 (9th Cir. 2009). Moreover, the Ninth Circuit has expressly rejected any requirement that the settling parties value maximum damages that can be obtained at trial, as that figure would be inherently speculative. *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) ("[N]ot only would such a requirement be onerous, it would often be impossible...").

Here, the claims brought by Plaintiffs on behalf of themselves and their fellow classmates are not guaranteed – as to liability, damages, or USD's impossibility defense. Across the country the results of these cases have been decidedly mixed. For example, the California Court of Appeals' decision in *Berlanga v. U. of San Francisco*, 318 Cal. Rptr. 3d 782 (Cal. App. 1st Dist. 2024), *reh'g denied* (Mar. 15, 2024) demonstrates the risk Plaintiffs face in continuing with litigation. *See also Bergeron v. Rochester Inst. of Tech.*, 2024 U.S. App. LEXIS 31215 (2nd Cir. 2024) (affirming summary dismissal of student's claims). The affirmed summary judgment decisions for the university in similar COVID college tuition suits, have held that the students' implied contract and unjust enrichment claims failed because they had not shown that the university promised to provide in-person education. While the California Supreme Court has yet to address the issue, and while *Berlanga* is arguably distinguishable on its facts from this case, the ruling demonstrates the value of resolving this case through approval of the Settlement. Even assume Plaintiffs establish liability through an implied contract theory or unjust enrichment, there would be two additional significant hurdles to face – both of which are unclear in the case law: (1) establishing damages under a contract or quasi-contract basis for the value of services Plaintiffs did receive, and (2) overcoming USD's impossibility defense. Those issues are far from settled law in California.

In light of the risks and uncertainties presented in this Action (especially in light of another motion for summary judgment by USD), the $1,400,000 Settlement

Fund is an extraordinary result. "[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624. Indeed, "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id*. at 625. Rather, any analysis of a fair settlement amount must account for the risks of further litigation and trial, as well as expenses and delays associated with continued litigation. *See Retta v. Millennium Prods.*, 2017 U.S. Dist. LEXIS 220288, *15 (C.D. Cal. Aug. 22, 2017).

The Settlement offers substantial cash benefit to the Class. The monetary recovery is in line with similar settlements in similar cases[2]. *See Kearney v. Hyundai Motor Am.,* 2013 U.S. Dist. LEXIS 91636, at *17-18 (C.D. Cal. June 28, 2013) (using cost of auto recall as a metric for valuing settlement); *see also Gutierrez v. Stericycle, Inc.*, 2019 U.S. Dist. LEXIS 237817, *12 (crediting the value of

---

[2] *See e.g., Choi v. Brown University*, Case No. 1:20-cv-00191-JJM-LDA (D.R.I.) (approving $1.5M for more than 9,600 students); *Espejo v. Cornell University*, Case No. 3:20-cv-00467-MAD-MIL (N.D.N.Y.) ($3M for more than 24,000 students); *Pfeifer v. Loyola University of Chicago*, No. 1:20-cv-03116 (N.D. Ill. Jan. 23, 2024), (granting approval of a class settlement with a per-student average recovery of $88.14); *Staubus v. Univ. of Minnesota*, Court File No. 27-cv-20-8546 (4th Jud. Dist., Hennepin Cnty., Minn.) ($3.25m for 54,000 students); *Rocchio v. Rutgers, The State University of New Jersey*, No. MID-L-003039-20 (N.J. Super. Ct.) ($5 million settlement with a per student recovery of $77.48); *Smith v. The Univ. of Pennsylvania*, Case No. 2:20-cv-02086 (E.D. PA) ($4.5M for more than 24,000 students); *Martin v. Lindenwood Univ.*, No. 4:20-cv-01128-RLW (E.D. Mo.) ($1.65MM common fund for more than 5,800 students); *D'Amario v. The Univ. of Tampa*, No. 7:20-cv-03744-CS (S.D.N.Y.) ($3.4MM common fund for more than 9,000 students); *Metzner v. Quinnipiac University*, 3:20-cv-00784-KAD (D. Conn.) ($2.5MM common fund for more than 9,000 students); *Fittipaldi v. Monmouth University*, Case No. 3:20-cv-05526-MAS-RLS (D.N.J.) ($1.3MM common fund for 4,200 students).

20

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

individual settlements to the value of the class-wide settlement); *Chin v. DaimlerChrysler Corp.*, 461 F. Supp. 2d 279 (D.N.J. 2006) (court found that Plaintiffs complaint was a material factor in motivating Defendant's decision to recall vehicles); *Edwards v. Ford Motor Co.*, 2016 U.S. Dist. LEXIS 59651 (S.D. Cal. Jan. 22, 2016).

