# EXHIBIT C

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HALEY MARTINEZ, et al., <div align="right">Plaintiffs,</div> v. <br><br> UNIVERSITY OF SAN DIEGO, <div align="right">Defendant.</div> | Case No.: 3:20-cv-01946-RBM-VET <br><br> **ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND NOTICE PLAN** <br><br> **[Doc. 220]** |

Pending before the Court is Plaintiffs[1] Edgar Chavarria, Catherine Holden, and Matthew Sheridan's (collectively, the "Plaintiffs") Motion for Preliminary Approval of Class Action Settlement and Notice Plan ("Motion for Preliminary Approval"), which was filed on May 16, 2024. (Doc. 220.)

In their Motion for Preliminary Approval, Plaintiffs move this Court pursuant to Federal Rule of Civil Procedure 23 for an order (i) preliminarily approving the proposed settlement agreement, including the exhibits attached thereto ("Settlement Agreement"); (ii) appointing the named plaintiffs as class representatives; (iii) appointing Plaintiffs'

---

[1] Haley Martinez was terminated as a named plaintiff on April 13, 2023. (Doc. 113.)

counsel—Leeds Brown Law, P.C.; The Sultzer Law Group, P.C.; The Golan Firm PLLC; Shegerian & Associates, Inc.; and Francis Mailman Soumilas, P.C.—as class counsel; (iv) approving the notice plan and forms of notice to the class; and (v) setting all future dates and procedures for opt-outs, objections, and a final approval hearing.  (*Id.* at 2.[2])

On September 23, 2024, the Court ordered supplemental briefing "regarding certification of the class defined in the proposed Settlement Agreement."  (Doc. 221 at 4.) On October 16, 2024, Plaintiffs filed a Supplemental Memorandum of Law in Further Support of Preliminary Approval ("Supplemental Briefing").  (Doc. 228.)

To date, Defendant University of San Diego ("Defendant" or "USD") has not filed any opposition to Plaintiffs' Motion for Preliminary Approval or their Supplemental Briefing.

The Court finds this matter suitable for determination without oral argument pursuant to Civil Local Rule 7.1(d)(1).  For the reasons set forth below, Plaintiffs' Motion for Preliminary Approval is **<u>GRANTED</u>** subject to the guidance and conditions set forth below.

## I.   <u>BACKGROUND</u>

The Court summarizes all filings relevant to Plaintiffs' Motion for Preliminary Approval below.

### A.   **Plaintiffs' Motion for Class Certification**

On March 28, 2023, Plaintiffs filed a Motion for Class Certification.  (*See* Docs. 108, 116.)  Plaintiffs sought certification of the following class:

> All students enrolled at the University of San Diego during the Spring 2020 semester who (i) were registered for at least one on-site course, and (ii) who paid tuition, course fees, and/or Student Wellness fees, or on whose behalf tuition, course fees, and/or Student Wellness fees were paid.

(Doc. 116-1 at 7.)

---

[2] The Court cites to the CM/ECF pagination unless otherwise noted.

2

In this motion, Plaintiffs argued that the proposed class meets the four requirements set forth in Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. (Doc. 116-1 at 14–18.) First, Plaintiffs argued that the proposed class is so numerous that joinder of all members would be impracticable. (*Id.* at 14–15.) Second, Plaintiffs asserted that there are questions of law and facts common to the proposed class, e.g., whether Defendants failed to provide the in-person classes and services promised and whether USD's past performance created an implied-in-fact contract to provide in-person educational services. (*Id.* at 15–16.) Third, Plaintiffs argued that their claims are typical of the proposed class's claims because the damages calculation is the same for Plaintiffs as it would be for the proposed class. (*Id.* at 16–17.) Finally, Plaintiffs asserted that their representation of the proposed class is adequate because they have engaged experienced counsel, they have the same claims and interests as the proposed class members, and they have dedicated significant time and energy to this lawsuit. (*Id.* at 17–18.)

Plaintiffs also argued that the proposed class meets the requirements of Rule 23(b)(3). (*Id.* at 18–26.) First, Plaintiffs argued that issues common to the proposed class, e.g., whether USD promised students in-person education and whether USD breached that promise, predominate over any individual issues. (*Id.* at 19–21.) Second, Plaintiffs asserted that damages will be calculated the same for every member of the proposed class and need not account for individual circumstances. (*Id.* at 21–23.) Finally, Plaintiffs contended that the proposed class is the best method for adjudicating the proposed class members' claims because a single class action achieves "significant economies of time, effort, expense, and promote uniformity of decision." (*Id.* at 24–26 (internal quotation omitted).)

Plaintiffs concluded that the Court should appoint Plaintiffs' counsel as class counsel pursuant to Rule 23(g)(1).[3]

---

[3] On May 8, 2023, Defendant filed an Opposition to Plaintiffs' Motion for Class Certification. (Doc. 125.) On May 30, 2023, Defendant also filed a Notice of

3

In its Order Granting in Part and Denying in Part Plaintiffs' Rule 72 Motion to Overturn Magistrate Judge Gallo's May 23 Order Striking Plaintiffs' Supplemental Expert Report ("Rule 72 Order") dated February 7, 2024, the Court ordered that discovery be reopened for 60 days, allowed Plaintiffs to refile their Motion for Class Certification 30 days after the close of discovery, and therefore denied Plaintiffs' Motion for Class Certification without prejudice. (*See* Doc. 209 at 23.)  Plaintiffs did not refile a Motion for Class Certification.

