1
2
3
4
5
6               **UNITED STATES DISTRICT COURT**

7              **SOUTHERN DISTRICT OF CALIFORNIA**

8
9  HALEY MARTINEZ, et al.,                    Case No.:  3:20-cv-01946-RBM-VET

10                          Plaintiffs,        **ORDER:**

11  v.
                                              **(1) GRANTING PLAINTIFFS'**
12  UNIVERSITY OF SAN DIEGO,                   **MOTION FOR FINAL APPROVAL**
                            Defendant.         **OF THE CLASS ACTION**
13                                             **SETTLEMENT (Doc. 240)**

14
15                                             **(2) GRANTING IN PART**
                                              **PLAINTIFFS' MOTION FOR AN**
16                                             **AWARD OF ATTORNEY'S FEES**
                                              **AND REIMBURSEMENT OF**
17                                             **EXPENSES TO CLASS COUNSEL**
                                              **AND SERVICE AWARDS TO THE**
18                                             **CLASS REPRESENTATIVES**
                                              **(Doc. 241)**
19
20
21          Pending before the Court are Plaintiffs[1] Edgar Chavarria, Catherine Holden, and

22  Matthew Sheridan's (collectively, the "Plaintiffs") Motion for Final Approval of the Class

23  Action Settlement ("Final Approval Motion") and Motion for an Award of Attorney's Fees

24  and Reimbursement of Expenses to Class Counsel and Service Awards to the Class

25  Representatives ("Fees Motion").  (Docs. 240, 241.)  On March 3, 2025, the Court held a

26
27  ─────────────────────────

28  [1] Haley Martinez was dismissed as a named plaintiff on April 13, 2023.  (Doc. 113.)

Final Approval Hearing pursuant to Federal Rule of Civil Procedure 23.  No other parties or Class Members appeared at the noticed hearing.  For the reasons set forth below, Plaintiffs' Final Approval Motion (Doc. 240) and Fees Motion (Doc. 241) are **GRANTED**.

## I.    **BACKGROUND**

This case involves breach of contract and unjust enrichment claims against Defendant University of San Diego ("Defendant" or "USD") brought by students arising from Defendant's transition from in-person instruction to a virtual environment during a portion of the Spring 2020 semester due to the COVID-19 pandemic.  After initially filing separate class complaints, Plaintiffs filed a Consolidated Class Action Complaint against Defendant on April 28, 2021 ("Consolidated Complaint").  (Doc. 30.)  In the Consolidated Complaint, Plaintiffs assert claims on behalf of themselves and similar situated students for: (1) breach of contract; (2) unjust enrichment; (3) conversion; (4) violation of California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750–1785, ("CLRA"); and (5) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, ("UCL").  (*Id.* ¶¶ 102–156.)

On March 30, 2022, the Court granted in part Defendant's Motion to Dismiss (*see* Doc. 33) but allowed Plaintiffs' breach of contract claim to go forward.  (Doc. 45.)  Thereafter, the Parties engaged in discovery and litigated several discovery disputes.  (Doc. 240 at 9.)  The Parties participated in an Early Neutral Evaluation Conference on August 22, 2022 (*see* Doc. 56) and a Mandatory Settlement Conference on March 10, 2023 (Doc. 106) with Magistrate Judge William V. Gallo.  On March 28, 2023, Plaintiffs filed a Motion for Class Certification.  (Doc. 108).  Defendant and Plaintiffs then moved for summary judgment on May 26, 2023 and June 9, 2023, respectively.  (Docs. 151, 172.)  The Parties also conducted several pre-trial submissions.  (*See* Docs. 177, 180, 198.)  On January 8, 2024, this action was transferred to the undersigned for further proceedings.  (Doc. 205.)

On May 16, 2024, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement and Notice Plan.  (Doc. 220.)  In its Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Notice Plan ("Preliminary Approval

Order"), the Court preliminarily approved the proposed settlement agreement and class notice subject to Plaintiffs' re-submission of both documents addressing issues identified by the Court.  (Doc. 231 at 23.)   The Court also appointed Plaintiffs as Class Representatives and Plaintiffs' counsel—Leeds Brown Law, P.C.; The Sultzer Law Group, P.C.; The Golan Firm PLLC; Shegerian & Associates, Inc.; and Francis Mailman Soumilas, P.C. ("FMC")—as class counsel ("Class Counsel").  (*Id*.)

After Plaintiffs submitted their revised Settlement Agreement ("Settlement Agreement" or "Settlement") (Doc. 232 ["Settlement Agreement"]) and the proposed notice form ("Class Notice") (Doc. 233 ["Class Notice"]), this Court confirmed its preliminarily approval of the Settlement in its Order Confirming Receipt of Revised Documents and Granting Plaintiffs' Motion For Preliminary Approval of Class Action Settlement and Notice Plan ("November 15 Order").  (Doc. 234.)  As part of the November 15 Order, the Court further ordered that the Class Notice be distributed according to the Parties' proposed notice plan.  (*Id*. at 2–3.)[2]

## II.  **TERMS OF THE SETTLEMENT**

The primary terms of the Settlement Agreement executed by Plaintiffs, on behalf of themselves and similarly situated students, and Defendant are as follows.  (*See* Doc. 232.)

### A.  **Proposed Settlement Class**

The Settlement Agreement proposes to settle all claims based on the facts alleged in the Consolidated Complaint on behalf of a class of individuals defined as:

> All enrolled students at USD who paid tuition, the Student Wellness fee and/or course fees to USD, or who were credited with having paid such tuition and/or Mandatory Fees to USD for the Spring 2020 term/semester, subject to the seven exclusions set forth below.

("Settlement Class" or "Class Members").  (Settlement Agreement [Doc. 232] § 1.29.)  The Settlement Class excludes the following seven categories of individuals:

---

[2] The Court refers to the Preliminary Approval Order and the November 15 Order concurrently throughout this Order.  (*See* Doc. 231, *as amended by* Doc. 234.)