If the case goes to trial or additional contested motion practice, USD will undoubtedly continue to contest Plaintiffs' damages model, calculations, and the testimony including those of Plaintiffs' expert. USD will also present its own expert testimony and argue, as it has from the inception of this Action, that Plaintiffs and the Class are not entitled to any damages – even if they could establish liability. Moreover, if Plaintiffs were to obtain a favorable verdict, USD would likely contest and/or appeal the verdict and thus, create a risk that the verdict will be overturned or reduced and further delay recovery while increasing costs. Given the substantial risks of continued litigation and the significant relief secured for the Class, the proposed Settlement should be viewed as a fair, reasonable, and adequate compromise of the issues in dispute.

### (b)    *Effectiveness of the Class Notice & Claims Processes*

The Notice process here was effective, as it entailed two types of direct notice and indirect notice via a Settlement Website. *See* McNamee Decl. ¶¶ 3-14 (detailing the notice process from emails to physical mailings, website creation, and skip traces for undeliverable emails). As a result, 777 Class Members submitted Election Forms and only 32 notices were undeliverable. *See* McNamee Decl. ¶¶ 10,12. So that reflects that over 99% of Class Members received notice at their last known email or physical address – and over 9.48% of Class Members submitted Election Forms.

A "claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23, 2018 Advisory Committee Notes. Here, there is no claims process

because Class Members need to perform nothing to receive a check. Class Members (after receiving notice) were given the option to select another means of receiving the proceeds: Venmo or Paypal. § 1.10; § 2.3.4. But if a Class Member did nothing, a check will still be mailed to their last known address on file. § 3.2.1. Further, Class Members are being given the opportunity to cash their checks within 270 days from mailing before the money goes to USD's institutional general scholarship and hardship financial aid fund – to be used by current students at USD. § 3.1.2.

### (c)    The Proposed Attorneys' Fees

The Settlement Agreement provides that the Class Counsel may apply for an award of attorneys' fees and reasonable litigation costs of no more than $275,000. § 3.3.1. Such a request represents 12% of the Gross Settlement Fund, which is below the benchmark for awards in this Circuit. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Carter v. San Pasqual Fiduciary Tr. Co.*, 2018 U.S. Dist. LEXIS 33834, at *22 (C.D. Cal. Feb. 28, 2018). Moreover, the requested amount is significantly less than Class Counsel's current lodestar. Brennan Decl. ¶ 33. Courts routinely grant requests for attorneys' fees with a lodestar multiplier of 1 to 4, however Plaintiffs' request is a negative multiplier. *Hopkins v. Stryker Sales Corp.*, 2013 U.S. Dist. LEXIS 16939, at *12 (N.D. Cal. Feb. 6, 2013). Class Counsel have prosecuted this action, with no guarantee of recovery, and have advanced all costs to date, including a $276,236.74 in expenses between the firms to date, not including payments previously made pursuant to this Court's orders. Brennan Decl. ¶ 35. That Class Counsel's proposed award here is likely well below its lodestar, demonstrates the reasonableness of the request and that the award sought is in line with typical awards in this Circuit.

### (d)    Rule 23(e)(3): No Side Agreements

There are no additional agreements in connection with the Settlement.

### 4.    The Proposal Treats Class Members Equitably

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Each member of the Settlement Class is treated in the same manner with respect to the claims they are releasing and their eligibility for an award, with the amount of the award dependent on the amount of tuition and fees paid for the Spring 2020 Semester by the Class Member. This approach provides Class Members the ability to obtain a payment commensurate with their potential losses, as compared to other members of the Class.

**B.    The Settlement Satisfies the _Churchill_ Factors**

_Churchill_ sets forth the factors that the Ninth Circuit considers in evaluating class actions settlement. _See Churchill_, 361 F.3d 566, 575-76. Many of those factors overlap with the Rule 23(e)(2) requirements and are discussed above. _Churchill_ sets forth several additional factors which also weigh in favor of final approval in this case: a) the strength of the Plaintiff's case; b) the extent of discovery completed and the stage of the proceedings; c) the presence of a governmental participant; and d) the reaction of the class members of the proposed settlement.

_1.    The Strength of Plaintiffs' Case_

Plaintiffs believe that they have built a strong case for liability, class certification, and damages, the dominant issues remaining in the case. Plaintiffs have presented a damages model and expert reports that support its argument that students are entitled to a pro rata refund of tuition and fees for the portion of the Spring 2020 semester that USD did not provide in-person, on-campus educational services and for its method of calculating those damages – including based on the market value of such services via a hedonic regression analysis. Plaintiffs believe that through their expert reports and evidence gathered through discovery they could prove damages at trial. Nonetheless, significant litigation risks and risks of delay exist, which militate in favor of settlement. _See_ Section I(A)(3)(a), _supra_.