**B.    Plaintiffs' Motion for Preliminary Approval**

In their Motion for Preliminary Approval, Plaintiffs seek the Court's preliminary approval of the proposed Settlement Agreement. (Doc. 220.)  In the proposed Settlement Agreement, the Parties define the class as "all enrolled students at USD who paid tuition, the Student Wellness fee and/or course fees to USD, or who were credited with having paid such tuition and/or Mandatory Fees to USD for the Spring 2020 term/semester."   (Doc. 220-5 [Settlement Agreement] § 1.29.)  This definition differs from the class definition in Plaintiffs' Motion for Class Certification.

Plaintiffs then argue the proposed Settlement Agreement is fair, reasonable, and adequate under Rule 23(e)(2). (Doc. 220 at 6, 13–14.)  Specifically, Plaintiffs argue that the Rule 23(e)(2) factors weigh in favor of preliminary approval because (1) the class representatives and class counsel have adequately represented the class; (2) the proposed settlement was negotiated at arm's length; (3) the relief provided to the class is adequate considering the costs, risks, and delay of trial, the effectiveness of the class notice and processing of claims, and the proposed attorneys' fees; and (4) the proposal treats members of the class equitably. (*Id.* at 13–22.)  Plaintiffs also assert that the proposed Settlement

---

Supplemental Authority in Support of their Opposition to Plaintiffs' Motion for Class Certification. (Doc. 155.)  On June 1, 2023, September 12, 2023, and October 5, 2023, Plaintiffs filed three Notices of Supplemental Authority in Support of Plaintiffs' Motion for Class Certification. (*See* Docs. 161, 200, 201.)

4

Agreement satisfies the factors set forth in *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir.2004) (*id.* at 22–24) and that the views of counsel should be given substantial weight (*id.* at 24–25). Finally, Plaintiffs contend that their proposed notice plan provides class members the best notice practicable under the circumstances and adequately informs class members of the settlement and their right to object or opt-out. (*Id.* at 25–27.) Although Plaintiffs reference their prior Motion for Class Certification (*see id.* at 6, 8, 15) and request the Court confirm certification of the class (*id.* at 27), Plaintiffs did not re-brief class certification for the newly defined class.

**C.    Settlement Terms**

Plaintiffs attach the proposed Settlement Agreement to the Declaration of Michael A. Tompkins, Esq. in Support of Plaintiffs' Motion for Preliminary Approval ("Tompkins Decl.") as Exhibit D. (*See* Doc. 220-1 [Tompkins Decl.] ¶ 23, Ex. D; Doc. 220-5 [Settlement Agreement].) The Court summarizes the relevant provisions here.

**1.    The Class, the Class Representatives, and the Parties**

"Settlement Class, Class or Class Members means: all enrolled students at USD who paid tuition, the Student Wellness fee and/or course fees to USD, or who were credited with having paid such tuition and/or Mandatory Fees to USD for the Spring 2020 term/semester." (Doc. 220-5 [Settlement Agreement] § 1.29.) Plaintiffs are the "Class Representatives" or "Named Plaintiffs." (*Id.* at 1, § 1.15.)

"Class Counsel" means Yvette Golan of The Golan Firm PLLC; Carney R. Shegerian and Anthony Nguyen of Shegerian & Associates, Inc.; James Francis of Francis Mailman Soumilas, P.C.; Jason Sultzer of The Sultzer Law Group, P.C.; and Michael A. Tompkins of Leeds Brown Law, P.C. (*Id.* § 1.4.)

Plaintiffs and Defendant are referred to collectively as the "Parties." (*Id.* at 1.)

**2.    Monetary Relief**

In the proposed Settlement Agreement, "Defendant agrees to pay an additional One Million Four Hundred Thousand Dollars ($1,400,000.00) to fully satisfy any and all current cash benefits to be paid to all Class Members, any Court-approved Costs and Fees, and all

5

costs and fees associated with the Settlement Claims Administrator." (Settlement Agreement § 3.1.[4]) "Defendant shall make payments into the [Qualified Settlement Fund ("QSF")] as follows: (i) on or before 14 days after Preliminary Approval, Defendant shall pay $35,000 for the primary purpose of funding the Settlement Claims Administrator and paying the costs associated with effectuating notice; and (ii) on or before 10 days after the Final Effective Date, Defendant shall fund the remainder of the Gross Settlement Fund into the QSF." (*Id.* §§ 1.23, 3.1.1.)

Additionally, "Class Counsel will petition the Court for an award of no more than Two Hundred Seventy-Five Thousand Dollars ($275,000.00) for attorneys' fees and will additionally petition the Court for reimbursement of reasonable litigation costs, and expenses not to exceed $300,000." (*Id.* § 3.3.1.) "Named Plaintiffs may [also] apply to the Court to receive a Service Award of no more than Fifteen Thousand Dollars total ($15,000)." (*Id.* § 3.4.1.) "The sum of all calculated amounts is expected to be $750,000, after payment of Attorneys' Fees and Costs, Service Award, and costs of the Settlement Claims Administrator."[5] (*Id.* § 3.5.2.)

"The Settlement Claims Administrator shall prepare calculations to be approved by the Parties, and the Net Settlement Fund shall be distributed proportionately to all Class Members based on the following terms and criteria: … Students who enrolled for online only classes at the beginning of the Spring 2020 Semester, who paid no tuition or fees, or who left USD prior to March 16, 2020, are not eligible to collect any proceeds. … The remainder of the Net Settlement Fund shall be allocated to Class Members on a prorated basis based on a percentage of tuition and fees paid to USD during the Spring 2020

---

[4] This section provides for the payment of "an additional" $1.4 million; however, the Court is not certain from the context of the Settlement Agreement what this payment is "in addition" to.