3:20-cv-01946-RBM-VET

Those seven categories of individuals are excluded from the Settlement Class definition: (1) students who enrolled in online-only classes at the beginning of the Spring 2020 semester, (2) students who paid no tuition or fees (i.e., students who received more in scholarships or grants from USD than what was charges in tuition and/or Mandatory Fees), (3) students who left or withdrew from USD prior to March 16, 2020, (4) any District Judge or Magistrate Judge presiding over this Action and members of their families, (5) the defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have controlling interest and their current or former officers, directors, agents, attorneys, and employees; (6) persons who properly execute and file a timely request for exclusion; and (7) the legal representatives, successors or assigns of any such excluded person.

(*Id*.)    After applying these exceptions, Apex Class Action, LLC (the "Settlement Administrator") determined that the Settlement Class consists of 8,198 individuals.  (Doc. 240-5, Declaration of Ryan McNamee ("McNamee Decl.") ¶ 5.)

**B.    Settlement Amounts**

Under the Settlement Agreement, Defendant agreed to pay a maximum gross settlement totaling $1,400,000 (the "Settlement Amount" or "Gross Settlement Amount"). (Settlement Agreement [Doc. 232] §§ 3.1, 3.1.3.)  Defendants will fund the Settlement Amount into a common fund, established and controlled by the Settlement Administrator ("Qualified Settlement Fund").  (Settlement Agreement [Doc. 232] §§ 1.23, 3.1.1.)

The Settlement Amount will be used to pay: (a) any attorneys' fees, costs, and expenses approved by the Court; (b) any class representative service awards approved by the Court; and (c) all costs associated with the settlement claims administration.  (*Id*. at § 3.1.)  Pursuant to the Settlement Agreement and the Class Notice, Class Counsel seek no more than $275,000 in attorneys' fees and $300,000 in litigation expenses to be paid from the Qualified Settlement Fund.  (*Id*. § 3.3.1; Class Notice [Doc. 233] at 5.)  Plaintiffs also request $15,000 in service awards.  (*Id*. § 3.4.1.)  Finally, Plaintiffs request disbursement of $37,159 to the Settlement Administrator for its fees and costs in administering this Settlement.  (Doc. 240-2 ¶ 14A.)

The remaining balance (the "Net Settlement Fund") will be distributed to Class Members by the Settlement Administrator according to the plan of allocation. (*Id.* § 3.5.1.III.) The Parties anticipate the Net Settlement Fund being approximately $766,211.75, with an estimated $93.46 for each Class Member ("Individual Settlement Amount"). (McNamee Decl. [Doc. 240-5] ¶¶ 16–17.)

Class Members will receive a prorated share of the Net Settlement Fund based on "a percentage of tuition and fees paid to Defendant during the Spring 2020 Semester, taking into account any USD funded amounts that did not require repayment." (Settlement Agreement [Doc. 232] § 3.5.1.III.) None of the Settlement Amount will revert to Defendant, and any balance remaining 270 days after the initial distribution will be distributed to "USD's general scholarship and hardship financial aid funds." (*Id.* § 3.1.2.)

## C.    Release

Under the Settlement Agreement, Class Members who do not opt out will be deemed to have released Defendant from all Released Claims. (Settlement Agreement [Doc. 232] § 3.6.) The Released Claims are defined as follows:

> Except as provided in this Agreement, upon payment of all Costs and Fees as approved by the Court, Class Counsel, on behalf of the Class Members, irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against the Released Parties for attorneys' fees, expenses, disbursements and all other costs and fees associated with Class Counsel's representation of the Class. Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees, expenses, disbursements and all other costs and fees associated with Class Counsel's representation in the Action.

(*Id.* § 3.6.2.)

## D.    Notice Process, Opt-Outs, and Objections

The Preliminary Approval Order established a process for Class Notice distribution. (Doc. 231, *as amended by* Doc. 234.) Defendant's counsel provided the Settlement Administrator with a data file containing Class Members' names, last known mailing addresses, and personal emails (if available). (McNamee Decl. [Doc. 240-5] ¶ 5.) After

5

reviewing the data file for inconsistencies and duplicates, the Settlement Administrator determined the Settlement Class consists of 8,198 individuals. (*Id.*)

In accordance with the Court-approved notice plan, the Settlement Administrator distributed the Class Notice to Settlement Class Members through two types of direct notice, email and/or first-class mail, and indirect notice via the Settlement Website, www.USDTuitionFeeSettlement.com. (*See* Doc. 240 at 27.) The Settlement Administrator sent the Class Notice through e-mail to 6,961 Class Members and via U.S. first class mail to 2,599 Class Members. (McNamee Decl. [Doc. 240-5] ¶¶ 6–7.) After 166 Class Notice mailings were returned as undeliverable, the Settlement Administrator conducted a computerized skip trace to obtain updated addresses. (*Id.* ¶ 8.) As a result of this effort, Class Notice was re-sent to 131 updated addresses via U.S. first class mail. (*Id.*)

Class Members were then able to choose a payment method by submitting an Election Form. (Doc. 240 at 10–11.) Class Members had until January 22, 2025 to submit objections, Election Forms, and/or requests for exclusion. (McNamee Decl. [Doc. 240-5] ¶¶ 12–14.) As of February 10, 2025, only 32 of Class Notices were undeliverable, 777 individuals submitted an Election Form, no individuals requested exclusion, only one individual filed an objection, and there were 3,756 unique visits to the Settlement Website. (*Id.* ¶¶ 10–14.) As funds will be distributed automatically to Class Members without need for further action, a claims process was not required. (Doc. 240 at 27–28.)

**E.    Objections to the Settlement**

On January 3, 2025, class member Eric Bodman filed a Statement of Objections. (Doc. 237.) Mr. Bodman was enrolled as a graduate student at USD in Spring 2020. (*Id.* at 1.) He asserts the Settlement "is not fair, reasonable, or adequate" considering the harm suffered by the Settlement Class. (*Id.* ¶ 1.) Specifically, Mr. Bodman argues that the Settlement Amount is inadequate because Class Members incurred costs exceeding the estimated payment per Class Member and the Settlement Class's harm extends beyond the Spring 2020 semester. (*Id.* ¶¶ 1–2.) He also challenges the adequacy of Class Counsel in representing the Settlement Class's best interests. (*Id.* ¶ 4.)