_2.    Extent of Discovery Completed and the State of Proceedings_

"A settlement following sufficient discovery and genuine arm's-length negotiation is presumed fair." *Nat'l Rural Telecomms. Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 527-528 (C.D. Cal. 2004). "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." 5 Moore's Federal Practice, § 23.85[2][e] (Matthew Bender 3d ed.). "If all discovery has been completed and the case is ready to go to trial, the court obviously has sufficient evidence to determine the adequacy of settlement." *See* 4 A. Conte & H. Newberg, Newberg on Class Actions, § 11:45 at 129 (4th ed. 2002).

Here, the Parties have completed nearly all of discovery which has included extensive written discovery plus numerous depositions. *See* Brennan Decl. ¶ 12. USD produced approximately 36,000 pages of documents in response to multiple requests for production *Id*. ¶ 12. Plaintiffs conducted ten depositions of Defendant's representatives, and Defendant deposed Named Plaintiffs. *Id.* Plaintiffs also produced approximately 1,000 pages of documents in response to USD's requests. Additionally, the Parties exchanged expert reports and rebuttal reports, and Defendant deposed Plaintiffs' expert. *Id*. ¶ 12. The Parties have also litigated numerous discovery disputes and attended an Early Neutral Evaluation and a Settlement Conference. *Id.* at ¶ 14. Accordingly, the Parties are now well-aware of the strengths and weaknesses of their claims and defenses and are well-equipped to negotiate the Settlement Agreement. Additionally, Class Counsel is involved in numerous cases across the country, either collectively or individually, and are uniquely situated to know the landscape of similar settlements, favorable fact patterns, favorable case law, and potential issues subject to unfavorable adjudication – and the likelihood of uncertainty on appeal. *See* Brennan Decl. ¶ 38.

    3.    *The Presence of a Government Participant*

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

As there is no governmental participant in this action, this factor is irrelevant.

### 4. The Reaction of the Class to the Proposed Settlement

The Class has overwhelmingly indicated their support of the Proposed Settlement. No Class Member opted out of the Class, and only one objected to the Proposed Settlement, discussed *supra*.

Accordingly, the factors discussed above favor final approval.

### C. Views of Experienced Counsel Should be Given Weight

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Here, the Parties achieved a settlement after a thorough analysis of the facts and issues, including a rigorous analysis of the Parties' claims and defenses and after extensively litigating the issues. The expectations of all Parties are embodied by the Settlement, which is non-collusive, being the product of extensive arm's length negotiations. The Parties were represented by experienced counsel possessing significant experience in complex commercial and class action matters, including those in the COVID-19 tuition and fee context. Brennan Decl. ¶ 38. Likewise, USD's counsel, Quarles & Brady LLP, is a renowned law firm. The Parties' recommendation to approve this Settlement should therefore "be given great weight." *Eisen v. Porsche*, 2014 WL 439006, at *5.

### I. The Objection Should Be Overruled

Only one individual has objected to this Settlement (see Dkt. 237, Mr. Bodman), but his objection misunderstands the risks and law as well as the substantial time, energy, and effort that went into obtaining the Settlement. Critically, his theories of liability and damages differ significantly from those brought by the Plaintiffs here. Therefore, the Parties agree that Mr. Bodman's objection should be overruled, but Plaintiffs request that he be given 14 days after

receiving a copy of this Court's Final Approval Order to exclude himself or remain in the Class.

Mr. Bodman's primary concerns reflect a misunderstanding of the claims brought and the risk of pursuing them further.

First, Mr. Bodman's primary concerns appears to be the monetary recovery "in light of the harm suffered by members of the class." In this regard, Mr. Bodman fails to take into account the fact that students like him did receive credits towards their degree and educational instruction (despite it being remote). Therefore, Mr. Bodman would appear to be asserting a claim that he received nothing in exchange for his payment of tuition or fees – or is not acknowledging the value of partial performance. Plaintiffs here have asserted partial performance of contract claim, not that they received nothing of value. Plaintiffs acknowledge they received instruction and acknowledge they received progress towards their degree – and received full performance during a portion of the Spring 2020 semester.

Second, Mr. Bodman on several occasions references "subpar online educational experience", "difference in quality," or other language aimed at the quality of the services he received from USD. Those statements potentially run afoul of California's educational malpractice doctrine, such that Mr. Bodman would be subject to dismissal for raising legal claims centered around whether the instruction USD provided was of a promised quality or not. *See Peter W. v. San Fran. Unified Sch. Dist.*, 60 Cal. App. 3d 814 (1976). Those claims are likely not viable under existing California law, although future USD students may welcome Mr. Bodman taking on the task of changing the law before the California Supreme Court. Plaintiffs here did not seek to challenge California's educational malpractice doctrine.