[5] By the Court's calculations, the total is expected to be $745,000, not $750,000.

Semester, taking into account any USD-funded amounts that did not require repayment."[6] (*Id.* § 3.5.1.)

### 3. The Release

"Releasing Parties means Named Plaintiffs [and] those Class Members who do not timely opt out of the Settlement Class …." (*Id.* § 1.26.) "Released Parties means USD …." (*Id.* § 1.25.)

"Released Claims means any and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extra contractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and or obligations … regarding USD's actions, inactions, decisions, and/or indecisions with respect to COVID-19 during the Spring 2020 Semester, including transitioning in-person instruction, educational services, campus events, and other USD services to a remote format during the Spring 2020 Semester, including but not limited to all claims that were brought or could have been brought in the Action by Releasing Parties relating to any and all of the Released Parties." (*Id.* § 1.24.)

"Upon the Final Effective Date, the Releasing Parties … shall be deemed to have … released, relinquished, and discharged all Released Claims." (*Id.* § 3.6.1.)

### 4. Settlement Administration and Notice Procedures

"Settlement Claims Administrator means a qualified third-party administrator agreed upon by the Parties and retained by Plaintiffs, including the following pre-approved list: CPT Group, Epiq, Apex, and Simpluris." (*Id.* § 1.28.) "The Settlement Claims Administrator shall be paid out of the QSF." (*Id.* § 2.1.1.)

The responsibilities of the Settlement Claims Administrator include, but are not limited to, the following: "(i) printing and disseminating, via mail and/or e-mail to the

---

[6] The Court notes that the subsections under Settlement Agreement § 3.5.1 are incorrectly numbered.

Settlement Class the Notice and Election Forms; … (v) promptly furnishing to counsel for the Parties copies of any requests for exclusion, objections or other written or electronic communications from each Class Member that the Settlement Claims Administrator receives; (vi) receiving, retaining and reviewing the Election Forms submitted by each Class Member; (vii) keeping track of requests for exclusion or objection, including maintaining the original envelope in which the request or objection was mailed; (viii) distributing the Settlement Checks to Class Members and/or Court-approved Costs and Fees, as necessary; (ix) preparing, sending and/or wire-transferring Class Counsel's attorneys' fees, expenses, and costs; (x) mailing Service Award and Settlement Checks in accordance with this Agreement and the Approval Order; … (xx) obtaining, administering, and maintaining a settlement website; … and (xxii) such other tasks as the Parties mutually agree." (*Id.* § 2.1.2.)

### 5. Opt-Outs and Objections

"Class Members who elect to opt-out of the settlement as set forth in this Agreement must mail … a written, signed statement to the Settlement Claims Administrator that states he or she is opting out of the settlement ('Opt-out Statement')." (Doc. 220-5 [Settlement Agreement] § 2.4.1.) "Any Class Member who does not timely submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the settlement and the terms of this Agreement, will be bound by the Approval Order, and will have any and all Released Class Claims released and dismissed with prejudice." (*Id.* § 2.4.4.)

"Class Members who wish to present objections to the proposed settlement must do so in writing …. To be considered, such statement must be mailed to the Settlement Claims Administrator …." (*Id.* § 2.5.1.) "Any Class Member who has elected to opt-out may not submit objections to the settlement." (*Id.* § 2.5.2.)

"[T]he Settlement Claims Administrator shall certify jointly to Class Counsel and Defendant's Counsel: (a) a list of all Class Members, (b) a list of all Objectors, (c) a list of all Class Members who timely submitted an Opt-out Statement, and (d) an estimated calculation of the Settlement Proceeds to Class Members …." (*Id.* § 2.6.)

**D.    Plaintiffs' Supplemental Briefing**

After the Court ordered supplemental briefing "regarding certification of the class defined in the proposed Settlement Agreement" (Doc. 221 at 4), Plaintiffs filed their Supplemental Briefing (Doc. 228).  In their Supplemental Briefing, Plaintiffs modified "the Settlement Class definition to more accurately reflect the intention of the Parties[.]"  (*Id.* at 7.)  The new Settlement Class is defined as follows:

> All enrolled students at USD who paid tuition, the Student Wellness fee and/or course fees to USD, or who were credited with having paid such tuition and/or Mandatory Fees to USD for the Spring 2020 term/semester, subject to the seven exclusions set forth below. Those seven categories of individuals are excluded from the Settlement Class definition: (1) students who enrolled in online-only classes at the beginning of the Spring 2020 semester, (2) students who paid no tuition or fees (i.e., students who received more in scholarships or grants from USD than what was charges in tuition and/or Mandatory Fees), (3) students who left or withdrew from USD prior to March 16, 2020, (4) any District Judge or Magistrate Judge presiding over this Action and members of their families, (5) the defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and nay entity in which the Defendant or its parents have controlling interest and their current or former officers, directors, agents, attorneys, and employees; (6) persons who properly execute and file a timely request for exclusion; and (7) the legal representatives, successors or assigns of any such excluded person.

(*Id.* at 7–8; Doc. 228-14.)  Plaintiffs explain that the revised Settlement Class intends to exclude "(1) students that enrolled in online-only classes to begin the semester, (2) students that paid no tuition or fees (i.e., students on full scholarship by USD backed scholarships or grants), and (3) students who left USD prior to March 16, 2020." (Doc. 228 at 7.)

Plaintiffs then argue that the newly defined Settlement Class meets the requirements of Federal Rule of Civil Procedure 23(a)(1)–(4).  (*Id.* at 8–19.)  First, Plaintiffs calculate that the proposed Settlement Class size is approximately 7,323, which satisfies the numerosity requirement under Rule 23(a)(1).[7]  (*Id.* at 11–13.)  Second, Plaintiffs assert that

---

[7] In making this argument, Plaintiffs appear to express frustration with having to use "Plaintiffs' expert and [Defendant's] resources" to calculate the size of the class.  (*Id.* at 12

9

Rule 23(a)(2)'s commonality requirement is satisfied because Plaintiffs and the prospective class members share a common claim—that they signed up and paid for in-person classes but only received in-person classes for half of the Spring 2020 semester—as well as common questions of fact and law—e.g., whether students were entitled to receive access to in-person, campus-based educational services when they paid main campus tuition and fees. (*Id.* at 13–14.)  Third, Plaintiffs contend that Rule 23(a)(3)'s typicality requirement is satisfied because Plaintiffs claims are typical of the Settlement Class's claims because, among other things, the "[t]he implied-in-fact promise of in-person education is the same for both Plaintiffs and the Class[,]" "Plaintiffs' claimed breach is the same as the Settlement Class's claimed breach[,]" and Plaintiffs' claimed damages are the same as the Settlement Class's claimed damages.  (*Id.* at 14–16.)  Fourth, Plaintiffs argue that Rule 23(a)(4)'s adequacy requirement is satisfied because Plaintiffs' counsel has decades of experience prosecuting class actions, including similar tuition and fee refund actions, and Plaintiffs' counsel has demonstrated their commitment to this action by filing extensive briefing. (*Id.* at 16–18.)  Plaintiffs also assert that the Named Plaintiffs' interests are in line with those of the proposed Settlement Class and that each Named Plaintiff has demonstrated their commitment to this class litigation by preparing and appearing for depositions and before the Court. (*Id.* at 18–19.)

Next, Plaintiffs argue that the newly defined Settlement Class meets the predominance and superiority requirements of Rule 23(b)(3).  (*Id.* at 19–25.)  First, Plaintiffs assert that "the common issues (with common proof)," e.g. whether Defendant promised the class members an in-person education and whether it breached that promise,

---

("While the Parties had not anticipated needing to apply the Section 3.5.1 Exclusions at this stage of the action and had hoped to cost-effectively utilize the services of the third-party Settlement Administrator—rather than Plaintiff's expert or USD's resources—the Parties have conferred to determine ….").)  Plaintiffs' frustration is not well taken given the Court's obligation to evaluate class certification in light of the terms of the proposed Settlement Agreement.  *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 621 (1997).

"'are more prevalent or important' that any individual issues." (*Id.* at 20–21.) Second, Plaintiffs contend that the "common proof" consists of the same standardized documents and the same representations because Defendant cancelled in-person instruction for all class members and retained the tuition paid by all class members. (*Id.* at 21–22.) Third, Plaintiffs assert that they can calculate damages and distribute settlement proceeds on a class-wide basis and that the presence of individualized damages cannot defeat class certification. (*Id.* at 22– 24.) Finally, Plaintiffs argue that there is no better method available for adjudicating the claims. (*Id.* at 24–25.)

## II. <u>DISCUSSION</u>

### A. Class Certification—Federal Rule of Civil Procedure 23(a)–(b)

Federal Rule of Civil Procedure 23(a) provides, "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable [i.e., numerosity]; (2) there are questions of law or fact common to the class [i.e., commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [i.e., typicality]; and (4) the representative parties will fairly and adequately protect the interests of the class [i.e., adequacy]."

Relatedly, Federal Rule of Civil Procedure 23(b)(3) provides, "[a] class action may be maintained if Rule 23(a) is satisfied and if: … the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "The matters pertinent to [Rule 23(b)(3)] include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.*

Rule 23(e) regarding class action settlements, discussed below (*see* Section II.B), "was designed to function as an **additional requirement** [to Rule 23(a)–(b)], not a superseding direction … Subdivisions (a) and (b) focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives. **That dominant concern persists when settlement, rather than trial, is proposed.**" *Amchem Prod., Inc.*, 521 U.S. at 621 (internal citation omitted) (emphasis added). Additionally, the terms of the proposed settlements are relevant to class certification. *Id.* at 619. For example, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial. But other specifications of the Rule—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context. Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.* at 620; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("[W]e must pay 'undiluted, even heightened, attention' to class certification requirements in a settlement context."). Thus, in deciding Plaintiffs' Motion for Preliminary Approval, the Court must first address whether Plaintiffs have met the prerequisites for class certification under Rule 23(a)–(b). The Court addresses each requirement in turn.

### 1.     Rule 23(a)

"Our threshold task is to ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Hanlon*, 150 F.3d at 1019. "At the class certification stage, a court 'is required to examine the merits of an underlying claim … only inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims.'" *Arredondo v. Univ. of La Verne*, 341 F.R.D.

47, 51 (C.D. Cal. 2022) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011)).

For the reasons set forth below, the Court finds that the proposed Settlement Class of "students at USD who paid tuition, the Student Wellness fee and/or course fees to USD, or who were credited with having paid such tuition and/or Mandatory Fees to USD for the Spring 2020 term/semester" satisfies the requirements of Rule 23(a). (Doc. 228 at 7.) *See e.g., In re Univ. of S. Cal. Tuition & Fees COVID-19 Refund Litig.*, 695 F. Supp. 3d 1128, 1154–1162 (C.D. Cal. 2023) (certifying contested class of more than 40,000 "students who paid or were obligated to pay tuition, fees, or other costs to [t]he University of Southern California for the Spring 2020 academic term."); *Arredondo*, 341 F.R.D. at 50–55 (certifying contested class of approximately 2,787 undergraduate students that were enrolled at University of La Verne during the spring 2020 semester).

### a) Numerosity

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" *Hanlon*, 150 F.3d at 1019 (quoting Fed. R. Civ. P. 23(a)(1)). Plaintiffs assert that the proposed Settlement Class size is approximately 7,323. (*See* Doc. 228 at 11–13; *see id.*, Ex. 6, Table 2.) The Court finds that the proposed class is sufficiently numerous. *See Arredondo*, 341 F.R.D. at 51 (finding that a class size of approximately 2,787 meets the numerosity requirement in a similar COVID tuition case); *In re Pepperdine Univ. Tuition & Fees Covid-19 Refund Litig.*, No. CV 20-4928-DMG (KSx), 2023 WL 6373845, at *8 (C.D. Cal. Sept. 26, 2023) ("The proposed class contains more than 7,000 class members. There is no dispute that numerosity is satisfied.") (internal citation omitted).

### b) Commonality

Commonality is "the rule requiring a plaintiff to show that 'there are questions of law or fact common to the class.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (citing Fed. R. Civ. P. 23(a)(2)). "Commonality [also] requires the plaintiff to demonstrate that the class members 'have suffered the same injury[.]'" *Id.* at 349–50

(quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3)." *Hanlon*, 150 F.3d at 1019.

Here, the Court agrees that Plaintiffs and the prospective class members share a common claim—that they signed up and paid for in-person classes but only received in-person classes for half of the Spring 2020 semester—as well as common questions of fact and law—e.g., whether students were entitled to receive access to in-person, campus-based educational services when they paid main campus tuition and fees. (*See* Doc. 228 at 13–14.) The Court also finds that the prospective class members have suffered the same economic injury—the overpayment of tuition. Therefore, the commonality requirement has been met. *See Arredondo*, 341 F.R.D. at 51 (identifying "several common questions that are capable of 'a common answer' across the class" in a similar COVID-19 tuition refund case) (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 352).

### c) Typicality

Typicality requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The purpose of this requirement "'is to assure that the interest[s] of the named representative[s] align[] with the interests of the class.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992)). "'The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (quoting same). Typicality is a "permissive standard" and requires only that the representative's claims be "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Here, the Court agrees with Plaintiffs' argument that their claims are typical of the Settlement Class's claims because, among other things, the "[t]he implied-in-fact promise of in-person education is the same for both Plaintiffs and the Class[,]" "Plaintiffs' claimed

14

breach is the same as the Settlement Class's claimed breach[,]" and Plaintiffs' claimed damages are the same as the Settlement Class's claimed damages. (*See* Doc. 228 at 14–16.) As the district court in *In re University of Southern California Tuition and Fees Covid-19 Refund Litigation* explained, "there is no question that each USC student, and each person in the United States, experienced the spring of 2020 in a different way. That does not make their claim for a tuition refund atypical of the rest of the class. They paid the same tuition and were subject to the same policies as the rest of the Proposed Class." 695 F. Supp. 3d at 1160. Therefore, the Court finds that Plaintiffs have satisfied the typicality requirement. *See Arredondo*, 341 F.R.D. at 52 (finding "the harm, or lack thereof, caused by restricting use of on-campus services is typical to the entire class" in a similar COVID-19 tuition refund case).

### d) Adequacy

"The named Plaintiffs must fairly and adequately protect the interests of the class." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(a)(4)). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Id.* (quoting *Hanlon*, 150 F.3d at 1020).

Here, the Court agrees that both the Named Plaintiffs and their counsel have demonstrated a commitment to pursuing this class action litigation. (*See* Doc. 228 at 16–19.) Specifically, the Court finds that Plaintiffs' counsel has decades of experience prosecuting class actions, including similar tuition and fee refund actions, and Plaintiffs' counsel has demonstrated their commitment to this action by filing extensive briefing. (*Id.* at 16–18.) Plaintiffs correctly note that Plaintiffs' counsel has been appointed and recognized as class counsel in other COVID-19 tuition and fee refund actions. (*Id.* at 17.) *See e.g., Arredondo*, 341 F.R.D. at 54. The Court also agrees that the Named Plaintiffs' interests align with those of the proposed class members and that each Named Plaintiff has

demonstrated their commitment to this class litigation by preparing and appearing for depositions and settlement conferences. (Doc. 228 at 18–19.) Therefore, the Court finds that the adequacy requirement has been met. *See Arredondo*, 341 F.R.D. at 52–53 ("[The plaintiff] has already represented her willingness to vigorously prosecute the action because she has sat for a deposition and worked with class counsel. … [C]lass counsel is experienced and has decades of experience prosecuting class actions. … [The plaintiff] has no conflicts with other class members. The Court accepts these representations as true given the evidence supporting them. Thus, the proposed class satisfies the adequacy requirement.").

### 2. Rule 23 (b)(3)

As set forth above, Federal Rule of Civil Procedure 23(b)(3) requires [1] that "questions of law or fact common to class members predominate over any questions affecting only individual members, and [2] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The Court addresses each issue below.

### a) Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. "This calls upon courts to give careful scrutiny to the relation between common and individual questions in a case. An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012)). "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Id.* (quoting same). "When 'one or more of the central issues in the action are common to

16

the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* at 453–454 (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–124 (3d ed. 2005)).

As part of the predominance inquiry, "plaintiffs must show that 'damages are capable of measurement on a classwide basis,' in the sense that the whole class suffered damages traceable to the same injurious course of conduct underlying the plaintiffs' legal theory." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017). "The presence of individualized damages calculations, however, does not defeat predominance." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136 (9th Cir. 2016) (citing *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 513–14 (9th Cir. 2013)). Thus, "'Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a).'" *Just Film, Inc.*, 847 F.3d at 1120 (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)).

As set forth above (*see* Section II.A.1.b (discussing the commonality requirement of Rule 23(a))), the Court finds that the class members share common claims and common questions of fact and law and that the class members have suffered the same economic injury. Additionally, the Court finds that these common issues require common proof, e.g., the same documents and representations by Defendants, and are more prevalent and important than any individual issues that could arise. Finally, the Court finds that Plaintiffs demonstrated that damages can be calculated on a class-wide basis. In fact, the Settlement Agreement accounts for the amount of tuition and fees paid by each individual student. It provides:

> Allocation. The Settlement Claims Administrator shall prepare calculations to be approved by the Parties, and the Net Settlement Fund shall be distributed proportionately to all Class Members based on the following terms and criteria:
>
> > Students who enrolled for online only classes at the beginning of the Spring 2020 Semester, who paid no tuition or fees, or who left USD

17

prior to March 16, 2020, are not eligible to collect any proceeds.

The remainder of the Net Settlement Fund shall be allocated to Class Members on a prorated basis based on a percentage of tuition and fees paid to USD during the Spring 2020 Semester, taking into account any USD funded amounts that did not require repayment.

(Settlement Agreement § 3.5.1 (emphasis added).) Therefore, the predominance requirement has been met.

### b) Superiority

The superiority inquiry "involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023. "In determining superiority of a class action to individual litigation, courts consider the interests of the individual members in controlling their own litigation, the desirability of concentrating the litigation in the particular forum, and the manageability of the class action." *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999) (citing Fed. R. Civ. P. 23(b)(3) and *Amchem Prod., Inc.*, 521 U.S. at 615). "The purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quotation omitted). "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Id.*

Here, the Court agrees with Plaintiffs that litigating this case in a single class action will save time, effort, and expense, and allow for a uniform decision across the class. Additionally, the Court agrees that, without this representative class action, it is unlikely that the class members would be able to seek relief. The Court finds that "recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis[.]" *Wolin*, 617 F.3d at 1175 (quotation omitted). Therefore, the superiority requirement is met.

18

**B.    Preliminary Approval—Federal Rule of Civil Procedure 23(e)**

Federal Rule of Civil Procedure 23(e) provides, "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." There is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned[.]" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)).

**1.    Rule 23(e)(2)**

"If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is **fair, reasonable, and adequate** after considering whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2) (emphasis added).[8]  Courts may also consider:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

---

[8] Federal Rule of Civil Procedure 23(e)(3) states, "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal."

19

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.2004)).[9] For the reasons set forth below, the Court finds that the aforementioned factors weigh in favor of preliminarily approving the Settlement Agreement.

First, Class Counsel and the Class Representatives have adequately represented the Class throughout this litigation and in settlement negotiations. *See* Fed. R. Civ. P. 23(e)(2)(A)–(B) (requiring courts to consider "the class representatives and class counsel have adequately represented the class" and that "the proposal was negotiated at arm's length"); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 946 (allowing courts to consider "the experience and views of counsel"). Plaintiffs' counsel has experience prosecuting class actions, including similar tuition and fee refund actions, and has demonstrated their commitment to this action by litigating this matter through the close of discovery and filing extensive pre-trial motions. The Named Plaintiffs have similarly demonstrated their commitment to this class litigation by preparing and appearing for depositions and settlement conferences. Additionally, the Court is persuaded that Class Counsel negotiated the Settlement Agreement as arm's length. The Settlement Agreement's provision for attorneys' fees is not disproportionate to the Class award, and any uncashed or unclaimed funds shall be distributed to scholarship and financial aid funds. *C.f. In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 947 ("[T]he settlement's provision for attorneys' fees is apparently disproportionate to the class reward, which includes **no** monetary distribution[.]").

Second, the relief provided to the class is adequate. *See* Fed. R. Civ. P. 23(e)(2)(C)(i)–(iv) (requiring courts to consider whether "the relief provided for the class is adequate"); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 946 (allowing courts to consider "the strength of the plaintiff's case;" "the risk, expense, complexity, and likely

---

[9] Plaintiffs refer to these factors as the *Churchill* factors, and the Court will do the same.

duration of further litigation;" "the risk of maintaining class action status throughout the trial;" and "the amount offered in settlement[.]"). The Settlement Agreement states that "[t]he sum of all calculated amounts is expected to be $750,000, after payment of Attorneys' Fees and Costs, Service Award, and costs of the Settlement Claims Administrator." Considering the unlikelihood that class members would otherwise obtain relief, particularly given the risks, costs, and uncertainties of litigation, a sum of $750,000 is adequate.[10]

Finally, the Settlement Agreement treats each member of the class equitably. *See* Fed. R. Civ. P. 23(e)(2)(D) (requiring courts to consider whether the "proposal treats class members equitably relative to each other"). The Settlement Agreement accounts for the amount of tuition and fees paid by each individual student. It provides that "the Net Settlement Fund shall be allocated to Class Members on a **prorated basis based on a percentage of tuition and fees paid** to USD during the Spring 2020 Semester, taking into account any USD funded amounts that did not require repayment." (Settlement Agreement § 3.5.1 (emphasis added).) In other words, each class member's payment is based on the amount of tuition he or she paid in tuition and fees. The Court finds this equitable.

Based on the foregoing analysis of the relevant factors, and evaluating the Settlement Agreement as a whole, the Court preliminarily finds that the Settlement Agreement is fair, reasonable, and adequate. *Ruch v. AM Retail Grp., Inc.*, No. 14-cv-05352-MEJ, 2016 WL 1161453, at *7 (N.D. Cal. Mar. 24, 2016) ("'[I]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'") (quoting *Hanlon*, 150 F.3d at 1026).

_____

[10] As set forth above (*see* Section I.C.2), by the Court's calculations, the total is expected to be $745,000, not $750,000. Whether the total recovery is $750,000 or $745,000, the Court finds the class members' recovery adequate.

21

### 2. Rule 23(e)(1)

Federal Rule of Civil Procedure 23(e)(1) provides: "[t]he following procedures apply to a proposed settlement …:

> (1) Notice to the Class.  (A) … The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.  (B) … The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."

Relatedly, Rule 23(c)(2)(B) provides:

> [U]pon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Having carefully reviewed the terms of the Settlement Agreement, the Court finds that it directs the best notice practicable in a "reasonable manner"—via physical mail or email.  (*See* Settlement Agreement §§ 1.5, 2.2.3, 2.3.5.)  Likewise, having reviewed the Proposed Notice of Class Action Settlement ("Notice") (*see* Tompkins Decl., ¶ 23, Ex. B; Doc. 220-3), the Court finds that it clearly and concisely explains in plain English what this lawsuit is about, why it is a class action, why there is a settlement, who is in the settlement class, and what class members' options are (*see* Doc. 220-3 at 3–6).  For example, the Notice informs potential class members how to "opt out" or "object" to the Settlement.  (*Id.* at 5–6.)  The Notice also explains what rights class members give up if they choose to join the Settlement.  (*Id.* at 6.)

However, the Court also notes that, as with the Settlement Agreement, the Notice must be updated to reflect the class definition set forth in Plaintiffs' Supplemental Briefing. (*See id.* at 2, WHY DID I GET THIS NOTICE?, ¶ 2; *id.* at 4, WHO IS IN THE SETTLEMENT CLASS?.) Additionally, the Court notes that there is a grammatical error at the beginning of the notice. (*See id.* at 2 ("**If you are an enrolled students at USD who paid** ….") (emphasis in original).) As written, the language wrongly implies that class members must currently be enrolled at USD.

### III.   <u>CONCLUSION</u>

In accordance with the Court's guidance above, the Court **<u>ORDERS</u>** Plaintiffs to submit revised versions of the proposed Settlement Agreement and the proposed Notice **<u>on or before November 15, 2024</u>**.  The revised documents must incorporate the class definition set forth in Plaintiffs' Supplemental Briefing and address any issues identified by the Court above.

Subject to Plaintiffs' compliant re-submission of the proposed Settlement Agreement and the proposed Notice, the Court **<u>PRELIMINARILY APPROVES</u>** the Settlement Agreement, including the exhibits attached thereto.  The Court also **<u>APPOINTS</u>** the Plaintiffs as the class representatives; **<u>APPOINTS</u>** Plaintiffs' counsel— Leeds Brown Law, P.C.; The Sultzer Law Group, P.C.; The Golan Firm PLLC; Shegerian & Associates, Inc.; and Francis Mailman Soumilas, P.C.—as class counsel; and **<u>APPROVES</u>** the notice plan and forms of notice.

The Parties and the Settlement Claims Administrator shall comply with all the dates and deadlines set forth in the proposed Settlement Agreement, including the following:

1.     Pursuant to the terms of the proposed Settlement Agreement, "**<u>[w]ithin ten (10) days of [the Court's approval of the revised Settlement Agreement and Notice]</u>**, Defendant shall provide the Settlement Claims Administrator and Class Counsel with the Class List to allow for the distribution of Notice in the manner described in [the proposed Settlement Agreement], including via email and physical mailing, as necessary." (Settlement Agreement § 2.3.1 (emphasis added).)

2.     "Within **fourteen (14) days** after receipt of the Class List … the Settlement Claims Administrator shall (l) email a copy of the Notice to all Class Members for whom the Settlement Claims Administrator has a valid email address, then (2) shall wait seven days for emails to be unopened or returned, and then (3) mail a copy of the Notice and Election Form to all Class Members for whom the Settlement Claims Administrator does not have a valid email address or an unopened email through regular U.S. Mail to such students' last known mailing address as listed in USD's records (or as otherwise updated)." (Settlement Agreement § 2.3.2 (emphasis added).)

3.     "The **Notice Response Deadline** for Election Forms shall be (i) **thirty (30) days** from the date of the initial mailing … and (ii) an additional **fifteen (15) days** later for any Class Members who were unable to file a timely Election Form, due to factors such as change of address, military service, hospitalization, or other extraordinary circumstances." (Settlement Agreement § 2.3.4 (emphasis added).)

4.     "**On the same date** as initial mailing and/or e-mailing of Notices, notice shall also be provided on a website at an available settlement URL including https://www.USDTuitionFeeSettlement.com/, which shall be obtained, administered, and maintained by the Settlement Claims Administrator."  (Settlement Agreement § 2.3.5 (emphasis added).)

5.     "No later than **thirty (30) days** after the Notice Response Deadline, the Settlement Claims Administrator shall certify jointly to Class Counsel and Defendant's Counsel: (a) a list of all Class Members, (b) a list of all Objectors, (c) a list of all Class Members who timely submitted an Opt-out Statement, and (d) an estimated calculation of the Settlement Proceeds to Class Members in accordance with [the terms of the Settlement Agreement]."  (Settlement Agreement § 2.6.2 (emphasis added).)

6.     "No later than **thirty (30) days** after the Notice Response Deadline, or in accordance with any orders set by the Court, Plaintiff shall move for Final Approval of the Settlement, including dismissal of the claims with prejudice and approval of all procedures

3:20-cv-01946-RBM-VET

for effectuating the terms of the settlement." (Settlement Agreement § 2.7.1 (emphasis added).)

       7.     The Court will hold a **Final Approval Hearing on March 3, 2025 at 9 a.m.**.

       8.     "Within **15 days** after Final Approval Order from the Court, the Settlement Claims Administrator shall finalize calculations for allocation of the Settlement proceeds and provide a version to the Parties." (Settlement Agreement § 2.7.2 (emphasis added).)

      **IT IS SO ORDERED.**

DATE: November 7, 2024

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HALEY MARTINEZ, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF SAN DIEGO,<br><br>Defendant. | Case No.: 3:20-cv-01946-RBM-VET<br><br>**ORDER CONFIRMING RECEIPT OF REVISED DOCUMENTS AND GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND NOTICE PLAN**<br><br>**[Docs. 220, 231, 232, 233]** |

In its November 7, 2024 Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Notice Plan ("November 7, 2024 Order"), the Court ordered "Plaintiffs to submit revised versions of the proposed Settlement Agreement and the proposed Notice" incorporating the agreed-upon class definition and addressing issues identified by the Court. (Doc. 231 at 23.) Subject to Plaintiffs' compliant re-submission of the proposed Settlement Agreement and the proposed Notice, the Court preliminarily approved the Settlement Agreement, including the exhibits attached thereto; the notice plan; and the forms of notice. (*Id.*)

1

On November 15, 2024, Plaintiffs filed revised versions of the proposed Settlement Agreement and the proposed Notice. (*See* Docs. 232 ["Settlement Agreement"], 233.) The Court finds that the revised documents comply with the Court's November 7, 2024 Order. Accordingly, the Court **PRELIMINARILY APPROVES**, without conditions, the class action settlement and notice plans.

The Parties and the Settlement Claims Administrator shall comply with all the dates and deadlines set forth in the proposed Settlement Agreement, including the following:

1.  Pursuant to the terms of the proposed Settlement Agreement, "**[w]ithin ten (10) days of [this Order]**, Defendant shall provide the Settlement Claims Administrator and Class Counsel with the Class List to allow for the distribution of Notice in the manner described in [the Settlement Agreement], including via email and physical mailing, as necessary." (Settlement Agreement § 2.3.1 (emphasis added).)

2.  "Within **fourteen (14) days** after receipt of the Class List … the Settlement Claims Administrator shall (l) email a copy of the Notice to all Class Members for whom the Settlement Claims Administrator has a valid email address, then (2) shall wait seven days for emails to be unopened or returned, and then (3) mail a copy of the Notice and Election Form to all Class Members for whom the Settlement Claims Administrator does not have a valid email address or an unopened email through regular U.S. Mail to such students' last known mailing address as listed in USD's records (or as otherwise updated)." (Settlement Agreement § 2.3.2 (emphasis added).)

3.  "The **Notice Response Deadline** for Election Forms shall be (i) **thirty (30) days** from the date of the initial mailing … and (ii) an additional **fifteen (15) days** later for any Class Members who were unable to file a timely Election Form, due to factors such as change of address, military service, hospitalization, or other extraordinary circumstances." (Settlement Agreement § 2.3.4 (emphasis added).)

4.  "**On the same date** as initial mailing and/or e-mailing of Notices, notice shall also be provided on a website at an available settlement URL including https://www.USDTuitionFeeSettlement.com/, which shall be obtained, administered, and

2

maintained by the Settlement Claims Administrator." (Settlement Agreement § 2.3.5 (emphasis added).)

5. "No later than **thirty (30) days** after the Notice Response Deadline, the Settlement Claims Administrator shall certify jointly to Class Counsel and Defendant's Counsel: (a) a list of all Class Members, (b) a list of all Objectors, (c) a list of all Class Members who timely submitted an Opt-out Statement, and (d) an estimated calculation of the Settlement Proceeds to Class Members in accordance with [the terms of the revised proposed Settlement Agreement]." (Settlement Agreement § 2.6.1 (emphasis added).)

6. "No later than **thirty (30) days** after the Notice Response Deadline, or in accordance with any orders set by the Court, Plaintiff shall move for Final Approval of the Settlement, including dismissal of the claims with prejudice and approval of all procedures for effectuating the terms of the settlement." (Settlement Agreement § 2.7.1 (emphasis added).)

7. The Court will hold a **Final Approval Hearing on March 3, 2025 at 9 a.m.**.

8. "Within **15 days** after Final Approval Order from the Court, the Settlement Claims Administrator shall finalize calculations for allocation of the Settlement proceeds and provide a version to the Parties." (Settlement Agreement § 2.7.2 (emphasis added).)

**IT IS SO ORDERED.**

DATE: November 15, 2024

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

3