### III.    **LEGAL STANDARD**

A class action may not be settled without court approval, "which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(e)(2)) ("*Bluetooth*").  The Ninth Circuit has a "strong judicial policy" in support of class action settlements. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  However, when presented with a motion for final approval, "judges have the responsibility of ensuring fairness to all members of the class . . . ." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

### IV.    **MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

**A.    Class Certification**

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–22 (9th Cir. 1998).  In its Preliminary Approval Order, the Court found that Plaintiffs satisfied the prerequisites for class certification under Rule 23. (*See* Doc. 231 at 11–18, *as amended by* Doc. 234 at 2.)  The Court also found adequate, and thus appointed, Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel. (*See id*. at 15–16, 23.)

The Court has considered these factors again, along with the objection, and finds no reason to depart from its previous conclusions for conditionally certifying the Settlement Class and appointing Class Representatives and Class Counsel.[3]  The Court reaffirms and incorporates its Rule 23 analysis as set forth in its Preliminary Approval Order. (*See id*.)

---

[3] While Mr. Bodman appears to challenge the adequacy of Class Counsel's representation, (*see* Doc. 237 at 2), the Court considers this issue in connection with Rule 23(e)(2). *See In re BofI Holding, Inc. Sec. Litig.*, No. 3:15-CV-02324-GPC-KSC, 2022 WL 9497235, at *4 (S.D. Cal. Oct. 14, 2022) ("The adequacy inquiry is 'redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively.'") (citation omitted).

7

**B.    Adequacy of Notice**

Next, the Court must determine whether the Class received adequate notice.  *See* Fed. R. Civ. P. 23(e)(1).  "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

In support of their Final Approval Motion, Plaintiffs filed a declaration by Ryan McNamee, a case manager for Settlement Administrator Apex.  (McNamee Decl. [Doc. 240-5] ¶ 1.)  McNamee recounts the Settlement Administrator's actions to provide notice to Class Members in accordance with the Preliminary Approval Order.  (*See* McNamee Decl. [Doc. 240-5] ¶¶ 3–14 (detailing the notice process from emails to physical mailings, website creation, and skip traces for undeliverable emails).)

Having reviewed McNamee's declaration, the Court finds that Class Notice was executed in accordance with its Preliminary Approval Order, satisfies due process, and was reasonably directed to Class Members.  *Silber v. Mabon*, 18 F.3d 1449, 1452–54 (9th Cir. 1994) (quoting *In re Victor Techs. Sec. Litig.*, 792 F.2d 862, 865 (9th Cir. 1986)) (holding the "best notice practicable" requirement is satisfied by "what notice is reasonably certain to inform the absent members of the plaintiff class"); *see also* Fed. R. Civ. P. 23(c)(2)(B).

**C.    Fairness of the Settlement**

In its Preliminary Approval Order, the Court made an initial fairness determination under Rule 23(e)(2) and found all the pertinent factors weighed in favor of approving the Settlement.  (*See* Doc. 231 at 19–21.)  Because no pertinent facts have changed, the Court reaffirms and incorporates by reference its prior analysis of the Rule 23(e)(2) factors.

In addition to the Rule 23(e) requirements, district courts in the Ninth Circuit traditionally consider another set of factors to determine whether the Settlement is fair, adequate, and reasonable.  *See Briseño v. Henderson*, 998 F.3d 1014, 1025–26 (9th Cir. 2021) (holding that the revised Rule 23(e) requires courts "to go beyond our precedent" by applying the heightened scrutiny set forth in *Bluetooth* to all class action settlements).  In making this determination, courts consider the following factors:

8

(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Bluetooth*, 654 F.3d at 946 (quoting *Churchill Vill. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)) (the "*Churchill* factors"). "The district court's approval order must show not only that 'it has explored [these] factors comprehensively,' but also that the settlement is 'not . . . the product of collusion among the negotiating parties.'" *Bluetooth*, 654 F.3d at 946–947 (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)).

### 1. The Settlement is Fair, Adequate, and Reasonable.

#### a. Strength of Plaintiffs' Case and Risk of Further Class Action Litigation

"[T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits . . . for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (citation omitted).

While "Plaintiffs believe that they have built a strong case for liability, class certification, and damages," they acknowledge that "significant litigation risks and risks of delay exist, which militate in favor of settlement." (Doc. 240 at 29.) Plaintiffs assert they would face significant hurdles proving liability, establishing damages for the value of services Plaintiffs received, and overcoming Defendant's impossibility defense. (Doc. 240 at 25.) If litigation were to continue, the Parties would continue to dispute Plaintiffs' damages model, calculations, and expert testimony. (*Id*. at 27.)

Balancing the complexity, uncertainty, and delay of continued litigation against the

9

immediacy and certainty of settlement, the Court agrees that Plaintiffs face significant risks if this case proceeded to trial, and that the Settlement achieves a definite result for the Class Members. *See, e.g.*, *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041–42 (N.D. Cal. 2008) (holding the risk of continued litigation weighed in favor of approval of the class action settlement where the plaintiffs "still faced a number of problems proving their case on the merits."). Accordingly, the strength of the Parties' positions, as well as the risk of further litigation, weigh in favor of approving the Settlement.

### b. Amount of the Settlement

"Basic to the process of deciding whether a proposed settlement is fair, reasonable and adequate is the need to compare the terms of the compromise with the likely rewards of litigation." *In re TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 422 (N.D. Cal. 2009) (cleaned up) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 3980 U.S. 414, 424-25 (1968)). "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (citation omitted).

Here, Defendant will pay $1,400,000 into a non-reversionary settlement fund. After the proposed deductions, the Settlement Class is entitled to approximately $766,211.75. (McNamee Decl. [Doc. 240-5] ¶ 16.) Any remaining funds will be distributed to USD's institutional general scholarship and hardship financial aid fund to be used by current USD students. (Doc. 240 at 28.) The Settlement Amount is reasonable when compared with other similar settlements approved by federal courts. (*See* Doc. 240 at 26–27, fn. 2 (citing cases).) *See, e.g.*, *Choi v. Brown Univ.*, Case No. 1:20-cv-00191-JJM-LDA (D.R.I.) (approving $1.5M for more than 9,600 students); *Pfeifer v. Loyola Univ. of Chicago*, No. 1:20-cv-03116 (N.D. Ill. Jan. 23, 2024), (granting approval of a class settlement with a per-student average recovery of $88.14). Moreover, the Settlement confers substantial benefits upon the Settlement Class without the costs, uncertainties, delays, and other risks

3:20-cv-01946-RBM-VET

associated with continued litigation, such as the possibility of an unfavorable or less favorable result at trial or on appeal.

The relief is also adequate under Rule 23(e)(2).  The Settlement Amount is reasonable even after the proposed deductions because the terms of the requested deductions are "reasonable" under applicable Ninth Circuit standards (*see* Sec. V.A.1.) The distribution method confers a substantial benefit to the Settlement Class because the funds will be delivered directly to Class Members without the need for a claims process.

Considering the risks associated with continuing this litigation, the Court finds the amount of the Settlement to be fair, reasonable, adequate, and in favor of approval.

### c.  Extent of Discovery Completed and Stage of the Proceedings

By the time the Settlement was reached, the Parties had litigated this case for over four years, fact discovery was closed, substantial expert discovery was nearing completion, and the Parties were preparing for trial.  (Doc. 240 at 8.)  The Parties engaged in extensive briefing on class certification, discovery motions, summary judgment, and other pre-trial submissions.  (*Id*. ay 15.)  Discovery was substantial:  Defendant produced around 36,000 pages of documents, Plaintiffs produced approximately 1,000 pages of documents, the Parties took over ten depositions (including the deposition of Plaintiffs' expert), and the Parties exchanged expert and rebuttal reports.  (Doc. 240 at 30.)  The duration of this litigation prior to settlement suggests "the parties [had] sufficient information to make an informed decision about settlement*." Linney*, 151 F.3d at 1239.

### d.  Experience and Views of Counsel

The experience and views of counsel also weigh in favor of approving settlement. *See Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-CV-09405-CAS, 2014 WL 439006, at *5 (C.D. Cal. Jan. 30, 2014) ("The recommendations of counsel are given great weight since they are most familiar with the facts of the underlying litigation.").  "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

11

Here, Class Counsel has significant experience in complex commercial and class action matters, including cases involving tuition and fees during COVID-19. (Doc. 240-1, Declaration of Lauren Brennan ("Brennan Decl.") ¶ 38.) The Court is also persuaded that the Settlement was reached after two settlement conferences and months of extensive arm's-length negotiations (*see* Doc. 231 at 20). This factor accordingly favors approval.

### e. Governmental Participant

Because there is no governmental participant in this case, this factor is neutral. *See Allen v. Similasan Corp.*, No. 12-CV-00376-BAS-JLB, 2017 WL 1346404, at *5 (S.D. Cal. Apr. 12, 2017).

### f. Reaction of Class Members

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529. As noted, only one member filed an objection, and no class members asked to be excluded. The low number of objections and lack of opt-outs weigh in favor of approval.

## 2. There is No Evidence of Collusion Between Class Counsel and Defendant

In addition to the *Churchill* factors, the Court must also determine whether the settlement was the result of good faith, arms-length negotiations or fraud and collusion. *See Briseño*, 998 F.3d at 1022–26. Under the revised Rule 23(e), "district courts must [also] apply the *Bluetooth* factors to scrutinize fee arrangements . . . to determine if collusion may have led to class members being shortchanged." *Id*. at 1026. The Ninth Circuit has articulated the following "subtle signs" of collusion, which it refers to as the *Bluetooth* factors: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;" (2) "clear sailing" arrangements; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Bluetooth*, 654 F.3d at 947 (internal quotations and citations omitted).

12

1    Here, there is no evidence of conflicts of interest nor are there "subtle signs" of

2    collusion.    First, the requested attorneys' fees, which constitute 19.6% of the total

3    Settlement Amount, are not disproportionate considering the record, the extensive time

4    spent by Class Counsel on this matter, and the results achieved.  *See Powers v. Eichen*, 229

5    F.3d 1249, 1256 (9th Cir. 2000) ("The typical range of acceptable attorneys' fees in the

6    Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the

7    benchmark.").  The second "subtle sign" of collusion is a "clear sailing" provision where

8    a class action defendant "agrees not to oppose a petition for a fee award up to a specific

9    maximum value."  *Bluetooth*, 654 F.3d at 940, n.6.  While the Settlement Agreement states

10   that Counsel will petition the Court for a fee award up to a specified maximum (*see*

11   Settlement Agreement [Doc. 232] § 3.3.1), Defendant did not agree that a specific amount

12   of fees should be awarded and did not agree that it would not oppose Counsel's request for

13   attorneys' fees.  *See, e.g.*, *Miguel-Sanchez v. Mesa Packing, LLC*, No. 20-CV-00823-VKD,

14   2021 WL 4893394, at *8 (N.D. Cal. Oct. 20, 2021) (finding clear sailing provision was not

15   present where the parties agreed that a request for attorneys' fees would not exceed a

16   specific amount).  Finally, the third sign is also absent, as no portion of the settlement fund

17   will revert to Defendant.  (*See* Doc. 240 at 24.)

18   As such, the absence of collusion from the record also supports approval of the

19   proposed settlement.  While the Court finds this factor also weighs in favor of approval, it

20   nonetheless scrutinizes the requests for attorneys' fees and incentive awards below to

21   ensure Class Members' interests are protected under the Settlement.

22   **3.    Bodman's Objections to the Settlement's Fairness are Overruled.**

23   An objector to a proposed settlement agreement bears the burden of proving any

24   assertions challenging the reasonableness of a class action settlement.  *United States v.*

25   *Oregon*, 913 F.2d 576, 581 (9th Cir. 1990).  Where the Court is satisfied that the negotiated

26   settlement is the product of "good faith, arms-length negotiation," it is "presumptively

27   valid," and the objector must meet "a heavy burden" of showing it is "unreasonable."  *Id.*

28

13

Eric Bodman argues that the Settlement "is not fair, reasonable, or adequate" because the Settlement Amount is "obscenely inadequate," and Class Counsel did not adequately protect the interests of the class. (Doc. 237 ¶ 1.)  The Parties argue that his objection should be overruled because it "misunderstands the risks and law as well as the substantial time, energy, and effort that went into obtaining the Settlement." (Doc. 240 at 31.)  If the Court overrules his objection, Plaintiffs request that Mr. Bodman "be given 14 days . . . to opt out or else be subject to the release and benefits afforded all Class Members." (*Id.* at 31–32.)

### a. Objection to the Settlement Amount

First, Mr. Bodman objects that the Settlement Amount does not compensate him adequately because his tuition for the Spring 2020 semester ($13,917), and the fees for student life and activities ($237), are more than the estimated Individual Settlement Amount for each Class Member. (Doc. 237 ¶ 1.)  However, he fails to consider several obstacles to achieving this proposed recovery, including the value of Defendant's partial performance in the form of educational instruction and the risks involved in proceeding with class action litigation.  *See Eisen*, 2014 WL 439006, at *3 ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").  Indeed, Plaintiffs have identified numerous comparable settlements in similar COVID tuition class actions.  (*See* Doc. 240 at 26, n.2.)

He also claims the Settlement Amount does not account for Class Members' harm beyond the Spring 2020 semester, as Defendant continued to charge full tuition for a "subpar online education experience." (*Id*. ¶ 2.)  But any claim regarding the quality of Defendant's educational services is derivative from the breach of contract claim, which Plaintiffs allege only took place in Spring 2020.  Any claims involving Defendant's performance after its closure decision face additional merits challenges, such as the potential defenses of waiver, ratification, or acquiescence.

The Court further notes that, contrary to Mr. Bodman's assertion, the Settlement was not "quick."  "This was a hard-achieved result that occurred after years of litigation,

14

numerous depositions, numerous Court conferences, two settlement conferences, substantial briefings on the merits of the claim, pre-trial submissions, and numerous discussions on the merits formally and informally." (Doc. 240 at 24.) The Court therefore overrules Mr. Bodman's objections to the Settlement Amount.

### b. Objections to the Adequacy of Representation

Mr. Bodman also contends that "the attorneys who negotiated this settlement" did not represent Class Members' best interests. (*Id.* ¶ 4.) He claims that "this class action appears to simply benefit high-end attorneys" and not Class Members, as evidenced by the amount of Class Counsel's requested attorneys' fees ($275,000) and litigation costs ($300,000) compared to estimated Individual Settlement Amount for each Class Member.

Mr. Bodman's argument ignores well-established Ninth Circuit law, which determines the reasonableness of the requested attorneys' fees for the entire class, not the recovery of individual Class Members. For the reasons discussed above, the Court rejects the premise that the Settlement Amount is inadequate and overrules the derivate argument that it suggests Counsel's inadequacy or collusion. *See Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (holding that adequacy of representation "depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.") (cleaned up). Thus, the Court finds Class Counsel's work was adequate and secured a fair result for the class.

\* \* \*

Accordingly, the Court **OVERRULES** Mr. Bodman's objections (Doc. 237). However, Mr. Bodman is not without recourse. The Court **GRANTS** Mr. Bodman fourteen (14) days after he receives notice that his objections are overruled to opt out of the Settlement, allowing him to pursue any claims concerning the subject matter of this case in his individual capacity. Plaintiffs are **ORDERED** to provide Mr. Bodman notice of this Order and must file a proof of service with the Court after this has been completed.

15

### 4.    Conclusion

Because the Court finds the settlement to be "fair, reasonable, and adequate" pursuant to Federal Rule of Civil Procedure 23(e) and the Settlement Administrator executed the notice program previously approved by the Court, Plaintiffs' Final Approval Motion (Doc. 240) is **GRANTED**.

## V.    ATTORNEYS' FEES AND COSTS

Having determined that final approval of the settlement is warranted, the Court considers Plaintiffs' Fee Motion. "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941 (citations omitted).

Class Counsel requests: (1) attorneys' fees in the amount of $275,000.00; (2) litigation costs and expenses in the amount of $300,000; and (3) service awards of $5,000.00 each to Plaintiffs Chavarria, Holden, and Sheridan. (Doc. 241 at 2.) The Court addresses each request in turn.

### A.    Attorneys' Fees

Under Federal Rule of Civil Procedure 23(h), any award of attorneys' fees must be reasonable. "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Bluetooth*, 654 F.3d at 942. "Whichever method is chosen, courts often employ the other method as a cross-check that the award is reasonable." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022).[4]

---

[4] To the extent Bodman challenges the Fees Motion based on the same reasons he objected to Class Counsel's adequacy of representation, his objections are **OVERRULED**.

16

### 1.    Percentage-of-Fund Analysis

Under the percentage-of-recovery method, the Ninth Circuit has determined a benchmark for a reasonable fee award is 25% of the common fund.  *Id*.  This rate is just a starting point for analysis and "similar to the lodestar, the benchmark percentage 'can be adjusted upward or downward, depending on the circumstances.'"  *In re Apple*, 50 F.4th at 784 (quoting *Kim v. Allison*, 8 F.4th 1170, 1181 (9th Cir. 2021)).  Courts in the Ninth Circuit may consider "the extent to which class counsel 'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis."  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002)).

Here, the requested $275,000 in attorneys' fees represents a 19.64% benchmark of the Gross Settlement Amount ($1,400,000.00).  Class Members will receive monetary relief from an all-cash, non-reversionary common fund, meaning the Net Settlement Fund after deductions for fees and costs will be fully paid to the Settlement Class.  *See Rodriguez*, 563 F.3d at 965 ("cash . . . is a good indicator of a beneficial settlement").  The 19.64% benchmark is also fair based on the result obtained for the class, the risks of further litigation, the amount and quality of work performed, the skill and experience of Class Counsel, that Class Counsel's fee award is contingent in nature, and in consideration of the awards granted by courts in similar cases.  Thus, the Court finds that 19.64% of the Gross Settlement Amount, or $275,000, is a reasonable award of attorneys' fees in this litigation.

### 2.    Lodestar Cross-Check

The Court further finds Plaintiffs' lodestar cross-check supports the requested 19.64% award of $1,400,000.00.  *See Bluetooth*, 654 F.3d at 944–45 (encouraging courts to cross-check their calculations under the percentage-of-recovery method against the lodestar method).  "Calculation of the lodestar, which measures the lawyers' investment of

time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941 (citing *Staton*, 327 F.3d at 963–64).

Class Counsel calculated a lodestar of $1,071,201.50 based on 2,040.24 hours of work by the attorneys. (Doc. 241 at 15.) The requested $275,000 in attorneys' fees represents 25.7% of Class Counsel's lodestar (*id*. at 9), or approximately 0.26 of what Class Counsel would receive under the lodestar method (*id*. at 17 (citation omitted)). A lodestar cross-check that results in a fractional multiplier, as in this case, supports the reasonableness of the requested percentage award. *See e.g., In re Regulus Therapeutics Inc. Sec. Litig.*, Case No. 3:17-cv-182-BTM-RBB, 2020 WL 6381898, at *7 (S.D. Cal. Oct. 30, 2020) (finding a 0.94 multiplier reasonable); *Khoja v. Orexigen Therapeutics, Inc.*, Case No. 15-cv-00540-JLS-AGS, 2021 WL 5632673, at *10 (S.D. Cal. Nov. 30, 2021) (finding a 0.528 multiplier a "strong indication of reasonableness"); *Shannon v. Sherwood Mgmt. Co., Inc.*, Case No. 19-cv-1101-BAS-JLB, 2020 WL 5891587, at *3 (S.D. Cal. Oct. 5, 2020) (finding a "negative multiplier" below 1.0 supports reasonableness of the fee request). The Court thus finds the 0.26 multiplier reasonable and appropriate.

In support of their lodestar analysis, Class Counsel submitted a "table[] summarizing the amount of work each timekeeper performed at different stages of this litigation" which is "sufficient for purposes of performing a lodestar cross-check." *Thomas v. MagnaChip Semiconductor Corp.*, Case No. 14-cv-01160-JST, 2018 WL 2234598, at *4 (N.D. Cal. May 15, 2018); *see also Baker v. SeaWorld Ent., Inc.*, Case No.: 14-cv-02129-MMA-AGS, 2020 WL 4260712, at *9 (S.D. Cal. July 24, 2020) ("[T]he lodestar cross-check need not be as exhaustive as a pure lodestar calculation because it only serves as a point of comparison by which to assess the reasonableness of a percentage award.") (cleaned up).

For these reasons, the Court finds that the amount requested by Class Counsel for attorneys' fees ($275,000) is reasonable under the lodestar cross-check.

* * *

Because the percentage-of-the-fund method and the lodestar cross-check support Plaintiffs' fee request, the Court **GRANTS** Class Counsel reasonable attorneys' fees in the amount of $275,000, representing 19.64% of the Gross Settlement Amount.

**B.     Litigation Costs and Expenses**

Class Counsel seeks reimbursement of $300,000.00 in expenses (*see* Doc. 242 ¶¶ 8–9),[5] which is the maximum authorized by the Settlement Agreement and preliminarily approved by the Court.  (Settlement Agreement [Doc. 232] § 3.3.1; Doc. 231 at 23, *as amended by* Doc. 234.)  Class Counsel requests reimbursement for the following expenses:

| Category | Amount |
|---|---|
| **The Golan Firm PLLC** | |
| Expert Witness Fees & Costs | $50,861.50 |
| Travel Costs | $430.35 |
| *Belaire-West* Notice Costs | $1,500.00 |
| Depositions and Transcripts | $5,817.10 |
| **Total** | **$58,608.95** |
| **FMC** | |
| Expert Witness Fees | $47,495.50[6] |

---

[5] While Plaintiffs originally requested $276,236.74 in litigation expenses (Doc. 241 at 2), co-counsel requested the total amount be adjusted to $300,000 based on his additional request for reimbursement of expert fees.  (Doc. 242, Supplemental Declaration of Jason P. Sultzer ("Sultzer Suppl. Decl.") ¶¶ 3–4, 7–9.)

[6] Attorney James A. Francis attested that his firm, FMC, "paid a total of $47,495.50" to Plaintiffs' expert.  (Doc. 245, Supplemental Declaration of James A. Francis ("Francis Suppl. Decl.") ¶ 12; *see* Doc. 241-1 ¶¶ 32–33, Ex. C at 64; Doc. 245-1, Ex. C at 2.) However, at the Court's request to provide supplemental documentation, Counsel provided a summary statement from Plaintiffs' expert which reflects that the expert received $51,129 in payments from FMC.  (*See* Doc. 245-1 at 2.)  To resolve this apparent conflict, the Court relies on attorney James A. Francis' initial and supplemental sworn declarations and construes FMS' request for expert fees to be in the amount of $47,495.50.

| Travel Costs | $3,942.48 |
| --- | --- |
| Deposition Transcripts | $3,179.35 |
| Printing, Copying, Mailing | $549.45 |
| Service Costs | $125.00 |
| Tech/Data Storage | $41.56 |
| **Total** | **$55,333.34** |
| **Leeds Brown Law, P.C.** | |
| Expert Witness Fees | $50,807.50 |
| Deposition Costs | $4,731.25 |
| Filing Fees | $426.00 |
| *Belaire-West* Notice Costs | $1,500.00 |
| **Total** | **$57,464.75** |
| **The Sultzer Law Group P.C.** | |
| Expert Witness Fees | $50,807.50 |
| Travel Costs | $2,793.77 |
| Administrative Costs/Filing Fees | $639.00 |
| **Total** | **$54,240.27** |
| **Shegerian & Associates, Inc.** | |
| Expert Witness Fees | $61,436.25 |
| Travel Costs | $317.51 |
| Transcripts & Summaries | $8,765.05 |
| Legal Research & Records | $5.80 |
| Service Costs | $1,608.95 |
| **Total** | **$72,133.56** |
| **TOTAL** | **$297,780.87** |

(*See* Docs. 241-1, 241-2, 241-3, 241-4, 242, 245, 245-1, 247, 248, 249.)  Plaintiffs acknowledge that "a large portion of these expenses are attributable to expert witness fees[.]"  (Fees Motion [Doc. 241] at 19.) At the Court's request, Class Counsel filed supplemental declarations with invoices, expense records, and their expert's resume to substantiate the listed expenses. (*See* Docs. 245–249.)  "There is no doubt that an attorney

who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1181 (S.D. Cal. 2016) (citation omitted). Attorneys are entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted); Fed. R. Civ. P. 23(h) (permitting the court to award nontaxable costs that are authorized by the parties' agreement). This amount "should be reasonable and necessary." *In re Immune Response Sec. Litig.*, 497 F.Supp.2d 1166, 1177 (S.D. Cal. 2007) (citing *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) ("*In re Media Vision*")).

### 1. Expert Costs

Based on each Class Counsel's declaration, the Court finds that Counsel collectively seek a total of $261,354.25, rather than $264,987.75, in expert costs paid to OnPoint Analytics, Inc. ("OnPoint").[7] To award reimbursement for expert witness fees, the Court "must find that the expert testimony submitted was 'crucial or indispensable' to the litigation at hand." *In re Media Vision*, 913 F. Supp. at 1366 (quoting *United States v. City of Twin Falls*, 806 F.2d 862, 864 (9th Cir. 1986)). The Court has reviewed the information provided by Class Counsel and is satisfied that these costs were reasonable and necessary.

Counsel hired Dr. Gareth Macartney, of OnPoint, to prepare "expert reports bearing on a model for calculation of damages on a class-wide basis, evidence that was essential to class certification, the merits, and to effectuating the settlement here." (Francis Suppl. Decl. [Doc. 245] ¶ 4.) Plaintiffs claim these expert witness fees "were essential to presenting a theory of damages for purposes of class certification and summary judgment, as well as identifying and analyzing the size of the class for purposes of negotiating and effectuating the settlement." (Fees Motion [Doc. 241] at 19.) Class Counsel further explains that damages were the "most complicated" and "uncertain" aspect of this case,

---

[7] Co-counsel explains that, after a negotiated discount of $42,193.50, the amount paid to OnPoint was $264,987.75. (Francis Suppl. Decl. [Doc. 245] ¶ 10.) *See also supra* note 6.

noting "there is almost no case law directly on point as to how to value the cost of online instruction and the lack of access to campus in the context of an impossibility defense." (Doc. 241-2, Declaration of Michael A. Tompkins ("Tompkins Decl.") ¶ 36.)

In support of their reimbursement request, Class Counsel provided a summary statement from OnPoint for $307,181.25 (Francis Suppl. Decl. [Doc. 245], Ex. 1 at 6) and submitted seven detailed invoices for *in camera* review (*id.*, Exs. 3–9). The summary statement is broken down by invoice number, invoiced amount, payments received by law firm, and credits applied. (*See id.*, Ex. 1 at 6.) The individual invoices detail the work completed during a specific time frame, the hours expended, and rate charged by timekeeper. (*Id.*, Exs. 3–9.)

The Court notes that Dr. Macartney drafted three reports, at least one of which was relied upon by the Court in granting preliminary approval of the Settlement. (*See* Doc. 231 at 9, n.7 (noting Plaintiffs' expert's services were used to determine the class size in support of meeting the numerosity requirement)); *Id.* at 11 (citing Doc. 228 at 22–24); *Id.* at 17–18 (finding Plaintiffs demonstrated that damages can be calculated on a class-wide basis).) This weighs in favor of the reasonableness of the request. *See, e.g.*, *Mauss v. NuVasive, Inc.*, No. 13CV2005 JM (JLB), 2018 WL 6421623, at *8 (S.D. Cal. Dec. 6, 2018) (finding fees charged by expert were reasonable and noting expert provided supporting materials for class certification and summary judgment briefing). Based on the invoices, expert reports, and supplemental declarations, the Court finds these expert fees reasonable and therefore approves reimbursement of $261,354.25 for work completed by OnPoint.

## 2. Travel Costs

Class Counsel also requests reimbursement of travel expenses. Reimbursement for "reasonable and necessary" travel expenses is within the broad discretion of the court. *In re Media Vision*, 913 F. Supp. at 1369. Here, Counsel asserts that travel was required for several hearings and depositions. (*See* Francis Suppl. Decl. [Doc. 245], Ex. C at 17; Doc. 247, Supplemental Declaration of Yvette Golan ("Golan Suppl. Decl.") ¶ 2; Doc. 249, Second Supplemental Declaration of Jason Sultzer ("Sultzer Second Suppl. Decl.") ¶ 5.)

Counsel who travelled out-of-state capped airfare at economy rates. (*See* Francis Suppl. Decl. [Doc. 245] ¶ 14, Ex. C at 17; Sultzer Second Suppl. Decl. [Doc. 249] ¶ 5.)

The Court reduces the award for travel expenses incurred by the Sultzer Law Group by $1,586.20 for a round-trip flight by attorney Jason Sultzer from Miami, Florida to New York, New York, as it is not clear why an in-person meeting with attorneys from Leeds Brown was necessary or whether the expense amount is reasonable. (*See* Sultzer Suppl. Decl. [Doc. 249] ¶ 5.) The Court finds the remainder of Sultzer Law Group's travel expenses ($1,207.57) and the remaining Class Counsel reasonable and reimbursable.

### 3.    Deposition Costs

Class Counsel request reimbursement of their incurred deposition costs. Deposition costs are recoverable only if necessarily obtained for use in the case. *Alflex Corp. v. Underwriters Laboratories, Inc.*, 914 F.2d 175, 177–78 (9th Cir.1990). In awarding such costs, the court must make a detailed and independent determination as to why each deposition was necessary. *In re Media Vision*, 913 F. Supp. at 1371 (citing *Smith v. Hughes Aircraft Co.*, 22 F.3d 1432, 1439 (9th Cir.1994)).

In their supporting declarations, Class Counsel specifies that the depositions costs stemmed from the deposition of their expert Dr. Macartney, Named Plaintiffs, and Defendant's witnesses—Minh-Ha Hoang, Kathryn Roig, and Ky Snyder (*see, e.g.* Doc. 177 at 2–3). (*See* Tompkins Decl. [Doc. 241-2] ¶ 34; Dos Santos Decl. [Doc. 241-3], Ex. A at 20; Golan Decl. [Doc. 241-4], Ex. A at 12.) However, the Court reduces the award for deposition costs incurred by Shegerian & Associates by $390 for two unexplained late cancellation fees paid to Barkley Court Reporters, as the Court is unable to determine whether such cancellation fees were necessary or reasonably incurred. *See Alflex*, 914 F.2d at 177–78 ("Except as otherwise ordered by the court, only the cost of the original of such transcript or deposition together with the cost of one copy each where needed by counsel shall . . . be allowed."); *see also Fitzgerald v. Pollard*, Case No. 20cv848 JM (MSB), 2024 WL 4596401, at *13 (S.D. Cal. Oct. 28, 2024) ("Class Counsel are entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and

prosecuting this case."). The Court finds the remainder of Class Counsel's incurred deposition costs reasonable and reimbursable.

### 4. Remaining Costs

Additionally, Class Counsel requests reimbursement of additional litigation costs including filing fees, printing, copying, mailing, tech/data storage, and "service costs." (Francis Suppl. Decl. [Doc. 245], Ex. C at 17.) Courts routinely reimburse attorneys for reasonable photocopying, postage, and notice. *See In re Immune Response Sec. Litig.*, 497 F.Supp.2d at 1177; *In re Media Vision*, 913 F. Supp. at 1367–69. Courts may also reimburse reasonable costs for filing fees, database charges, and online research. *See id.* at 1178; *Mauss*, 2018 WL 6421623, at *9. As this action commenced over four years ago, settled close to trial, and involved significant motion practice and discovery, the Court finds these additional litigation costs reasonable and reimbursable.

\* \* \*

Accordingly, the Court **GRANTS IN PART** Class Counsel's request for reimbursement of litigation costs and expenses and **APPROVES** the amount of $295,804.67, reduced from the Counsel's total costs and expenses of $297,780.87, to be distributed in accordance with the Court's deductions as stated above.

## C. Service Awards to Class Representatives

Plaintiffs also seek $5,000 for each of the three Class Representatives. Incentive awards are "fairly typical" discretionary awards "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). When awarding a class representative service award, district courts generally evaluate "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977 (cleaned up). "Such awards are discretionary . . . and are intended to compensate class representatives

24

for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action . . . ." *Rodriguez*, 563 F.3d at 958–59 (cleaned up).

In this action, the Class Representatives actively participated in, and made significant contributions to, this litigation for more than four years. (*See* Doc. 241 at 20.) Each Class Representative "respond[ed] to discovery requests, attend[ed] the Early Neutral Evaluation conference, [sat] for full-day depositions, [and] provided declarations in support of class certification and reviewed the settlement agreement." (*Id.*) For these reasons, the Court finds that Plaintiffs have adequately represented the Settlement Class and do not have any conflicts of interest affecting their status as Class Representatives. Accordingly, the Court awards $5,000 to each Class Representative for a total of $15,000.

## VI.    CONCLUSION

For the reasons stated in this Order, as well as in the Court's Preliminary Approval Order, Plaintiffs' Final Motion (Doc. 240) is **GRANTED**, and Plaintiffs' Fees Motion (Doc. 241) is **GRANTED IN PART AND DENIED IN PART**. Accordingly, the Court **ORDERS** as follows:

1. The Settlement Agreement and the definition of words and terms contained therein are incorporated by reference in this Order. The Court's Preliminary Approval Order (Doc. 231) is also incorporated by reference in this Order.

2. Subject to the exceptions in Section 1.29 of the Settlement Agreement, the Court **CERTIFIES** the following Settlement Class: all enrolled students at USD who paid tuition, the Student Wellness fee and/or course fees to USD, or who were credited with having paid such tuition and/or Mandatory Fees to USD for the Spring 2020 term/semester, subject to the seven exclusions set forth below.

3. The Court finally **APPROVES** the Settlement Amount of $1,400,000 as a non-reversionary settlement payment to settle and resolve all claims in the action by or on behalf of the Settlement Class against Defendant.

4. The Court finally **APPROVES** Leeds Brown Law, P.C., The Sultzer Law Group, P.C., The Golan Firm PLLC, Shegerian & Associates, Inc., and Francis Mailman

Soumilas, P.C., as adequate Class Counsel and **AWARDS** Class Counsel $275,000 in attorneys' fees and $295,804.67 in costs.

5. The Court finally **APPROVES** Plaintiffs Chavarria, Holden, and Sheridan as adequate Class Representatives and **AWARDS** $5,000 in service awards to each of the three Class Representatives, for a total of $15,000.

6. The Court **APPROVES** the payment to the Settlement Administrator in the amount of $37,159.

7. The Parties and the Settlement Administrator shall effectuate the terms of the Settlement Agreement, including but not limited to the distribution of funds to Class Members in accordance with Sections 2.7.2, 3.1–3.13 of the Settlement Agreement.

8. Eric Bodman's objections are **OVERRULED**. Plaintiffs are **ORDERED** to provide notice of this Order to Mr. Bodman via email and FedEx. Plaintiffs must file a proof of service with the Court after this has been completed. Mr. Bodman is **GRANTED** fourteen (14) days after receiving notice of this Order to opt-out of the Settlement.

9. Without affecting the finality of this Final Approval Order, the Court **RETAINS JURISDICTION** over the implementation, administration, and enforcement of this judgment and the Settlement.

10. This action and all released claims set forth in the Settlement Agreement be **DISMISSED WITH PREJUDICE**.

11. This Order constitutes a Final Judgment and separate document pursuant to Federal Rules of Civil Procedure 54 and 58(a).

12. The Clerk of the Court is directed to enter judgment and **CLOSE** this case.

**IT IS SO ORDERED.**

DATE: March 21, 2025

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

3:20-cv-01946-RBM-VET