Third, Mr. Bodman references other semesters including "three out of four

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

semesters" where he received a "subpar online" instruction. However, Mr. Bodman fails to recognize that USD made certain public pronouncements, wherein students like Mr. Bodman could have made the decision to transfer to another school or delay their instruction at USD until things returned to normal. Thus, Mr. Bodman is not taking into account the fact that waiver, ratification, acquiescence, or other legal doctrines come into play when incidents outside of the Spring 2020 semester are discussed. In fact, case law across the country has been especially hostile towards claims made by students about their school's performance after the school made its closure decisions. So again, Plaintiffs here have not pursued claims for subsequent semesters, like those Mr. Bodman suggests to be viable.

Fourth, Mr. Bodman asserts that among other things "in-person application interviews" support his contract claim. Again, Mr. Bodman's theory of liability deviates substantially from that of the Plaintiffs here. Plaintiffs here do not rely on oral representations or interviews for their contract. Such an analysis potentially runs afoul of *Kashmiri's* mandate that "the reasonableness of the student's expectations is measured by the definiteness, specificity, or explicit nature of the representations at issue." *Kashmiri v. Regents of Univ. of Cal.*, 156 Cal. App. 4th 809 (1st Dist. Ct. App. 2007). Under *Kashmiri*, it may be unreasonable to rely upon interview statements that are not tied to specific, definite or concrete statements made in the University's official documents. Plaintiffs here have relied upon several critical categories of evidence that all stem objective facts – not tied to subjective beliefs or statements made by USD or the Parties in any conversations. *See* Dkt. 172-2.

Fifth, while Plaintiffs sympathize with Mr. Bodman's hope for a greater recovery, his attacks on the settlement as "a quick settlement" and a settlement "to simply benefit high end attorneys … not the class members who were actually harmed by the University" are substantially flawed. This was not a quick settlement.

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

This was a hard-achieved result that occurred after years of litigation, numerous depositions, numerous Court conferences, two settlement conferences, substantial briefings on the merits of the claim, pre-trial submissions, and numerous discussions on the merits formally and informally. This case was in fact on the cusp of an all-or-nothing proposition for both sides (with the pretrial work nearly completed) – and the Settlement should be evaluated in that context. Mr. Bodman does not recognize the stage of the proceedings or the enormous risk facing both Parties in re-briefing summary judgment or proceeding to trial on the merits. Additionally, Mr. Bodman does not appreciate the considerable amount of work that went into this action to bring it to the brink of trial, when it settled – as he does not cite to any deposition testimony, docket entries, specific documents, or other publicly filed materials to support his argument that this Settlement was done quickly or without concern for the Class Members. As such, his arguments are fundamentally flawed.

Given these issues and Mr. Bodman's strong feelings on the success of his divergent legal theories, Plaintiffs request that Mr. Bodman be given 14 days after he receives notice that his objections are overruled to pursue them on his own – otherwise, he should be subject to the release and consideration.

## **CONCLUSION**

After the fairness hearing, Plaintiffs respectfully request that the Court grants: (1) final approval of the proposed settlement; (2) certification of the Settlement Class and confirm the appointment of Class Representative and Class Counsel; (3) authorize the Parties including Settlement Administrator to effectuate the terms of the Agreement, including establishing a Settlement Fund and distributing the funds once received by USD to the appropriate Class Members, individuals and entities; (4) dismissing this action with prejudice, and (5) such other and further relief as the Court may deem just and proper.

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Date: February 14, 2025

*/s/ Lauren KW Brennan*
James A. Francis, Esq.*
Lauren KW Brennan, Esq. *
**FRANCIS MAILMAN SOUMILAS, P.C.**
1600 Market St., Suite 2510
Philadelphia, PA 19103
Tel: (215) 735-8600
jfrancis@consumerlawfirm.com
lbrennan@consumerlawfirm.com

Carney R. Shegerian (SBN 150461)
Anthony Nguyen (SBN 259154)
**SHEGERIAN & ASSOCIATES, INC.**
11520 San Vincente Blvd.
Los Angeles, CA 90049
Tel: (310) 860-0770
cshegerian@shegerianlaw.com
anguyen@shegerianlaw.com

Michael A. Tompkins, Esq.*
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
Tel: (516) 873-9550
mtompkins@leedsbrownlaw.com

Jason P. Sultzer, Esq.**
Jeremy Francis, Esq.**
**SULTZR & LIPARI, PLLC (FORMERLY THE SULTZER LAW GROUP P.C.)**
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 102601
Tel: (846) 483-7100
sultzerj@thesultzerlawgroup.com
francisj@thesultzerlawgroup.com

Yvette Golan, Esq.*
**THE GOLAN FIRM PLLC**
529 14th St., N.W., Suite 914
Washington, DC 20045
Tel: (866) 298-4150

29

ygolan@tgfirm.com

*Admitted Pro Hac Vice
** Pro Hac Vice Pending

*Counsel for Plaintiffs and the Putative Class*

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT